DANIEL M. PETROCELLI  (S.B. #97802)
dpetrocelli@omm.com
DAVID MARROSO  (S.B. #211655)
dmarroso@omm.com
O'MELVENY & MYERS LLP
1999 Avenue of the Stars
Los Angeles, California  90067-6035
Telephone:  (310) 553-6700
Facsimile:   (310) 246-6779

RICHARD G. PARKER  (S.B. #62356)
rparker@omm.com
EDWARD D. HASSI  (*pro hac vice*)
ehassi@omm.com
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, D.C. 20006-4001
Telephone:  (202) 383-5300
Facsimile:   (202) 383-5414

*Attorneys for Plaintiff Global Music Rights, LLC*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GLOBAL MUSIC RIGHTS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>RADIO MUSIC LICENSE COMMITTEE, INC., and DOES 1 through 3,000,<br><br>Defendants. | Case No. 2:16-cv-9051 BRO (ASx)<br><br>**PLAINTIFF GLOBAL MUSIC RIGHTS, LLC'S OPPOSITION TO DEFENDANT RADIO MUSIC LICENSE COMMITTEE, INC.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Hearing Date:  March 27, 2017<br>Time:  1:30 p.m.<br>Place:  Courtroom 7C<br>Judge:  Hon. Beverly Reid O'Connell |

# TABLE OF CONTENTS

<div align="right">Page</div>

I.      INTRODUCTION .................................................................................. 1

II.     BACKGROUND .................................................................................. 4

    A.      GMR Is an Innovative New Entrant ...................................... 4

    B.      RMLC Is a 10,000-Member Strong Buyers' Cartel ............... 5

    C.      RMLC Members Have Boycotted GMR's Licenses for Over Two Years, While Continuing to Infringe GMR's Copyrights ........ 5

    D.      GMR's Interim License Offer Has Not Ended the RMLC Boycott ................................................................................ 7

    E.      RMLC Relies on Untrue and Irrelevant Factual Allegations .............. 7

III.    LEGAL STANDARD ......................................................................... 10

    A.      Constitutional and Prudential Ripeness ............................... 10

    B.      The First-to-File Rule .......................................................... 11

IV.     ARGUMENT .................................................................................... 11

    A.      RMLC's Motion to Dismiss Is Procedurally Improper ...... 11

    B.      GMR's Claims Are Constitutionally Ripe .......................... 12

        1.      GMR Has Suffered Extensive Injury-In-Fact ........... 12

        2.      GMR Continues to Suffer Injury ............................... 16

        3.      RMLC's Assertion That a Group Boycott of GMR's Music Is "Not Even Possible" Is Both False and Irrelevant ..... 17

        4.      To the Extent RMLC Claims No Boycott Occurred, the Factual Dispute Cannot Be Resolved at this Stage ......... 19

    C.      GMR's Claims Are Prudentially Ripe .................................. 20

    D.      To the Extent Any Material Facts Remain in Dispute, the Court Should Order Limited Jurisdictional Discovery ............... 21

    E.      The First-to-File Rule Does Not Bar GMR's Claims ........... 21

        1.      GMR's Causes of Action Are Not Compulsory Counterclaims ........................................................... 21

        2.      GMR's Claims Are Not Substantially Similar to RMLC's Philadelphia Suit ......................................... 23

        3.      Equitable Factors Militate Against Applying the First-to-File Rule ................................................................. 24

V.      CONCLUSION ................................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adoma v. Univ. of Phoenix, Inc.*,
  711 F. Supp. 2d 1142 (E.D. Cal. 2010)................................................23

*Aguilar v. Ocwen Fin. Corp.*, No. 14-CV-07675-MFW (SSx),
  2015 WL 1345279 (C.D. Cal. Mar. 24, 2015) ....................................11

*Alltrade, Inc. v. Uniweld Prods., Inc.*,
  946 F.2d 622 (9th Cir. 1991).......................................................11, 24

*Arbaugh v. Y&H Corp.*,
  546 U.S. 500 (2006) ...............................................................................19

*Assiniboine & Sioux Tribes of Ft. Peck Indian Reservation v. Bd. of
  Oil & Gas Conservation of State of Mont.*,
  792 F.2d 782 (9th Cir. 1986)...............................................................20

*Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of
  Carpenters*, 459 U.S. 519 (1983) .........................................................14

*Ballard v. Blue Shield of S. W. Va.*,
  529 F. Supp. 71 (S.D.W. Va. 1981) ...................................................19

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ...............................................................................19

*Blue Lake Rancheria v. Morgenstern*, No. 2:11-CV-01124 JAM-JFM,
  2011 WL 6100845 (E.D. Cal. Dec. 6, 2011).......................................8

*Bova v. City of Medford*,
  564 F.3d 1093 (9th Cir. 2009)........................................................10, 15

*BP West Coast Prods. LLC v. Greene*,
  318 F. Supp. 2d 987 (E.D. Cal. 2004) ..................................................8

*Byerson v. Equifax Info. Servs., LLC*,
  467 F. Supp. 2d 627 (E.D. Va. 2006)..............................................3, 23

*Canatella v. State of Cal.*,
  304 F.3d 843 (9th Cir. 2002) ...............................................................20

PLAINTIFF'S OPPOSITION TO
MOTION TO DISMISS
2:16-CV-9051 BRO (ASX)

1

## TABLE OF AUTHORITIES
### (continued)

2

Page(s)

3

*Cedars-Sinai Medical Center v. Shalala*,

4
    125 F.3d 765 (9th Cir. 1997) .................................................................23, 24

5

*City Antiques, Inc. v. Planned Furniture Promotions, Inc.*,

6
    No. 3:14-cv-00467-SI, 2014 WL 3955216 (D. Or. Aug. 12, 2014)...................24

7

*City of L.A. v. Lyons*,

8
    461 U.S. 95 (1983) ..........................................................................................17

9

*Clark v. City of Lakewood*,
    259 F.3d 996 (9th Cir. 2001) ...........................................................................14

10

*Clear Channel Outdoor, Inc. v. Bently Holdings Cal. LP*,

11
    No. C-11-2573 EMC,  2011 WL 6099394 (N.D. Cal. Dec. 7, 2011) ................16

12

*Clinton v. Acequia, Inc.*,

13
    94 F.3d 568 (9th Cir. 1996) .............................................................................15

14

*Davis v. Guam*,

15
    785 F.3d 1311 (9th Cir. 2015) .........................................................................10

16

*Dreier v. United States*,

17
    106 F.3d 844 (9th Cir. 1996) ...........................................................................10

18

*Edison v. United States*,

19
    822 F.3d 510 (9th Cir. 2016) ...........................................................................10

20

*FDIC v. CoreLogic Valuation Servs., LLC*,
    No. SA CV 11-0704 DOC (ANx), 2011 WL 5554324

21
    (C.D. Cal. Nov. 14, 2011) .................................................................................8

22

*First Class Vending, Inc. v. Hershey Co.*,

23
    No. CV-15-01188-MWF (FFMx), 2015 WL 12426155
    (C.D. Cal. July 28, 2015)..................................................................................14

24

*ForestWatch v. U.S. Bur. of Land Mgmt.*,

25
    No. CV-15-4378-MWF (JEMx), 2016 WL 5172009

26
    (C.D. Cal. Sept. 6, 2016) .................................................................................10

27

28

PLAINTIFF'S OPPOSITION TO
MOTION TO DISMISS
2:16-CV-9051 BRO (ASX)

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

*Gen'l Prods. Mach. Shop, Inc. v. Systematic, Inc.*, No. CV-06-99-E-BLW, 2006 WL 2051737 (D. Idaho July 20, 2006) ........ 24

*Herer v. Ah Ha Publ'g, LLC*, 927 F. Supp. 2d 1080 (D. Or. 2013) ........ 3, 23

*In re Abbott Labs. Norvir Anti-Trust Litig.*, 562 F. Supp. 2d 1080 (N.D. Cal. 2008) ........ 14

*In re Apple iPhone Antitrust Litig.*, 846 F.3d 313 (9th Cir. 2017) ........ 4

*In re Burley*, 738 F.2d 981 (9th Cir. 1984) ........ 23

*In re Pegasus Gold Corp.*, 394 F.3d 1189 (9th Cir. 2004) ........ 21

*Initiative & Referendum Inst. v. Walker*, 450 F.3d 1082 (10th Cir. 2006) ........ 15

*John Doe 1 v. Abbott Labs.*, 571 F.3d 930 (9th Cir. 2009) ........ 15

*Jomicra, Inc. v. California Mobile Home Dealers Ass'n*, 12 Cal. App. 3d 396 (Ct. App. 1970) ........ 24

*Jones Knitting Corp. v. Morgan*, 361 F.2d 451 (3d Cir. 1966) ........ 14

*Kearney v. Foley & Lardner, LLP*, 590 F.3d 638 (9th Cir. 2009) ........ 9

*Kelly v. Univ. Press of Miss.*, No. CV 16-2960 PA (GJSx), 2016 WL 4445986 (C.D. Cal. Aug. 16, 2016) ........ 15

*Kessler Inst. for Rehab., Inc. v. Mayor & Council of Borough of Essex Fells*, 876 F. Supp. 641 (D.N.J. 1995) ........ 15

1

## TABLE OF AUTHORITIES
(continued)

2                                                                                    **Page(s)**

3   *Kohn Law Grp. v. Auto Parts Mfg. Miss., Inc.*,
4       No. CV-12-08063-MWF (MRWx), 2016 WL 6517085
5       (C.D. Cal. Feb. 3, 2016) ....................................................................20

6   *Kohn Law Grp., Inc. v. Auto Parts Mfg. Miss., Inc.*,
        787 F.3d 1237 (9th Cir. 2015)............................................................23
7
8   *Korrow v. Aaron's, Inc.*,
        300 F.R.D. 215 (D.N.J. 2014) .............................................................22
9
10  *Laub v. U.S. Dep't of Interior*,
        342 F.3d 1080 (9th Cir. 2003)..............................................................21
11
12  *Matheson v. Progressive Specialty Ins. Co.*,
        319 F.3d 1089 (9th Cir. 2003).............................................................16
13
14  *Mattel, Inc. v. MGA Entm't, Inc.*,
        705 F.3d 1108 (9th Cir. 2013).............................................................22
15
16  *Maya v. Centex Corp.*,
        658 F.3d 1060 (9th Cir. 2011)..............................................................14
17
    *McBeath v. Inter-Am. Citizens for Decency Comm.*,
18      374 F.2d 359 (5th Cir. 1967).........................................................19, 20
19
    *McGlynn v. Credit Store, Inc.*,
20      234 B.R. 576 (D.R.I. 1991) .................................................................23

21  *McNamara v. Attys. Liab. Prot. Soc'y, Inc.*,
        No. CV 13-9274-DOC (RNBx), 2014 WL 12564123
22      (C.D. Cal. Apr. 16 2014) ....................................................................25
23
    *Memorex Corp. v. IBM Corp.*,
24      555 F.2d 1379 (9th Cir. 1977)..............................................................24

25  *Mont. Envtl. Info. Ctr. v. Stone-Manning*,
        766 F.3d 1184 (9th Cir. 2014)..............................................................15
26
    *Morning Star Packing Co. v. SK Foods, L.P.*,
27      754 F. Supp. 2d 1230 (E.D. Cal. 2010)..............................................13

28

1

**TABLE OF AUTHORITIES**
(continued)

2
**Page(s)**

3

*Muse Apartments, LLC v. Travelers Cas. & Sur. Co. of Am.*,
4
    No. C12-2012 RSL, 2013 WL 6062340
    (W.D. Wash. Nov. 18, 2013) ................................................................. 8
5

*Nat'l Veterans Legal Servs. Program v. United States*,
6
    Civ. A. No. 16-745 (ESH), 2016 WL 7076986
7
    (D.D.C. Dec. 5, 2016) ........................................................................ 23

8
*NCAA v. Gov'r of N.J.*,
9
    730 F.3d 208 (3d Cir. 2013) ................................................................ 8

10
*Olenicoff v. UBS AG*, No. SACV 08-1029,
11
    2010 WL 8530286 (C.D. Cal. Mar. 16, 2010) ................................... 24

12
*Omega Envt'l, Inc. v. Gilbarco, Inc.*,
13
    127 F.3d 1157 (9th Cir. 1997) .............................................................. 9

14
*Ostrofe v. H.S. Crocker Co.*,
    740 F.2d 739 (9th Cir. 1984) .............................................................. 14
15

*Outdoor Media Grp., Inc. v. City of Beaumont*,
16
    506 F.3d 895 (9th Cir. 2007) ......................................................... 3, 16

17
*Pacesetter Sys., Inc. v. Medtronic, Inc.*,
18
    678 F.2d 93 (9th Cir. 1982) ............................................................... 11

19
*Plymouth Yongle Tape (Shanghai) Co. v. Plymouth Rubber Co.*,
20
    683 F. Supp. 2d 102 (D. Mass. 2009) ................................................ 22

21
*Point Prods. A.G. v. Sony Music Entm't, Inc.*,
22
    No. 93 Civ. 4001(NRB), 2002 WL 31856951
    (S.D.N.Y. Dec. 19, 2002) ................................................................... 16
23

*Poller v. CBS, Inc.*,
24
    368 U.S. 464 (1962) ........................................................................... 21

25
*Portman v. Cnty. of Santa Clara*,
26
    995 F.2d 898 (9th Cir. 1993) .............................................................. 10

27

28

PLAINTIFF'S OPPOSITION TO
MOTION TO DISMISS
2:16-CV-9051 BRO (ASX)

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Prime Healthcare Servs., Inc. v. Harris*,
  No. 3:16-cv-00778-GPC-RBB, — F. Supp. 3d —,
  2016 WL 6427924 (S.D. Cal. Oct. 31, 2016) ..................................................... 13

*Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*,
  508 U.S. 49 (1993) ................................................................................................. 9

*Prospect Capital Corp. v. Bender*, No. 09 Civ. 826 (HB),
  2009 WL 4907121 (S.D.N.Y. Dec. 21, 2009) .................................................... 25

*Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*,
  614 F.3d 57 (3d Cir. 2010) ................................................................................... 9

*Ross v. Bank of Am., N.A. (USA)*,
  524 F.3d 217 (2d Cir. 2008) ............................................................ 2, 10, 17, 20

*Ruckus Wireless, Inc. v. Harris Corp.*, NO. 11-CV-01944-LHK,
  2012 WL 588792 (N.D. Cal. Feb. 22, 2012) ...................................................... 24

*Singer v. Live Nation Worldwide, Inc.*,
  No. 11-CV-0427 DOC (MLGx), 2012 WL 123146
  (C.D. Cal. Jan. 13, 2012) .................................................................................... 12

*Sony Elec., Inc. v. Soundview Techs., Inc.*,
  157 F. Supp. 2d 180 (D. Conn. 2001) ................................................................. 14

*Sutter Corp. v. P & P Indus., Inc.*,
  125 F.3d 914 (5th Cir. 1997) .............................................................................. 25

*Tawfillis v. Allergan, Inc.*,
  157 F. Supp. 3d 853 (C.D. Cal. 2015) ................................................................ 13

*Theatre Enters., Inc. v. Paramount Film Distrib. Corp.*,
  346 U.S. 537 (1954) ............................................................................................ 19

*Therasense, Inc. v. Becton, Dickinson & Co.*, No. C 04-02123 WHA,
  2008 WL 2757041 (N.D. Cal. July 14, 2008) .................................................... 17

*Thomas & Betts Corp. v. Robroy Indus., Inc.*,
  No. CV 15-04150 BRO (GJSx), 2015 WL 4718892
  (C.D. Cal. Aug. 6, 2015) ................................................................................ 24, 25

1

2

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

3

4

*Thomas v. Anchorage Equal Rights Comm'n,*
    220 F.3d 1134 (9th Cir. 1999).................................................................10, 11, 15

5

6

*Thornhill Publ'g Co. v. Gen. Tel. & Elec. Corp.,*
    594 F.2d 730 (9th Cir. 1979) ..............................................................................19

7

8

*Toon v. Wackenhut Corrections Corp.,*
    250 F.3d 950 (5th Cir. 2001) ..............................................................................16

9

*TruePosition, Inc. v. LM Ericsson Tel. Co.,* Civ. A. No. 11-4574,
    2012 WL 3584626 (E.D. Pa. Aug. 21, 2012).....................................................21

10

11

*Volvo N. Am. Corp. v. Men's Int'l Prof's Tennis Council,*
    857 F.2d 55 (2d Cir. 1988) .................................................................................20

12

13

*Ward v. Jetsuite, Inc.,* No. 16-CV-0584 AG (ASx),
    2016 WL 3360962 (C.D. Cal. June 8, 2016).......................................................12

14

15

*Yoshioka v. Charles Schwab Corp.,* No. C-11-1625 EMC,
    2012 WL 5932817 (N.D. Cal. Nov. 27, 2012)....................................................15

16

17

*Yount v. Salazar,* No. CV11-8171 PCT-DGC,
    2014 WL 4904423 (D. Ariz. Sep. 30, 2014) ......................................................14

18

19

*Zackaria v. Wal-Mart Stores, Inc.,* No. EDCV 11-01418 VAP (DTBx),
    2011 WL 6065169 (C.D. Cal. Dec. 5, 2011).........................................................8

20

*Zazzali v. Hirschler Fleischer, P.C.,*
    482 B.R. 495 (D. Del. 2012) ..............................................................................14

21

22

**Statutes and Rules**

C.D. Cal. L.R. 7-3......................................................................................................11

23

24

Fed. R. Civ. P. 12........................................................................................4, 10, 20

25

Fed. R. Civ. P. 13......................................................................................................21

26

28 U.S.C. § 1404......................................................................................................25

27

28

PLAINTIFF'S OPPOSITION TO
MOTION TO DISMISS
2:16-CV-9051 BRO (ASX)

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

**Other Sources**

Sec. Am. Final J., *United States v. ASCAP*,
   Civ. A. No. 41-1395 (S.D.N.Y. 2001)...................................................................9

PLAINTIFF'S OPPOSITION TO
MOTION TO DISMISS
2:16-CV-9051 BRO (ASX)

**I.     INTRODUCTION**

Defendant Radio Music License Committee ("RMLC") and thousands of its members have violated federal and state competition laws and caused injury to Plaintiff Global Music Rights ("GMR").  The gravamen of the case is that Defendants, who are competitors in the terrestrial radio market, have colluded to unlawfully fix license fees for the public performance of musical compositions on the radio.  As alleged in GMR's First Amended Complaint (the "Complaint" or "FAC"), Dkt. 23, RMLC boasts that it "represents the interests of the commercial radio industry (some 10,000 commercial radio stations) on music licensing matters," and concedes that the "overwhelming objective" of RMLC and its members "is to keep license fees for the commercial radio industry as low as [they] can possibly keep them."  (FAC ¶¶ 1, 44-47.)

In a free market, these radio rivals would and should compete with one another for access to premium musical content.  But they have suspended competition to negotiate as a group, in order to generate monopsony power. Defendants have exercised their collective buying might to retard the free market and artificially suppress license fees.  And Defendants' unlawful, anticompetitive conduct has caused substantial past and ongoing injury to GMR.

RMLC's Motion to Dismiss (the "Motion" or "Mot.") disputes ***none*** of this. Instead, RMLC asks this Court to dismiss the Complaint on the theory that GMR filed the case both too early and too late.  Neither argument has merit, and the Motion should be denied in its entirety.

**1.     The Case is Ripe.**  According to RMLC, GMR's Complaint is based on a prediction that RMLC members may, ***at some point in the future***, "boycott" the songs in GMR's repertory by not playing them on the radio.  (*E.g.*, Mot. 3-5.) RMLC argues that since that has not yet happened, the case is not "ripe."  This argument distorts GMR's Complaint, disregards dozens of specific factual allegations, and misunderstands the nature of GMR's claims for existing harms.

PLAINTIFF'S OPPOSITION TO
MOTION TO DISMISS
2:16-CV-9051 BRO (ASX)

1    GMR's Complaint is not about actions RMLC members *might* take in the

2    future.  GMR's Complaint sets forth in detail unlawful actions RMLC and its

3    members have taken *in the past*, and the substantial economic injuries those actions

4    have *already* caused GMR.  For example, GMR alleges that, beginning no later

5    than January 1, 2015, RMLC's members agreed to act in unison against GMR.

6    (FAC ¶ 74.)  Rather than competing, these thousands of radio stations banded

7    together and refused to purchase licenses from GMR.  (*Id.*)  Some stations brazenly

8    refused to even discuss license terms with GMR unless GMR went through the

9    RMLC—even as they continued performing GMR songs without authorization.

10   (*Id.* ¶¶ 74-76.)  Left with no other option, GMR was forced to negotiate solely with

11   RMLC.  (*Id.*)  Flexing the power of its 10,000 members over GMR's 73 writers,

12   RMLC demanded a price-fixed, below-market deal.  (*Id.* ¶ 73.)  This collective

13   action—thousands of stations refusing to negotiate for or purchase licenses from

14   GMR—is illegal, and has caused GMR millions of dollars in damage.  (*Id.* ¶¶ 121-

15   33.)  These damages easily satisfy the "injury-in-fact" and "ripeness" prerequisites

16   to federal court jurisdiction.  *See Ross v. Bank of Am., N.A. (USA)*, 524 F.3d 217,

17   222-26 (2d Cir. 2008) (antitrust claims were ripe where the plaintiffs had suffered

18   injuries as a result of the "present market effects" of the defendants' collusion).

19   RMLC's Motion simply ignores these past and continuing injuries.

20        In addition to this historical and ongoing illegal activity, RMLC has also

21   implicitly threatened to pull GMR's songs from the radio entirely unless GMR

22   capitulates to its demands.  (FAC ¶ 76.)  According to RMLC, radio stations have

23   not yet boycotted GMR's songs, and supposedly could "never" do so, because they

24   cannot scrub GMR songs from their playlists.  (Mot. 20.)  This argument

25   contradicts detailed factual allegations in the Complaint, and, more importantly, is

26   beside the point.  GMR has already suffered concrete injury, and its claim for *that*

27   injury is ripe.  That GMR *also* seeks to stop RMLC from continuing its unlawful

28   boycott and expanding it in the future does not deprive this Court of jurisdiction.

PLAINTIFF'S OPPOSITION TO
MOTION TO DISMISS
2:16-CV-9051 BRO (ASX)

1    *See Outdoor Media Grp., Inc. v. City of Beaumont*, 506 F.3d 895, 902 (9th Cir.

2    2007) ("A plaintiff seeks damages for a past violation of its rights; this violation is

3    not mooted by a promise not to repeat the alleged conduct in the future.").

4        **2.    The "First-to-File" Rule Does Not Apply.**   RMLC also argues that

5    GMR's Complaint should be dismissed or stayed because RMLC previously sued

6    GMR in the Eastern District of Pennsylvania, accusing ***GMR*** of anticompetitive

7    conduct.   According to RMLC, because the lawsuits both concern "negotiations"

8    between GMR and RMLC, GMR's suit must be dismissed or transferred to

9    Pennsylvania.   RMLC misunderstands the first-to-file rule.

10       A "mere similarity of claims" is not the test.  *Byerson v. Equifax Info. Servs.,*

11   *LLC*, 467 F. Supp. 2d 627, 636 (E.D. Va. 2006).   Rather, the "***resolution*** of both

12   cases" must "turn on substantially the same legal issues and depend on substantially

13   the same evidence." *Herer v. Ah Ha Publ'g, LLC*, 927 F. Supp. 2d 1080, 1090 (D.

14   Or. 2013) (emphasis added).  Neither is true of this case:  resolution of GMR's

15   claims against RMLC does not "turn on" substantially similar legal issues ***or***

16   "depend on" substantially the same evidence as the Pennsylvania action.

17       Put another way, whether RMLC and its members violated the antitrust laws

18   by colluding to fix prices and negotiate licenses as a cartel does not turn at all—

19   much less substantially—on whether GMR is a "monopolist."  Alternatively,

20   GMR's size, power, and business model—including as compared to ASCAP, BMI,

21   and SESAC—is not germane to whether 10,000 horizontal competitors in the

22   terrestrial radio industry may band together to fix license fees or boycott GMR.

23   There may be superficial overlap, given similar parties and the word "antitrust," but

24   there is no legally meaningful overlap to justify dismissing this case or transferring

25   it to Pennsylvania.   That is doubly true because the Pennsylvania court lacks

26   jurisdiction over GMR, and GMR is seeking dismissal of the case on that basis.

27       At a minimum, this Court should defer ruling on this facet of RMLC's

28   Motion until the court in Pennsylvania decides GMR's motion to dismiss for lack

PLAINTIFF'S OPPOSITION TO
MOTION TO DISMISS
2:16-CV-9051 BRO (ASX)

of personal jurisdiction, improper venue, and failure to state a claim.

For these reasons, RMLC's Motion should be denied.[1]

## II.   BACKGROUND

### A.    GMR Is an Innovative New Entrant.

For decades, the music rights business was dominated by three large performing rights organizations ("PROs"): ASCAP, BMI, and SESAC. (*See* FAC ¶¶ 25-26.) GMR, founded in 2013, injected new competition into the industry. (Grimmett Decl. ¶ 13.) GMR is unique, in that it operates as a "boutique" PRO. (*Id.* ¶ 15.) Whereas the three larger PROs collectively represent over 1.2 million writers and control roughly 22 million compositions, GMR is affiliated with fewer than 75 writers and has a repertory of only 26,000 songs. (*Id.* ¶ 14; FAC ¶ 38.)

This is by design. GMR's business model is founded on representing a small group of talented songwriters for whom it can provide individualized "concierge" service, all while running as a lean, cost-efficient business. (Grimmett Decl. ¶¶ 15-17.) GMR only has 17 employees and a single office location, and yet represents some of the top names in music. (*Id.* ¶¶ 10, 16.) By keeping overhead low and relying on modern, data-driven performance metrics, GMR can offer writers compensation that more accurately reflects their works' market value. (*Id.* ¶ 15.)

GMR's repertory consists almost entirely of premium content that is appealing to consumers. (*Id.* ¶ 17.) Radio stations that play in-demand music attract more listeners, which allows them to charge more for advertising spots. (FAC ¶¶ 9, 84.) Because of this dynamic, one would expect radio stations operating in a competitive market to seek out and compete with one another for the legal right to perform GMR's premium songs—which is exactly what happens in other industries that rely on public performances. (*Id.* ¶¶ 6, 10, 55, 69.)

---

[1] Contrary to RMLC's suggestion (Mot. 3 n.3), it may ***not***, as a matter of course, file a Rule 12(b)(6) motion challenging the adequacy of GMR's pleadings later on. *In re Apple iPhone Antitrust Litig.*, 846 F.3d 313, 318 (9th Cir. 2017).

PLAINTIFF'S OPPOSITION TO
MOTION TO DISMISS
2:16-CV-9051 BRO (ASX)

1    Unfortunately, that is not what's happening in the radio industry.

2    **B.    RMLC Is a 10,000-Member Strong Buyers' Cartel.**

3    RMLC exists for one purpose:  to suppress license fees through collusion.

4    (*Id.* ¶ 45.)  This is no secret.  According to its Executive Director, RMLC's

5    "overwhelming objective is to keep license fees for the commercial radio industry

6    as low as [it] can possibly keep them."  (*Id.* ¶ 1.)  RMLC achieves this goal by

7    negotiating for 10,000 commercial radio stations and their 3,000 owners, who

8    comprise more than 90% of the U.S. terrestrial radio industry.  (*Id.* ¶¶ 44-47;

9    Grimmett Decl. ¶¶ 24-32.)

10   RMLC's member stations are direct competitors who have agreed to fix and

11   negotiate license fees as a cartel.  (FAC ¶¶ 56-70.)  Most negotiations are carried

12   out by RMLC's Executive Committee, which itself is made up of executives from

13   the largest radio conglomerates in the country.  (*Id.* ¶ 51.)  Since RMLC represents

14   virtually the entire terrestrial radio industry, which reaches ***245 million*** listeners

15   weekly, it has tremendous leverage over rights-holders.  (*Id.* ¶ 2.)  Refusing to give

16   in to price-fixed license fees that RMLC demands means forfeiting royalty income,

17   as has happened here.  (*Id.* ¶¶ 2, 5-6.)  When a PRO does resist, RMLC resorts to

18   litigation and other coercive tactics, as it has done here.  (*Id.* ¶¶ 48, 76.)

19   **C.    RMLC Members Have Boycotted GMR's Licenses for Over Two**
20   **Years, While Continuing to Infringe GMR's Copyrights.**

     As a start-up PRO, GMR essentially had no choice but to contact RMLC to

21   initiate license negotiations, since RMLC represents nearly the entire radio

22   industry.  (Grimmett Decl. ¶¶ 26-33, 45.)  Bill Velez, RMLC's Executive Director,

23   made clear that RMLC wanted an industry-wide licensing arrangement.  (*Id.* ¶ 34.)

24   RMLC insisted on a number of one-sided terms, such as compulsory licensing to all

25   RMLC members and binding rate arbitration.  (*Id.* ¶ 35.)  GMR refused this

26   proposal, as it would dispossess GMR of the ability to negotiate directly with

27   RMLC members and would eradicate competition among stations.  (*Id.* ¶ 37.)

28

PLAINTIFF'S OPPOSITION TO
MOTION TO DISMISS
2:16-CV-9051 BRO (ASX)

1   Since RMLC's terms were unacceptable, GMR set out to negotiate one-on-
2   one with broadcasters.  (*Id.* ¶ 39.)  But radio stations directed GMR back to RMLC,
3   expressing that they preferred to negotiate solely through RMLC.  (*Id.*)  In 2014,
4   BMI announced that as of January 1, 2015, certain works that had been acquired by
5   GMR would no longer be covered by a BMI license.  (*Id.* ¶ 38.)  BMI notified radio
6   stations that they must contact GMR to obtain a license.  (*Id.*)  Still, none did.  (*Id.*)
7   In fact, from GMR's founding in 2013 through November 2016, not a ***single*** radio
8   station affirmatively reached out to GMR about licensing the works in its repertory.
9   (*Id.* ¶ 40.)  When GMR sought to initiate licensing talks, it was repeatedly referred
10  to RMLC.  (*Id.* ¶ 39.)

11  Meanwhile, ***thousands*** of RMLC members continued daily to play the
12  premium songs in GMR's repertory—all without a license, and all without paying
13  GMR or its songwriters a dime.  (*Id.* ¶¶ 44, 68-70; *see* FAC ¶¶ 74-76, 122-23, 129.)
14  This mass infringement continued unabated even after BMI made clear that radio
15  stations needed a license from GMR if they wanted to continue playing certain
16  songs.  (Grimmett Decl. ¶¶ 38, 44, 66-70.)  Having agreed to operate as a cartel,
17  very few RMLC members seriously considered breaking rank.

18  By December 2016, GMR had reached licensing agreements with only ***two*** of
19  RMLC's ***3,000*** owner-members.  (*Id.* ¶ 41.)  Both deals took at least a year to
20  negotiate, and both included contractual protections that would allow the stations to
21  take advantage of any benefits RMLC later obtains.  (*Id.* ¶ 42.)  As RMLC admits
22  (Mot. 3 n.3), these two deals cover no more than roughly 11% of the 10,000-plus
23  commercial radio stations that RMLC represents.  (*See* Grimmett Decl. ¶¶ 41, 43.)

24  All this left GMR with little choice but to resume negotiations with RMLC in
25  September 2016.  (*Id.* ¶ 45.)  RMLC made clear that it was negotiating for virtually
26  the whole industry (except stations that already had a direct license agreement with
27  GMR), and requested that GMR make an industry-wide license fee offer.  (*Id.* ¶
28  47.)  GMR negotiated in good faith, providing RMLC with a full list of songs in its

PLAINTIFF'S OPPOSITION TO
MOTION TO DISMISS
2:16-CV-9051 BRO (ASX)

1    repertory, which identified GMR's ownership share of each song.  (*Id.* ¶ 48.)

2         RMLC members' ASCAP and BMI licenses were set to expire at the end of

3    2016.  (*Id.* ¶ 52.)  This meant that as of January 1, 2017, stations would no longer

4    have the right to play any GMR songs that had previously belonged to ASCAP's or

5    BMI's repertories.  (*Id.*)  Faced with the prospect of its songs being excluded from

6    thousands of RMLC member stations, GMR made an interim license offer to

7    RMLC on November 18, 2016, on financial terms that were only 10% higher than

8    those previously offered by RMLC.  (*Id.* ¶ 53.)  Instead of responding to that offer,

9    RMLC filed a complaint and 200-page preliminary injunction motion against GMR

10   in the Eastern District of Pennsylvania that very day.  (*Id.* ¶ 54.)

11        **D.**    <u>**GMR's Interim License Offer Has Not Ended the RMLC Boycott.**</u>

12        After RMLC filed suit, GMR again offered to agree to an interim license.

13   (*Id.* ¶ 55.)  RMLC again refused.  (*Id.*)  RMLC did not return to the negotiating

14   table until Magistrate Judge Lynne A. Sitarski encouraged it to do so.  (*Id.* ¶ 58;

15   Marroso Decl. ¶ 10; *see* RMLC Ex. 9, at 19:6-8; Mot. 14.)  The parties ultimately

16   agreed to a nine-month interim deal that radio stations could opt into.  (Grimmett

17   Decl. ¶ 59.)  RMLC announced the terms of the deal on December 24, 2016, and

18   GMR conveyed the offer to RMLC members in January 2017.  (*Id.* ¶¶ 61-62.)

19        The interim license is merely a temporary expedient, which does ***nothing*** to

20   address, much less remedy, the multi-year boycott of GMR's licenses that virtually

21   all RMLC members agreed to and participated in.  (*Id.* ¶ 60.)  While many stations

22   have taken advantage of the interim offer, thousands have not.  (*Id.* ¶ 63-64.)  Some

23   stations continue to play GMR's content on an infringing basis.  (*Id.* ¶ 66.)

24   Contrary to RMLC's allegation that GMR "cannot point to any stations that have

25   elected to forego playing GMR-controlled music" (Mot. 15), several radio stations

26   ***are***, in fact, programming around GMR's repertory.  (Grimmett Decl. ¶ 65.)

27        **E.**    <u>**RMLC Relies on Untrue and Irrelevant Factual Allegations.**</u>

28        RMLC's Motion repeats many of the allegations it has leveled against GMR

PLAINTIFF'S OPPOSITION TO
MOTION TO DISMISS
2:16-CV-9051 BRO (ASX)

in the Philadelphia action, implausibly painting GMR as a monopolist.  (Mot. 3-4, 11-14.)  To support these factual claims, RMLC relies on its defunct preliminary injunction motion (RMLC Ex. 3) and a handful of affidavits filed in support of that motion (RMLC Exs. 4-8).  Because these allegations and supporting materials are irrelevant, inaccurate, and improper, the Court should disregard them.

To begin with, any allegations RMLC has made against GMR in Philadelphia are not entitled to a presumption of truth in *this* Court.  *FDIC v. CoreLogic Valuation Servs., LLC*, No. SA CV 11-0704 DOC (ANx), 2011 WL 5554324, at *8 (C.D. Cal. Nov. 14, 2011).  Nor can RMLC rely on its preliminary injunction brief or supporting affidavits for the truth of matters asserted therein.  *See Muse Apartments, LLC v. Travelers Cas. & Sur. Co. of Am.*, No. C12-2012 RSL, 2013 WL 6062340, at *1 (W.D. Wash. Nov. 18, 2013) (defendants could not rely on declarations filed in other cases for the truth); *Zackaria v. Wal-Mart Stores, Inc.*, No. EDCV 11-01418 VAP (DTBx), 2011 WL 6065169, at *3 (C.D. Cal. Dec. 5, 2011) (same); *BP West Coast Prods. LLC v. Greene*, 318 F. Supp. 2d 987, 994 (E.D. Cal. 2004) (refusing to accept briefs filed in other actions for truth of facts asserted).  Moreover, RMLC's allegations against GMR have no bearing on whether this Court has jurisdiction over *this* action.  *See NCAA v. Gov'r of N.J.*, 730 F.3d 208, 223 (3d Cir. 2013) ("[Article III] standing is not defeated by a plaintiff's alleged unclean hands and does not require balancing the equities").[2]

RMLC's allegations also suffer from an even more fundamental defect—they aren't altogether true.  In particular:

**1.     RMLC claims that GMR has "threaten[ed] copyright infringement litigation."**  (Mot. 12.)  In fact, GMR has not threatened any radio

---

[2] As further discussed in Part III, factual attacks on jurisdiction allow the Court to look outside the pleadings *only* to the extent necessary to resolve the jurisdictional challenge.  *See Blue Lake Rancheria v. Morgenstern*, No. 2:11-CV-01124 JAM-JFM, 2011 WL 6100845, at *3 (E.D. Cal. Dec. 6, 2011) (refusing to consider evidence that "[was] not relevant to the question of the Court's jurisdiction").

station with a copyright suit, although GMR would be within its rights to do so, since thousands of RMLC members continually played GMR songs, without licenses, for *years*.  (Grimmett Decl. ¶ 51.)  And far from being anticompetitive, enforcing copyrights is protected by the First Amendment.  *See Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 62-66 (1993) (enforcing copyrights immunized by *Noerr-Pennington* doctrine); *Kearney v. Foley & Lardner, LLP*, 590 F.3d 638, 643 (9th Cir. 2009) (*Noerr-Pennington* "derives from the Petition Clause of the First Amendment").

    **2.**    **RMLC alleges that GMR "refus[es] to offer any licensing alternatives to its blanket license."**  (Mot. 12.)  That's just not true.  During negotiations, GMR made clear to RMLC that it was open to alternative licensing forms for stations that play less music.  (Grimmett Decl. ¶ 49.)  On October 31, 2016, GMR proposed a license that included a discount for news, talk, and sports stations.  (*Id.*)  GMR has also granted single-song licenses, per-program licenses, and "all talk" amendments to other broadcasters.  (*Id.* ¶ 19.)  GMR has even granted retroactive licenses, where appropriate, to address situations where a licensee has unintentionally performed a GMR song without a proper license.  (*Id.* ¶ 20.)

    **3.**    **RMLC claims that GMR has "enter[ed] into *de facto* exclusive dealing arrangements with its affiliates."**  (Mot. 12.)  Even if true, so what?  There are "well-recognized economic benefits to exclusive dealing arrangements," *Omega Envt'l, Inc. v. Gilbarco, Inc.*, 127 F.3d 1157, 1162 (9th Cir. 1997), which typically "pose no competitive threat at all."  *Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*, 614 F.3d 57, 76 (3d Cir. 2010).  Even the vaunted ASCAP/BMI consent decrees permit writers to sign PRO-exclusive agreements.  *E.g.*, Sec. Am. Final J. ¶ IV(B), *United States v. ASCAP*, Civ. A. No. 41-1395 (S.D.N.Y. 2001).

    **4.**    **RMLC says that GMR has "tak[en] steps to ensure that prospective licensees cannot identify precisely which musical works are covered by its license or the degree to which they are covered."**  (Mot. 12.)

1   Patently false.  GMR readily provides its repertory to radio stations—complete with

2   ownership shares—upon request.  (Grimmett Decl. ¶¶ 21-23.)  GMR has provided

3   this exact information to RMLC multiple times.  (*Id.* ¶ 48.)  Moreover, the fact that

4   GMR represents fewer than 75 writers calls into serious doubt any claim that radio

5   stations cannot identify whose songs they can or cannot perform.  (*Id.* ¶ 14.)

6       GMR respectfully submits that the Court should decline to consider RMLC's

7   extraneous factual allegations as irrelevant and inadequately supported.

8   **III.   LEGAL STANDARD**

9       **A.   Constitutional and Prudential Ripeness.**

10      RMLC purports to bring a factual challenge to the Court's subject-matter

11   jurisdiction under Rule 12(b)(1).  (Mot. 16.)  While the Court may look to "facts

12   outside the complaint" to resolve a factual challenge, it must "resolve all disputes of

13   fact in favor of the non-movant."  *Dreier v. United States*, 106 F.3d 844, 847 (9th

14   Cir. 1996); *see Edison v. United States*, 822 F.3d 510, 517 (9th Cir. 2016).

15      The doctrine of "ripeness" is a component of Article III's case-or-

16   controversy requirement.  *Bova v. City of Medford*, 564 F.3d 1093, 1095-96 (9th

17   Cir. 2009).  The doctrine "measure[s] whether the litigant has asserted an injury that

18   is real and concrete rather than speculative and hypothetical."  *Thomas v.*

19   *Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1138-39 (9th Cir. 1999) (en

20   banc) (quotation omitted); *see Portman v. Cnty. of Santa Clara*, 995 F.2d 898, 902-

21   03 (9th Cir. 1993) (ripeness "focuses on whether there is a sufficient injury").

22      Where a plaintiff has sustained past or ongoing injuries-in-fact, his claim is

23   ripe.  *See Davis v. Guam*, 785 F.3d 1311, 1316 (9th Cir. 2015) (claims ripe where

24   plaintiff was "currently subject to unlawful treatment"); *ForestWatch v. U.S. Bur. of*

25   *Land Mgmt.*, No. CV-15-4378-MWF (JEMx), 2016 WL 5172009, at *1 (C.D. Cal.

26   Sept. 6, 2016) (claims ripe where alleged injury occurred in past).  The Article III

27   requirement for injury-in-fact is a "low threshold."  *Ross*, 524 F.3d at 222.

28      In addition to constitutional requirements, courts may look to prudential

PLAINTIFF'S OPPOSITION TO
MOTION TO DISMISS
2:16-CV-9051 BRO (ASX)

1    concerns when deciding whether a case is ripe.  *Thomas*, 220 F.3d at 1138.

2    Prudential ripeness asks the court to consider whether facts are sufficiently

3    developed to render the issue fit for judicial decision, and whether the parties would

4    suffer hardship if the court withheld review.  *Id.* at 1141.

5              **B.    The First-to-File Rule.**

6         The "first-to-file" rule permits a court to "decline jurisdiction over an action

7    when a complaint involving the same parties and issues has already been filed in

8    another district."  *Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 94-95 (9th

9    Cir. 1982).  If "the issues or parties involved in the two suits [are] not the same,"

10   "adherence to the first-to-file rule would be reversible error."  *Alltrade, Inc. v.*

11   *Uniweld Prods., Inc.*, 946 F.2d 622, 628 n.13 (9th Cir. 1991) (emphasis omitted).

12   **IV.   ARGUMENT**

13             **A.    RMLC's Motion to Dismiss Is Procedurally Improper.**

14        As an initial matter, the Court has discretion to deny the Motion because

15   RMLC violated the Local Rules and the Court's Standing Order.  Parties are

16   required to "discuss thoroughly, preferably in person, the substance of [any]

17   contemplated motion" at least seven days before filing.  C.D. Cal. L.R. 7-3; *see*

18   Dkt. 8, ¶ 5.b ("Failure to comply with Local Rule 7-3 may result in the Court

19   striking the motion and/or sanctions.").  RMLC waited until January 25, 2017—***two***

20   ***days*** before filing the Motion—to inform GMR, via a two-minute phone call, that

21   RMLC would seek dismissal due to "lack of ripeness" and the "first-to-file rule."

22   (Marroso Decl. ¶ 4, Ex. 1 at 5, Ex. 2 at 9.)  This last-minute phone call was plainly

23   inadequate.  *See Aguilar v. Ocwen Fin. Corp.*, No. 14-CV-07675-MFW (SSx),

24   2015 WL 1345279, at *1-2 (C.D. Cal. Mar. 24, 2015) (defendants violated Local

25   Rule 7-3 by waiting until two days prior to filing to initiate conference).  Had

26   RMLC properly conferred with GMR, GMR could have disabused RMLC of the

27   erroneous factual statements that pervade the Motion.

28        RMLC's contention that a letter it sent on December 8, 2016 satisfied Local

- 11 -

1    Rule 7-3 is groundless.  (Not. of Mot. 1-2.)  That letter did not invoke Local Rule 7-

2    3, did not mention ripeness or the first-to-file rule, did not invite a conference, and

3    concerned a Complaint that GMR subsequently amended.  (*See* RMLC Ex. 11.)  No

4    reasonable person would interpret that letter, which simply demanded dismissal of

5    the Complaint, as satisfying the pre-motion conference requirement.  *See Ward v.*

6    *Jetsuite, Inc.*, No. 16-CV-0584 AG (ASx), 2016 WL 3360962, at *1 (C.D. Cal.

7    June 8, 2016) ("take-it-or-leave-it proposition to stipulate to remand" was

8    inadequate); *Singer v. Live Nation Worldwide, Inc.*, No. 11-CV-0427 DOC

9    (MLGx), 2012 WL 123146, at *2 (C.D. Cal. Jan. 13, 2012) ("attempted in-writing

10   'conference' of counsel" violated rule).

11        The Court should deny the Motion and order RMLC to confer in good faith.

12        **B.    GMR's Claims Are Constitutionally Ripe.**

13             **1.    GMR Has Suffered Extensive Injury-In-Fact.**

14        RMLC claims that "[a] group boycott of GMR music has never occurred, at

15   any time."  (Mot. 18.)  But GMR does not allege that it has been injured because

16   RMLC stations have stopped playing the songs in GMR's repertory.  Rather,

17   GMR's injury was caused by RMLC member stations' collective agreement to

18   refrain from ***purchasing licenses*** from GMR.  (FAC ¶¶ 74, 122-24; Grimmett Decl.

19   ¶¶ 38-44, 67-75.)  The past and ongoing injuries that GMR has sustained as a result

20   of this group boycott of its licenses indisputably render its claims ripe.

21        The Complaint flatly contradicts RMLC's assertion that GMR's "sole claim

22   of alleged injury" consists of radio stations "refusing to play GMR's songs" (Mot.

23   17.)  GMR alleges, in no uncertain terms, that "more than 99% of the RMLC

24   owner-members [were] participating in and taking advantage of the RMLC's group

25   rate negotiation conduct by holding out for the anticompetitive terms the RMLC

26   demands on their behalf, ***rather than seeking a license from GMR directly***."  (FAC

27   ¶ 69 (emphasis added).)  Instead of "***compet[ing] for a license*** to GMR's premium

28   content," thousands of RMLC member stations deliberately perpetrated a

- 12 -

"collective and coordinated ***failure to seek a direct license*** from GMR." (*Id.* ¶¶ 76, 122 (emphases added).) Even after BMI announced that "certain works would no longer be covered by a BMI license, and invited stations to contact GMR, ***none did***." (*Id.* ¶ 74 (emphasis added).) "Faced with RMLC's blockade, GMR attempted direct negotiations with individual RMLC member stations," but was repeatedly "directed to the RMLC." (*Id.*) By the time GMR filed this action in December 2016, "only ***two*** of the RMLC's 3,000 owner-members ha[d] forgone the RMLC negotiations and entered into an agreement with GMR." (*Id.* ¶ 69.) The only plausible explanation for this is a "horizontal agreement among the stations to purchase a GMR license ***only*** at the price set by the RMLC." (*Id.*) Thus, RMLC's starting premise—that GMR has merely alleged a "boycott of GMR music" (Mot. 5) as opposed to a boycott of GMR licenses—is disingenuous at best.[3] It does not in any way speak to the validity of GMR's claims as actually alleged.

As a direct result of RMLC's conduct, GMR has ***already*** suffered extensive, concrete, and cognizable injuries-in-fact, sufficient to create a justiciable case and controversy. These include, at a minimum, the following:

**1.    GMR has been denied licensing agreements that many radio stations would otherwise have entered into.** (FAC ¶¶ 71, 123, 129, 131; Grimmett Decl. ¶¶ 67-70.) *See Prime Healthcare Servs., Inc. v. Harris*, No. 3:16-cv-00778-GPC-RBB, — F. Supp. 3d —, 2016 WL 6427924, at \*7 (S.D. Cal. Oct. 31, 2016) ("Prime's alleged lost business opportunity and corresponding economic harm constitutes an injury in fact."); *Morning Star Packing Co. v. SK Foods, L.P.*, 754 F. Supp. 2d 1230, 1236 (E.D. Cal. 2010) (plaintiffs who are "unable to secure contracts they would have otherwise been awarded" have suffered antitrust injury[4]);

---

[3] The details of RMLC's boycott are also spelled out and confirmed in the Declaration of Randy Grimmett, filed herewith. (*See* Grimmett Decl. ¶¶ 38-75.)

[4] Because antitrust standing is "more demanding" than Article III standing, *Tawfillis v. Allergan, Inc.*, 157 F. Supp. 3d 853, 862 (C.D. Cal. 2015) (quotation omitted), "[h]arm to the antitrust plaintiff is sufficient to satisfy the constitutional

PLAINTIFF'S OPPOSITION TO
MOTION TO DISMISS
2:16-CV-9051 BRO (ASX)

*see also Ostrofe v. H.S. Crocker Co.*, 740 F.2d 739, 741-44 (9th Cir. 1984) (victim of group boycott who was denied employment opportunities possessed antitrust standing); *Jones Knitting Corp. v. Morgan*, 361 F.2d 451, 459 (3d Cir. 1966) (group formed "for purposes of refusing to negotiate with Morgan for licenses" constituted illegal group boycott); *Sony Elec., Inc. v. Soundview Techs., Inc.*, 157 F. Supp. 2d 180, 184-89 (D. Conn. 2001) (upholding group boycott claim where electronic manufacturers refused to buy licenses to counterclaim-plaintiff's patent unless counterclaim-plaintiff acceded to anticompetitive license fee).

   **2.    GMR has been denied millions of dollars in licensing revenue that it would otherwise have received.**  (FAC ¶¶ 131-32; Grimmett Decl. ¶ 70.)  *See Clark v. City of Lakewood*, 259 F.3d 996, 1007 (9th Cir. 2001) (lost revenues constitute sufficient injury-in-fact); *First Class Vending, Inc. v. Hershey Co.*, No. CV-15-01188-MWF (FFMx), 2015 WL 12426155, at *3 (C.D. Cal. July 28, 2015) ("lost sales and profits satisfy the injury-in-fact requirement").

   **3.    GMR has had difficulty recouping its significant start-up costs.** (FAC ¶ 133; Grimmett Decl. ¶¶ 9, 71.)  *See Yount v. Salazar*, No. CV11-8171 PCT-DGC, 2014 WL 4904423, at *7 (D. Ariz. Sep. 30, 2014) ("loss of value in . . . investments" suffices as injury-in-fact); *Zazzali v. Hirschler Fleischer, P.C.*, 482 B.R. 495, 508 (D. Del. 2012) ("loss of money invested" constitutes injury-in-fact).

   **4.    Demand for GMR licenses has been suppressed.**  (FAC ¶¶ 122, 161, 168; Grimmett Decl. ¶ 72.)  *See Maya v. Centex Corp.*, 658 F.3d 1060, 1070-71, 1072 (9th Cir. 2011) ("reduction in value to one's property" is a "concrete injury" sufficient for standing).

   **5.    GMR faces the "Hobson's choice" of either accepting the below-competitive rates that RMLC demands or foregoing licensing revenue altogether.**  (FAC ¶ 130; Grimmett Decl. ¶ 73.)  *See In re Abbott Labs. Norvir*

---

standing requirement of injury in fact," *Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 535 n.31 (1983).

PLAINTIFF'S OPPOSITION TO
MOTION TO DISMISS
2:16-CV-9051 BRO (ASX)

1    *Anti-Trust Litig.*, 562 F. Supp. 2d 1080, 1084 (N.D. Cal. 2008), *rev'd on other*

2    *grounds sub nom. John Doe 1 v. Abbott Labs.*, 571 F.3d 930 (9th Cir. 2009)

3    (alleged "Hobson's choice" constituted antitrust injury).

4           These injuries have already occurred.  Past-tense.  They are not "speculative"

5    or "hypothetical," *Thomas*, 220 F.3d at 1139, nor do they depend on "future

6    contingencies that may or may not occur," *Clinton v. Acequia, Inc.*, 94 F.3d 568,

7    572 (9th Cir. 1996).  For roughly two years, the 10,000 commercial radio stations

8    that make up RMLC collectively refused to enter into even a ***single*** GMR license

9    agreement.  (FAC ¶¶ 44, 69-76, 122-23, 133; Grimmett Decl. ¶ 68.)  The harms

10   GMR suffered over those years, and which it continues to suffer to this day, are

11   necessarily ripe.  *See Initiative & Referendum Inst. v. Walker*, 450 F.3d 1082, 1098

12   (10th Cir. 2006) ("The ripeness challenge fails here because the Plaintiffs' alleged

13   injury is already occurring."); *Kessler Inst. for Rehab., Inc. v. Mayor & Council of*

14   *Borough of Essex Fells*, 876 F. Supp. 641, 652 (D.N.J. 1995) (alleged injuries were

15   "not hypothetical" where they had "already been inflicted").

16          Since GMR has already sustained actual injury, the decisions RMLC cites in

17   its Motion are inapposite.  (Mot. 19); *see Kelly v. Univ. Press of Miss.*, No. CV 16-

18   2960 PA (GJSx), 2016 WL 4445986, at *1, *4 (C.D. Cal. Aug. 16, 2016) ("no

19   copyright infringement ha[d] yet occurred" where allegedly infringing book ***did not***

20   ***yet exist*** and was "far from completion"); *Yoshioka v. Charles Schwab Corp.*, No.

21   C-11-1625 EMC, 2012 WL 5932817, at *9-10 (N.D. Cal. Nov. 27, 2012) (claim

22   unripe because there was no evidence that plaintiff had "incurred any tax liability"

23   or faced an "individual threat of prosecution," or that the IRS had a "generalized

24   history" of prosecuting people like plaintiff); *Mont. Envtl. Info. Ctr. v. Stone-*

25   *Manning*, 766 F.3d 1184, 1189-90 (9th Cir. 2014) (plaintiff's future injury was

26   contingent on defendant approving a still-pending application, and plaintiff "did not

27   allege a 'substantial risk' that [defendant] will approve the application"); *Bova*, 564

28   F.3d at 1096 (claim not ripe because injury had "not yet occurred").

PLAINTIFF'S OPPOSITION TO
MOTION TO DISMISS
2:16-CV-9051 BRO (ASX)

## 2.    GMR Continues to Suffer Injury.

Even if RMLC's members were to permanently cease their collusive and anticompetitive conduct tomorrow, GMR would still have a ripe claim for its past injuries.  *Outdoor Media*, 506 F.3d at 902.  But the radio cartel in fact persists, and many of GMR's injuries continue to accrue each day.  These present, ongoing injuries further support this Court's jurisdiction.  *See Clear Channel Outdoor, Inc. v. Bently Holdings Cal. LP*, No. C-11-2573 EMC,  2011 WL 6099394, at *5 (N.D. Cal. Dec. 7, 2011) (denying Rule 12(b)(1) motion where plaintiff's claims "concern[ed] past and current, ongoing behavior, not just future behavior").

RMLC asserts that the parties' interim license deal precludes any showing of injury to GMR.  To begin with, this argument is improper.  As RMLC admits, it agreed "not to use the negotiation of or existence of any interim license with any RMLC member *in any way*" in litigation.  (Marroso Decl. ¶ 12 (emphasis added), Ex. 3 at 13; *see* Mot. 4-5 n.4.)  Far from "simply recit[ing] the factual existence of the interim license" (Mot. 4 n.4), RMLC repeatedly argues that the interim license agreement renders GMR's claims unripe (*id.* at 4-5, 15, 18-20).  These arguments blatantly violate RMLC's agreement to not use the interim license "in any way."  *See Point Prods. A.G. v. Sony Music Entm't, Inc.*, No. 93 Civ. 4001(NRB), 2002 WL 31856951, at *5 (S.D.N.Y. Dec. 19, 2002) ("a party must be held to its pretrial commitments in the absence of events beyond its control").  RMLC's bad faith conduct is, frankly, sanctionable.  *See Toon v. Wackenhut Corrections Corp.*, 250 F.3d 950, 951-55 (5th Cir. 2001) (affirming sanctions award where counsel publicly revealed contents of settlement, in violation of confidentiality provision).

RMLC suggests the Court should overlook its breach, and consider evidence relating to the interim license deal, because parties cannot stipulate to jurisdiction. (Mot. 5 n.4 (citing *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003)).)  But RMLC is wrong on the law.  For "while a party may not stipulate to federal subject-matter jurisdiction, ***it can stipulate to facts from which***

1   ***jurisdiction can be inferred***." *Therasense, Inc. v. Becton, Dickinson & Co.*, No. C

2   04-02123 WHA, 2008 WL 2757041, at *1 (N.D. Cal. July 14, 2008) (emphasis

3   added).  Having agreed not to use evidence of the interim license deal "in any way,"

4   RMLC cannot now pull a bait-and-switch.

5   In any event, RMLC's use of the interim license agreement is unavailing.

6   RMLC would apparently have the Court believe that all, or virtually all, radio

7   stations have an interim license.  (*See* Mot. 14-15, 20.)  In reality, despite GMR's

8   round-the-clock efforts to sign up as many radio stations as possible, ***thousands*** of

9   RMLC member stations have refused to buy a license.  (Grimmett Decl. ¶¶ 62-64.)

10   Thus, GMR continues to suffer lost profits and business opportunities, depressed

11   demand for its licenses, and difficulty recouping its investments.  (*Id.* ¶¶ 66-74); *see*

12   *Ross*, 524 F.3d at 223-24, 226 (antitrust claims were ripe where an alleged group

13   boycott was causing "present, ongoing harms" to the plaintiffs).

14   Moreover, the nine-month interim license deal was a mere temporary

15   expedient to avoid litigating RMLC's preliminary injunction motion.  (Grimmett

16   Decl. ¶ 60; *see* RMLC Ex. 9, at 18:19-19:2.)  The temporary cessation of unlawful

17   conduct does not defeat jurisdiction.  *See City of L.A. v. Lyons*, 461 U.S. 95, 101

18   (1983) (six-month moratorium on challenged conduct did not moot claim).

### 3.   RMLC's Assertion That a Group Boycott of GMR's Music Is "Not Even Possible" Is Both False and Irrelevant.

19
20   RMLC claims that a group boycott of GMR's music is "not even possible"

21   and "cannot occur as a matter of fact."  (Mot. 19, 20.)  As discussed, the fact of the

22   matter is that thousands of RMLC members have already carried out a continuous,

23   multi-year boycott of GMR's ***licenses***, even while continuing to play GMR's songs

24   on an unauthorized basis.  ***That*** boycott and the ensuing injuries to GMR are

25   sufficient to support this action—regardless of RMLC's assertions about whether

26   RMLC members are able to stop playing GMR songs.

27   Of course, RMLC has also implicitly threatened to pull GMR's songs off the

28

PLAINTIFF'S OPPOSITION TO
MOTION TO DISMISS
2:16-CV-9051 BRO (ASX)

1    airwaves.  (FAC ¶¶ 2, 11, 76; Grimmett Decl. ¶¶ 73, 75.)  This is not an empty

2    threat.  GMR knows from experience that radio stations can "purge" its songs from

3    their airwaves.  RMLC's claim that radio stations "have no practical way to avoid

4    playing GMR's music" (Mot. 3) is belied by the reality that *several stations have*

5    *already elected to program around GMR's repertory in lieu of purchasing an*

6    *interim license*.  (Grimmett Decl. ¶ 65, Exs. A-D.)

7        In the past two months, multiple stations have pulled GMR's songs from

8    their airwaves.  For example, Decorah Broadcasting told GMR, "We've purged the

9    GMR-licensed compositions from our playlist on Triple-A KDEC-FM in Decorah

10    Iowa.  All syndicated shows have assured me they have done the same, so we have

11    no reason at this time to pay a fee."  (Grimmett Decl., Ex. B.)  Tabback

12    Broadcasting similarly wrote that GMR's "works and writers have been eliminated

13    from our play list & we shall not be paying licensing fees."  (Grimmett Decl., Ex.

14    C.)  After reviewing GMR's repertory, Steve Nichols "decided to simply drop

15    [GMR's] works on our 20+ stations."  (Grimmett Decl., Ex. D.)  As this sampling

16    shows, RMLC's assertion that GMR "cannot point to any stations that have elected

17    to forego playing GMR-controlled music" (Mot. 15) is utterly false.

18        The truth is that RMLC and its members are confusing "***can't*** stop" with

19    "***don't want*** to stop."  (*See, e.g.*, RMLC Ex. 6, ¶ 6 (claiming that stations "cannot

20    practically withdraw every one of the songs in GMR's repertory from their

21    broadcasts given the broad spectrum of music and 'A-list' artists within that

22    repertory," since doing so "would likely lead to a significant and irreversible drop

23    in listeners").)  There is nothing preventing radio stations from removing GMR's

24    music from their playlists, or from requiring advertisers and syndicators to either

25    refrain from playing GMR songs or obtain "through-to-the-listener" licenses—a

26    type of license that GMR has previously granted to syndicators.  (Grimmett Decl. ¶

27    19.)  If KDEC-FM in Decorah, Iowa can require assurance from "syndicated

28    shows" that no GMR music will be performed in their programming (*id.* ¶ 65), then

PLAINTIFF'S OPPOSITION TO
MOTION TO DISMISS
2:16-CV-9051 BRO (ASX)

industry giants like Entercom, Cumulus, and CBS Radio can do so as well.

### 4.  To the Extent RMLC Claims No Boycott Occurred, the Factual Dispute Cannot Be Resolved at this Stage.

To the extent RMLC may contend that no boycott of *any* sort has occurred, this factual dispute is not properly resolved on a motion to dismiss.  Whether RMLC and its members conspired, and whether they carried out a boycott against GMR, go directly to the merits of GMR's antitrust claims.  *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 553 (2007) ("crucial question" under Section 1 is whether conduct "stem[s] from independent decision or from an agreement, tacit or express") (quoting *Theatre Enters., Inc. v. Paramount Film Distrib. Corp.*, 346 U.S. 537, 540 (1954)); *Ballard v. Blue Shield of S. W. Va.*, 529 F. Supp. 71, 74 (S.D.W. Va. 1981) ("[W]hether or not a boycott has existed or exists presently is a question of fact going directly to the merits of the plaintiffs' case.").  If a jurisdictional challenge implicates an "essential element of a claim for relief," "the jury is the proper trier of contested facts."  *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006).  As the Ninth Circuit has held, "where the jurisdictional issue and the substantive issues are so intermeshed that the question of jurisdiction is dependent on decision of the merits, a party is entitled to have the jurisdictional issue submitted to the jury, rather than having the court resolve factual issues."  *Thornhill Publ'g Co. v. Gen. Tel. & Elec. Corp.*, 594 F.2d 730, 735 (9th Cir. 1979).

The Fifth Circuit's decision in *McBeath v. Inter-Am. Citizens for Decency Comm.*, 374 F.2d 359 (5th Cir. 1967), is instructive.  The district court had dismissed the plaintiff's antitrust claims, for lack of jurisdiction, because "no proof ha[d] been offered as to the alleged violation and the causal connection between [the] violation and the damages sustained."  *Id.* at 361.  The Fifth Circuit reversed, holding that "[t]he question of jurisdiction here, *including the existence of a conspiracy and a boycott or secondary boycott* and their significant effect on interstate commerce, is so inextricably connected with the merits of the case itself

1    that it was error for the court to determine that it lacked jurisdiction." *Id.* at 363

2    (emphasis added).  The plaintiff should have been given a "full opportunity to

3    prove his case on the merits." *Id.*

4         The same result follows here.  If RMLC's "jurisdictional" argument really

5    just boils down to a defense of "We didn't do it," this factual disputation is

6    "inextricably connected with the merits of the case." *Id.*  The Court may not

7    dismiss GMR's action under Rule 12(b)(1) on that basis, since GMR is entitled to a

8    "full opportunity to prove [its] case on the merits." *Id.*; *see Kohn Law Grp. v. Auto*

9    *Parts Mfg. Miss., Inc.*, No. CV-12-08063-MWF (MRWx), 2016 WL 6517085, at

10   *4-5 (C.D. Cal. Feb. 3, 2016) (denying Rule 12(b)(1) motion where defendant's

11   arguments went "directly to the merits of the action").

12        **C.    GMR's Claims Are Prudentially Ripe.**

13        GMR's claims are "fit for judicial decision" because they "do not arise in a

14   factual vacuum and are sufficiently framed." *Canatella v. State of Cal.*, 304 F.3d

15   843, 855 (9th Cir. 2002).  For roughly two years, RMLC members collectively

16   boycotted GMR by not purchasing its licenses.  The facts establishing this boycott

17   require no further development. *See Assiniboine & Sioux Tribes of Ft. Peck Indian*

18   *Reservation v. Bd. of Oil & Gas Conservation of State of Mont.*, 792 F.2d 782, 789

19   (9th Cir. 1986) (claims were fit for judicial decision where "further factual

20   development would not render the issue more concrete"); *see also Volvo N. Am.*

21   *Corp. v. Men's Int'l Prof's Tennis Council*, 857 F.2d 55, 64 (2d Cir. 1988) (antitrust

22   claim was fit for judicial decision where the challenged conduct was "having a

23   present anti-competitive effect," and the facts were "unlikely to be clarified

24   substantially by . . . further factual development") (quotation omitted).

25        Moreover, because RMLC's conduct is having "a real impact on present

26   affairs," *Volvo N. Am. Corp.*, 857 F.2d at 64, immediate review is not only

27   appropriate but necessary. *See Ross*, 524 F.3d at 225-26 (withholding consideration

28   of antitrust claims inappropriate where plaintiffs were experiencing "current,

- 20 -

1  ongoing harms"); *TruePosition, Inc. v. LM Ericsson Tel. Co.*, Civ. A. No. 11-4574,

2  2012 WL 3584626, at *27 (E.D. Pa. Aug. 21, 2012) ("it would be a hardship to

3  withhold relief due to the allegations of antitrust violations and resultant harm

4  already supposedly experienced by TruePositon [sic]").

5       Because GMR's claims are both constitutionally and prudentially ripe, the

6  Court has subject-matter jurisdiction over this action.

7  **D.    To the Extent Any Material Facts Remain in Dispute, the Court**

8  **Should Order Limited Jurisdictional Discovery.**

9       Since GMR has shown that it has incurred past and ongoing injuries, the

10  Court can and should deny this Motion on the papers.  If there is any doubt on that

11  score, GMR requests that the Court order limited jurisdictional discovery.  *See*

12  *Laub v. U.S. Dep't of Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003) (discovery

13  should be granted "where pertinent facts bearing on the question of jurisdiction are

14  controverted or where a more satisfactory showing of the facts is necessary").  Such

15  discovery would permit GMR to demonstrate further that RMLC and its members

16  have collectively boycotted GMR's licenses, thereby causing millions of dollars in

17  damages to GMR.  As in most antitrust cases, much of the relevant evidence is in

18  RMLC's and the radio stations' possession, beyond GMR's current reach.  *See*

19  *Poller v. CBS, Inc.*, 368 U.S. 464, 473 (1962) (in "complex antitrust litigation,"

20  "the proof is largely in the hands of the alleged conspirators").

21  **E.    The First-to-File Rule Does Not Bar GMR's Claims.**

22      **1.    GMR's Causes of Action Are Not Compulsory Counterclaims.**

23       GMR's claims against RMLC are not compulsory counterclaims.  A later-

24  filed action is not a compulsory counterclaim unless it arises out of the same

25  "transaction or occurrence" underlying the initial action, Fed. R. Civ. P. 13(a)(1),

26  meaning that the two claims must rest upon the "same aggregate set of operative

27  facts," *In re Pegasus Gold Corp.*, 394 F.3d 1189, 1196 (9th Cir. 2004).

28       RMLC claims the two lawsuits both "address" the "negotiations between

PLAINTIFF'S OPPOSITION TO
MOTION TO DISMISS
2:16-CV-9051 BRO (ASX)

1  RMLC and GMR that led to RMLC filing its lawsuit in Philadelphia," but does not

2  explain **how** or **why** those negotiations constitute the "operative facts" underpinning

3  each party's claims. (Mot. 23.)  While there may be some overlapping allegations

4  relating to failed license negotiations, the "mere fact" that claims "all ar[i]se out of

5  a business relationship between the parties" does not make them part of the same

6  transaction or occurrence—"even if there is some factual overlap between them."

7  *Plymouth Yongle Tape (Shanghai) Co. v. Plymouth Rubber Co.*, 683 F. Supp. 2d

8  102, 110 (D. Mass. 2009) (quotation omitted).  Even if claims are "rooted in the

9  same agreements," which is not the case here, "each party's performance and

10 alleged breach of each contract at issue" may hinge on different sets of operative

11 facts.  *Korrow v. Aaron's, Inc.*, 300 F.R.D. 215, 223 (D.N.J. 2014).  As the Ninth

12 Circuit has held, where two claims "d[o] not rest on the same 'aggregate core of

13 facts,'" the fact that they may rely on some of "the same information" is

14 immaterial.  *Mattel, Inc. v. MGA Entm't, Inc.*, 705 F.3d 1108, 1110 (9th Cir. 2013).

15     GMR's and RMLC's claims plainly do not rely on the same "aggregate core

16 of facts." *Id.*  This case is about colluding, not negotiating.  GMR alleges that

17 thousands of radio stations conspired to fix licensing fees and boycott GMR's

18 licenses.  (FAC ¶¶ 1-11, 50-70.)  This conspiracy was hatched among the stations,

19 entirely **outside** of any "negotiations between RMLC and GMR."  (Mot. 23)  Proof

20 of that conspiracy will depend on meetings, communications, and agreements

21 between and among RMLC and its members—**not** on RMLC's intermittent

22 negotiations with GMR.  (*See* FAC ¶¶ 64-68.)  While RMLC's coercive negotiation

23 tactics and statements may provide additional evidence of the conspiracy (FAC ¶¶

24 71-72, 75), GMR's antitrust claims will not rise or fall on those negotiations.

25     RMLC's claims are founded on an entirely distinct "aggregate core of facts":

26

27

28

GMR's alleged business practices.  (*See* Mot. 11-12, 23.)[5]  Plainly, GMR's alleged licensing practices and agreements with songwriters have nothing to do with the conduct, communications, and agreements between and among RMLC and its members, which are central to the claims asserted in ***this*** action.

### 2.   GMR's Claims Are Not Substantially Similar to RMLC's Philadelphia Suit.

The first-to-file rule applies only where the two actions are closely interrelated.  *See In re Burley*, 738 F.2d 981, 988 (9th Cir. 1984) (doctrine applies "[w]here identical suits are pending in two courts").  A "mere similarity of claims" does not suffice.  *Byerson*, 467 F. Supp. 2d at 636.  Rather, the "***resolution*** of both cases" must "turn on substantially the same legal issues and depend on substantially the same evidence." *Herer*, 927 F. Supp. 2d at 1090 (emphasis added); *see Adoma v. Univ. of Phoenix, Inc.*, 711 F. Supp. 2d 1142, 1149 (E.D. Cal. 2010) (applying rule where the "central question" in both suits was the same).  The Ninth Circuit has applied the rule where the "question" posed by a California action was "at the 'heart'" of a separate Mississippi action, such that an adverse judgment in the Mississippi case would "likely" bar recovery in the California case.  *Kohn Law Grp., Inc. v. Auto Parts Mfg. Miss., Inc.*, 787 F.3d 1237, 1241 (9th Cir. 2015).

As this suggests, the rule does not apply where "different outcomes in the two cases would be rational and reconcilable." *McGlynn v. Credit Store, Inc.*, 234 B.R. 576, 581 (D.R.I. 1991); *see Nat'l Veterans Legal Servs. Program v. United States*, Civ. A. No. 16-745 (ESH), 2016 WL 7076986, at *3 (D.D.C. Dec. 5, 2016) (rule does not apply where "a finding of liability in one case would have no impact on liability in the other case").  In *Cedars-Sinai Medical Center v. Shalala*, 125 F.3d 765 (9th Cir. 1997), for instance, the Ninth Circuit declined to apply the first-to-file rule where a group of hospitals' success in challenging certain regulations

---

[5] That GMR and RMLC are both asserting claims against each other under the Sherman Act is of no instance.  *See Mattel*, 705 F.3d at 1110 (fact that both parties sued one another for theft of trade secrets did not trigger first-to-file rule).

1  would be "no defense" to the opposing party's *qui tam* claims. *Id.* at 769.

2       That is exactly the situation at hand. Even assuming that RMLC could

3  succeed on its antitrust claims, that would not affect GMR's action against RMLC.

4  Since "unclean hands" is not a valid defense under the Sherman Act, Cartwright

5  Act, or Unfair Competition Law,[6] RMLC would remain liable for its unlawful

6  conspiracy *even if* GMR were somehow capable of unlawful monopolization, as

7  RMLC alleges in Philadelphia. In other words, GMR's alleged antitrust violations

8  are "no defense" to the claims GMR has asserted against RMLC. *Cedars-Sinai*,

9  125 F.3d at 769. The "issues in the two actions" are therefore "distinct." *Id.*[7]

10           **3.    Equitable Factors Militate Against Applying the First-to-File Rule.**

11

12       A court may decline to apply the first-to-file rule "for reasons of equity."

13  *Alltrade*, 946 F.2d at 628. For example, the rule does not apply where the first-filer

14  engaged in forum-shopping, or where the "balance of convenience" favors the

15  second forum. *Thomas & Betts*, 2015 WL 4718892, at *4 (quotation and citations

16  omitted). As GMR has argued in seeking dismissal of the Philadelphia action,

17  RMLC engaged in deliberate forum-shopping by filing in a district with no

18  _____

[6] *See Memorex Corp. v. IBM Corp.*, 555 F.2d 1379, 1381 (9th Cir. 1977); *Olenicoff

19  v. UBS AG*, No. SACV 08-1029, 2010 WL 8530286, at *17 (C.D. Cal. Mar. 16,

20  2010); *Jomicra, Inc. v. California Mobile Home Dealers Ass'n*, 12 Cal. App. 3d
   396, 401-02 (Ct. App. 1970).

21  [7] The cases RMLC cites only further demonstrate the inapplicability of the first-to-
   file rule here. Three cases involved mirror-image coercive and declaratory

22  judgment actions. *See Thomas & Betts Corp. v. Robroy Indus., Inc.*, No. CV 15-

23  04150 BRO (GJSx), 2015 WL 4718892, at *3 (C.D. Cal. Aug. 6, 2015); *Ruckus
   Wireless, Inc. v. Harris Corp.*, NO. 11-CV-01944-LHK, 2012 WL 588792, at *3

24  (N.D. Cal. Feb. 22, 2012); *Gen'l Prods. Mach. Shop, Inc. v. Systematic, Inc.*, No.

25  CV-06-99-E-BLW, 2006 WL 2051737, at *2 (D. Idaho July 20, 2006). In the
   fourth case, *City Antiques, Inc. v. Planned Furniture Promotions, Inc.*, No. 3:14-cv-

26  00467-SI, 2014 WL 3955216 (D. Or. Aug. 12, 2014), the second-filed action

27  asserted compulsory counterclaims to the first-filed action, such that the issues
   presented were "essentially identical." *Id.* at *4. RMLC's and GMR's suits are not

28  mirror-images and do not present "essentially identical" issues.

PLAINTIFF'S OPPOSITION TO
MOTION TO DISMISS
2:16-CV-9051 BRO (ASX)

connection to either party, in which no relevant conduct occurred, no material witnesses reside, and no material evidence exists.[8] (*See* FAC ¶¶ 13-14; RMLC Ex. 10, ¶¶ 3-13, 20; Grimmett Decl. ¶¶ 10-12, 33, 45-46.)  Not only does the Pennsylvania court lack personal jurisdiction over GMR, it is also an improper and inconvenient venue. *See Prospect Capital Corp. v. Bender*, No. 09 Civ. 826 (HB), 2009 WL 4907121, at *6 (S.D.N.Y. Dec. 21, 2009) (venue improper where "[v]irtually no conduct by any . . . Defendant actually occurred in or was directed to" district).  These equitable factors weigh strongly against applying the first-to-file rule.  *See Sutter Corp. v. P & P Indus., Inc.*, 125 F.3d 914, 917 (5th Cir. 1997) (first-to-file rule "must yield" where venue is inappropriate in first-filed court).

RMLC alternatively requests transfer to Pennsylvania.  (Mot. 24.)  But the Court may only transfer an action to a forum in which the case "might have been brought."  28 U.S.C. §1404(a).  Since the Pennsylvania court is an improper venue and lacks jurisdiction over GMR, transfer to that district is inappropriate.  *See McNamara v. Attys. Liab. Prot. Soc'y, Inc.*, No. CV 13-9274-DOC (RNBx), 2014 WL 12564123, at *4 (C.D. Cal. Apr. 16 2014) (movant must "demonstrat[e] that subject matter jurisdiction, personal jurisdiction, and venue would have been proper" in transferee court) (quotation omitted).

If nothing else, this Court should refrain from ruling on the first-to-file issue until GMR's personal jurisdiction and venue challenges are resolved.  *See Thomas & Betts*, 2015 WL 4718892, at *6 (staying action).

## V.    CONCLUSION

For the foregoing reasons, the Court should deny RMLC's Motion in full.

---

[8] GMR moved to dismiss RMLC's complaint on January 20, 2017.  On February 10, 2017, RMLC amended its complaint.  Because RMLC's amended complaint is still deficient, GMR will again move to dismiss the action for lack of personal jurisdiction, improper venue, and failure to state a claim.

| | |
|---|---|
| 1 | Dated:  February 24, 2017 |
| 2 | |

By:   */s/ Daniel M. Petrocelli*
        Daniel M. Petrocelli

DANIEL M. PETROCELLI
dpetrocelli@omm.com
DAVID MARROSO
dmarroso@omm.com
O'MELVENY & MYERS LLP
1999 Avenue of the Stars
Los Angeles, California 90067-6035
Telephone:  (310) 553-6700
Facsimile:  (310) 246-6779

RICHARD G. PARKER
rparker@omm.com
EDWARD D. HASSI
ehassi@omm.com
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, D.C. 20006-4001
Telephone:  (202) 383-5300
Facsimile:  (202) 383-5414

*Attorneys for Plaintiff Global Music
Rights, LLC*

- 26 -