EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

RADIO MUSIC LICENSE          :
COMMITTEE, INC.,             :
    *Plaintiff*,          :
                    :       CIVIL ACTION
                    :       NO. 16-6076
    v.                      :
                    :
GLOBAL MUSIC RIGHTS, LLC,    :
    *Defendant*.          :

## MEMORANDUM

**JONES, II    J.**                                                  **MARCH 29, 2019**

## INTRODUCTION

Plaintiff Radio Music License Committee ("RMLC") negotiates with Public Performance Organizations ("PRO")[1] for the licensing rights to music played by its member radio stations. Defendant Global Music Rights, LLC ("GMR") is a newly founded PRO that grants public performance licenses to the musical works within its repertory. RMLC claims that GMR has leveraged the competitive vacuum created by judicially-monitored consent decrees over the two largest PROs in the industry – the American Society of Composers, Authors and Publishers ("ASCAP") and Broadcast Music, Inc. ("BMI") – to poach a strategic group of songwriters and create a repertory that no radio station could succeed without access to. RMLC argues that GMR has created an untenable and illegal situation wherein RMLC's members are forced to either pay overly priced licensee fees to GMR or face copyright infringement claims, which at the tune of

---

[1] Also referred to as a "performing rights society," which, pursuant to 17 U.S.C. § 114(d)(3)(E)(ii), is an "association or corporation that licenses the public performance of nondramatic musical works on behalf of the copyright owner."

$150,000 per infringed work, would quickly bankrupt the infringing member.  RMLC filed this action to curb what it believes to be GMR's monopolistic conduct.

Though the substantive issue in this case requires ascertaining the line between good business and an antitrust violation, the matter pending before the Court only concerns whether this Court may constitutionally adjudicate RMLC's claims filed pursuant to Section 2 of the Sherman Act, 15 U.S.C. § 2, and Section 16 of the Clayton Act, 15 U.S.C. § 26.  Before the Court are several interrelated motions concerning whether this Court may properly exercise personal jurisdiction over GMR and whether this judicial district is a proper venue for this action.  The Court enlisted the assistance of the Honorable Lynne A. Sitarski, United States Magistrate Judge, in this endeavor who authored a thorough and thoughtful Report and Recommendation suggesting that the Court does not have personal jurisdiction over GMR, this Court is not a proper venue, and this matter should be dismissed without prejudice.  The Court has taken into consideration the Report and Recommendation and conducted a *de novo* review of the multiple interrelated motions and 1200 pages of record evidence.  The Court concludes that this Court may not exercise personal jurisdiction over GMR, and thus, this judicial district is not a proper venue to adjudicate this matter. The Court will depart from the Report and Recommendation in two regards only: (1) the Court will grant, in part, and deny, in part, RMLC's first Motion to Supplement the Jurisdictional Record; and (2) the Court will transfer this matter to the Central District of California rather than dismiss the action without prejudice.

# FACTUAL BACKGROUND AND PROCEDURAL HISTORY

I.    **FACTUAL BACKGROUND**

  A. **RMLC And GMR's Negotiations Prior To The Commencement Of This Action**

Given the posture of the case, the Court will give a factual recitation, despite the excellent presentation of the facts in the Report and Recommendation. As explained at greater length in the Standard of Review section *infra* pp. 28-29, RMLC, as the non-moving party to a 12(b)(2) motion without an evidentiary hearing, is entitled deference to all well-pled factual allegations and the resolution of any factual disputes in its favor. Consequently, the Court will set forth its own factual background.

Founded in 2013, GMR is a limited liability company organized under Delaware law and headquartered in Los Angeles, California. Decl. R. Grimmett (Mar. 3, 2017) ¶ 5 (ECF No. 57-2).[2] GMR is owned and managed by less than two dozen individuals and entities, the majority of whom reside in California.[3] *Id.* at ¶¶ 7-8. GMR is the first new PRO in the United States in more than seven decades. First Am. Compl. ¶ 2 (ECF No. 52); Mot. Strike MOL at 2 (ECF No. 56-1). Its sole purpose is to license the public performance rights of the musical copyright owners it represents. Decl. R. Grimmett (Mar. 3, 2017) ¶ 6 (ECF No. 57-2). These copyright owners enjoy certain exclusive rights over their works that prevent the reproduction, distribution, and use of them without a lawful exemption or the copyright holder's permission. First Am. Compl. ¶ 20

---

[2] For clarity and the reader's convenience, the Court includes both the "ECF No." and a defined term for a cited document that is referenced multiple times. As an example, there are multiple declarations from certain declarants filed in support of different motions. (*See, e.g.*, Declarations of David Marroso (ECF Nos. 51, 55, 59, 69, 70, 75, 92)).

[3] Two of GMR's employees work remotely from New Jersey.

(ECF No. 52-1). GMR represents 74 songwriters that own the copyrights of about 30,000 compositions. First Am. Compl. ¶ 44 (ECF No. 52 ); Decl. R. Grimmett (Mar. 3, 2017) ¶ 12 (ECF No. 57-2). Though the smallest of the four PROs operating in the United States, including ASCAP, BMI, and the Society of European State Authors and Composers ("SESAC"), GMR has compiled a repertory of musical works that radio stations cannot "comfortably exist without." First Am. Compl. ¶ 4 (ECF No. 52).

RMLC is a Tennessee based non-profit corporation operating as a trade association. First Am. Compl. ¶ 18 (ECF No. 52); Opp'n Mot. Dismiss at 3 (ECF No. 62). Its mission is to negotiate license fees with PROs on behalf of its 10,000 plus voluntary, terrestrial member radio stations so that they may legally play copyrighted works.[4] First Am. Compl. ¶¶ 10, 18, 20, 22 (ECF No. 52). The terrestrial radio stations comprising RMLC's membership account for over 90% of the radio industry's revenue. GMR's First Am. Compl. ¶ 49 (ECF No. 64-5). Copyright holders could directly negotiate with radio stations for licenses to their works, but the practice in the music industry has been for PROs to serve as an intermediary between copyright holders and licensees. First Am. Compl. ¶ 22 (ECF No. 52). Thus, RMLC plays an intermediary role between its members and PROs, which reduces the inconvenience of each of its members separately negotiating for a license with a PRO. Decl. W. Velez (Mar. 23, 2017) ¶ 10 (ECF No. 65). However, as an intermediary, RMLC does not have any authority to bind any of its members to a licensing agreement. Decl. J. VerStandig (Mar. 23, 2017) ¶ 6 (ECF No. 62-1). ("RMLC does not purchase music licenses and has no authority to contractually bind its member radio stations or to

---

[4] As noted in the Report and Recommendation, the record is not fully developed as to the make-up of RMLC's membership. Consequently, for purposes of the motions at issue herein only, the Court will treat the 10,000 plus, terrestrial radio stations referenced by RMLC in its First Amended Complaint as "members" of RMLC, with owners and other representatives acting on their behalves. First Am. Compl. ¶¶ 18, 49 (ECF Nos. 52); R&R at 2 n.3 (ECF Nos. 52).

purchase a license on their behalf"); *see also* Decl. E. Levin (Mar. 23, 2017) ¶ 7). Indeed, "[w]ith every PRO, each radio station decides for itself whether it wishes to purchase a license." Decl. W. Velez (July 21, 2017) ¶ 9 (ECF No. 87). These licenses come in varying types, allowing the owner a range of rights regarding flexibility in usage of the work, access to the PROs full repertory, and entitlement to discounts. First Am. Compl. ¶ 23 (ECF No. 52). RMLC represents stations throughout the United States, including California and Pennsylvania. Decl. W. Velez (July 21, 2017) ¶ 45 (ECF No. 87). Of RMLC's 10,000 members stations, 280 (or approximately 3%) are based in Pennsylvania. Decl. W. Velez (Mar. 23, 2017) ¶ 6 (ECF No. 65). The licenses negotiated, but not purchased, by RMLC permit a member radio station to play works from a PRO's repertory in their FCC-licensed geographic area. *Id.* at ¶¶ 5-6, 10.

Prior to 2014 when GMR approached RMLC to initiate a licensing relationship between it and RMLC's members, RMLC negotiated with ASCAP and BMI in accordance with judicial consent decrees in place since 1941 and 1966, respectively. First Am. Compl. ¶ 30 (ECF No. 52); Decl. R. Grimmett (Mar. 3, 2017) ¶ 5 (ECF No. 57-2). These consent decrees, in relevant part, set limitations on the initiation of infringement actions and required court oversight of licensing fee negotiations when a fee could not be agreed upon. First Am. Compl. ¶¶ 30-31 (ECF No. 52). ASCAP and BMI collectively represent 1.3 million affiliates, overseeing a repertory of 22 million musical works. First Am. Compl. ¶ 27 (ECF No. 52). The fourth and final PRO with whom RMLC negotiates licenses, SESAC, has a repertory of 400,000 songs created by 30,000 affiliates. GMR Mot. Dismiss Jx. 4 (ECF No. 57-1).[5] However, SESAC is not subject to a consent decree.

---

[5] *See also Radio Music License Comm., Inc. v. SESAC, Inc.*, No. 12-5807, WL 12114098, at *3 (E.D. Pa. Dec. 23, 2013). RMLC initiated litigation against SESAC on October 11, 2012 for alleged anticompetitive conduct in violation of Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1, 2, and Section 16 of the Clayton Act. *See* No. 2:12-cv-05807 at ¶¶ 1, 7 (ECF No. 1). After SESAC moved to dismiss the Complaint for failure to state a claim, which was granted in part,

First Am. Compl. ¶¶ 32, 34 (ECF No. 52). After RMLC sued SESAC for alleged violations of the Sherman Act and Clayton Act in October 2012, the parties entered into a 20-year settlement agreement, which currently governs the licensure of SESAC's repertory to RMLC. First Am. Compl. ¶ 37 (ECF No. 52).

Soon after GMR's founding, subject to neither a consent decree nor a settlement agreement, GMR attempted to negotiate with RMLC's Executive Committee for licenses with RMLC's 10,000-member stations across the United States. Decl. R. Grimmett (Mar. 3, 2017) ¶ 18 (ECF No. 57-2). Negotiations between RMLC and GMR took place from June 2014 through October 2016. Decl. R. Grimmett (Mar. 3, 2017) ¶ 19 (ECF No. 57-2). GMR understood that any fee offers made during those negotiations would be made available to RMLC's members, a list of which RMLC provided to GMR. Opp. Mot. Dismiss Jx. 4 (ECF No. 67); GMR's First Am. Compl. at Ex. 5, ¶ 61 (ECF No. 64-5); Decl. R. Grimmett (Mar. 3, 2017) ¶ 19 (ECF No. 57-2).[6] These negotiations were comprised of in-person meetings that were attended by some participants by phone as follows:

---

and denied in part, *see* No. 2:12-cv-05807 at 23, 74 (ECF Nos. 23, 74), RMLC and SESAC entered into a Settlement Agreement and executed a Stipulation of Dismissal with prejudice. No. 2:12-cv-05807 (ECF No. 134).

[6] Attached here as Exhibit 5 to the Declaration of Alfred C. Pfeiffer is GMR's First Amended Complaint for an action initiated by it against RMLC on December 6, 2016, in the Central District of California for violations of the Sherman and Clayton Acts. *See Global Music Rights, LLC v. Radio Music License Comm., Inc., et al.*, No. 16-9051 (C.D. Cal. Mar. 10, 2017) (ECF No. 1). The Court notes this given the analysis *infra* pp. 57-59, regarding transferring this matter to the Central District of California.

| DATE | LOCATION | PHONE PARTICPANTS | RMLC PARTICIPANTS | GMR PARTICIPANTS |
|---|---|---|---|---|
| June 4, 2014 | Washington, D.C. | | William Velez | Randy Grimmett |
| October 8, 2014 | New York City, New York | | William Velez, Ed Christian, John VerStandig, RMLC's attorneys | Randy Grimmett |
| August 24, 2015 | Detroit, Michigan | Eugene Levin (from Bala Cynwyd, Pennsylvania) and John VerStandig (from an unknown location) | Ed Christian, William Velez, Eugene Levin, John VerStandig | Randy Grimmett and Susan Genco |
| September 23, 2015 | Nashville, Tennessee | | William Velez | Randy Grimmett |
| October 21, 2015 | Nashville, Tennessee | | William Velez | Randy Grimmett |
| February 26, 2016 | Nashville, Tennessee | | William Velez | Randy Grimmett |
| March 19, 2016 | Austin, Texas | Randy Grimmett (from Los Angles, California) | RMLC attorney | Randy Grimmett and Susan Genco |
| July 15, 2016 | Los Angeles, California | | RMLC attorney | Randy Grimmett and Susan Genco |
| September 15, 2016 | New York City, New York | | RMLC attorney | Randy Grimmett, Susan Genco, and Sean O'Malley |
| October 4, 2016 | Nashville, Tennessee | | William Velez | Randy Grimmett |
| *October 26, 2016 | Los Angeles, California | | John VerStandig, Susanna Lowy, and RMLC attorneys | Randy Grimmett, Susan Genco, and Joseph Wetzel |

* Draft proposals exchanged at this meeting

Decl. R. Grimmett (Mar. 3, 2017) ¶ 19 (ECF No. 57-2); Decl. J. VerStandig (Mar. 23, 2017) ¶ 5 (ECF No. 62-1); Decl. E. Levin (Mar. 23, 2017) ¶ 8 (ECF No. 62-6).

Members of RMLC's Executive Committee attended these meetings on behalf of RMLC. RMLC's Executive Committee and Board of Directors, make all of RMLC's substantive decisions. Decl. W. Velez (Mar. 23, 2017) ¶ 5 (ECF No. 65). The Executive Committee is comprised, in part, of Chairman, Ed Christian, Vice-Chairman, John VerStandig, Executive Director, William Velez, and Treasurer, Eugene D. Levin. Decl. R. Grimmett (Mar. 3, 2017) ¶ 19 (ECF No. 57-2); Decl. J. VerStandig (Mar. 23, 2017) ¶ 5 (ECF No. 62-1); Decl. E. Levin (Mar. 23, 2017) ¶ 8 (ECF No. 62-6). Some individuals like Messrs. VerStandig and Levin also serve as members of RMLC's Board of Directors. Decl. J. VerStandig (Mar. 23, 2017) ¶ 2 (ECF No. 62-1); Decl. E. Levin (Mar. 23, 2017) ¶ 2 (ECF No. 62-6). In addition to serving on RMLC's Board of Directors and Executive Committee, Mr. VerStandig is also President and CEO of HJV Corporation, the general partner of HJV Limited Partnership, which trades as VerStandig Broadcasting – a RMLC member. Decl. J. VerStandig (Mar. 23, 2017) ¶¶ 1-2 (ECF No. 62-1). VerStandig Broadcasting is headquartered in Greencastle, Pennsylvania and operates four radio stations throughout the state. *Id*. Mr. Levin also occupies a leadership role for another RMLC member – Entercom Communications Corporation – for whom he serves as Vice President, Treasurer, and Controller. Decl. E. Levin (Mar. 23, 2017) ¶ 1 (ECF No. 62-6). Entercom is headquartered in Bala Cynwyd, Pennsylvania and operates 125 stations in 28 markets across the country. *Id*.

Throughout the negotiations, GMR indicated that if a licensing fee agreement could not be reached by December 31, 2016, it "intended to pursue its remedies against radio stations, including RMLC's member stations." Decl. E. Levin (Mar. 23, 2017) ¶ 13 (ECF No. 62-6); Decl. W. Velez (Mar. 23, 2017) ¶ 26 (ECF No. 65). This date represents the expiration of the "licenses-in-effect" granted by ASCAP and BMI to RMLC members after GMR's affiliates decided to leave those

PROs for GMR.  First Am. Compl. ¶ 51 (ECF No. 52).  The licenses-in-effect permitted RMLC members to perform works in GMR's newly acquired repertory without risk of an infringement suit until their expiration.  *Id.*  Consequently, from January 1, 2014 until December 31, 2016, RMLC members publicly performed works from GMR's repertory without compensating GMR or its songwriters.  Corr. Decl. R. Grimmett (Mar. 1, 2017) ¶ 44 (ECF No. 64-2).  Given this context, Mr. Levin took GMR's indication to mean "that stations without GMR licenses by January 1, 2017 would be at risk for potential infringement claims."  Decl. E. Levin (Mar. 23, 2017) ¶ 13 (ECF No. 62-6).

During the negotiations GMR also expressed a "desire to sell a license to all commercial radio stations in the United States."  Decl. J. VerStandig (Mar. 23, 2017) ¶ 6 (ECF No. 62-1).  Mr. VerStandig understood GMR as intending to use "RMLC as an intermediary to reach the [member] stations."  *Id.*  However, at the final meeting held before RMLC filed suit, GMR's CEO, Mr. Grimmett, identified "two of VerStandig Broadcasting's stations," stating they "absolutely need [RMLC's] artists."  Decl. J. VerStandig (Mar. 23, 2017) ¶ 7 (ECF No. 62-1).  Mr. VerStandig took this singling out of those two stations to mean they faced some greater risk of copyright infringement suits than what they were already facing, if RMLC and GMR could not negotiate an agreement by the end of 2016.  *Id.*  Moreover, he understood Mr. Grimmett to mean that these stations would face "severe economic consequences if they attempted to forego playing GMR's music after December 31, 2016."  *Id.*  Mr. VerStandig believed Mr. Grimmett's statements were made "in an attempt to compel the Pennsylvania stations that he owned to enter into direct licenses with GMR."  Decl. J. VerStandig (Mar. 23, 2017) ¶¶ 2, 6 (ECF No. 62-1).  However, GMR and Mr. VerStandig had never discussed VerStandig Broadcasting stations prior to RMLC filing this lawsuit, and Mr. Grimmett's statements were made at a meeting to negotiate an agreement between

9

RMLC and GMR that Mr. VerStandig attended as a member of RMLC's Executive Committee. Corr. Decl. R. Grimmett (Apr. 7, 2017) ¶ 43 (ECF No. 72-2).

Towards the end of RMLC and GMR's negotiations, and prior to the commencement of this action, GMR did offer and sell one direct license to an RMLC member – iHeartMedia, Inc. ("iHeart"). Decl. R. Grimmett (Mar. 3, 2017) ¶ 13 (ECF No. 57-2). And shortly after RMLC filed suit, GMR entered into one other direct license agreement with an RMLC member – Townsquare, Media, Inc. ("Townsquare"). *Id.* iHeart is a Delaware incorporated entity with headquarters in San Antonio, Texas. Decl. R. Grimmett (Mar. 3, 2017) ¶ 21 (ECF No. 57-2). As the owner of approximately 840 stations across the United States, iHeart is "the largest radio broadcaster in the U.S. . . . [accounting for] an estimated 20-25% of radio industry revenue." Corr. Decl. R. Grimmett (Mar. 1, 2017) ¶ 41a (ECF No. 64-2); Decl. E. Levin (July 21, 2017) ¶ 10 (ECF No. 90-24). Townsquare is incorporated under Delaware law as well and has its headquarters in Greenwich, Connecticut. Decl. R. Grimmett (Mar. 3, 2017) ¶ 21 (ECF No. 57-2). Townsquare owns "approximately 300 radio stations in the United States." Corr. Decl. R. Grimmett (Mar. 1, 2017) ¶ 41b (ECF No. 64-2). Some of the stations owned by iHeart and Townsquare are in Pennsylvania. Decl. W. Velez (Mar. 23, 2017) ¶ 41 (ECF No. 65).

After two years of negotiations, RMLC and GMR (collectively, the "Parties") were unable to negotiate mutually acceptable terms. With the impending deadline looming, RMLC chose to file this action. RMLC members are presently accessing GMR's repertory legally via interim licenses negotiated as a stop-gap measure while the parties litigate this action.

### B. Interim Licenses

As an initial point of context, the Parties provided a significant amount of record evidence regarding the "GMR and the RMLC Term Sheet" (the "Interim License Agreement") with

RMLC's Motion to File a Supplemental Brief in Support of Personal Jurisdiction ("Motion to Supplement") and GMR's Opposition thereto. Mot. Suppl. (ECF No. 90); Opp. Mot. Suppl. (ECF No. 92). As the Court must conduct a *de novo* review of the record, factual support from those motions is outlined here, even though the Court will grant, in part, and deny, in part, the Motion to Supplement as set forth in greater detail *infra* pp. 35-42.

Until RMLC and GMR negotiated the Interim License Agreement, iHeart (after March 2016) and Townsquare (after November 2016) were the only RMLC members accessing GMR's repertory with a GMR license. *Id*. Consequently, when RMLC filed its Complaint on November 18, 2016, it also filed a preliminary injunction due to the upcoming expiration of the licenses-in-effect. On November 23, 2016, the Court referred the preliminary injunction to the Honorable Magistrate Judge Sitarski. (ECF No. 9). At a telephone conference held on December 8, 2016, she suggested that the Parties negotiate an interim agreement that would obviate RMLC's need for injunctive relief. Hr'g Tr. (Dec. 8, 2016) 18:11-14; 19:7-8 (ECF No. 35). Doing so would allow the Parties to focus on the underlying action without prejudicing either side. First Am. Compl. ¶ 60 (ECF No. 52). The Honorable Magistrate Judge Sitarski oversaw negotiations between the Parties regarding the execution of an interim license, holding telephonic hearings on December 8, December 9, December 18, and December 21, 2016. (ECF Nos. 23, 29, 31, 33; *see also* ECF Nos. 35-37, 41). At the final hearing on December 21, RMLC's counsel represented that the Parties were "very close to having everything ironed out" for an interim agreement. Hr'g Tr. (Dec. 21, 2016) 3:16-18 (ECF No. 41). On December 23, the Parties exchanged a term sheet that RMLC provided to its members on December 24. Decl. D. Marroso (Aug. 28, 2017) ¶¶ 11-12 (ECF No. 92-1); Interim License Agreement [hereinafter "ILA"] (ECF No. 92-9). The Parties executed the

Interim License Agreement shortly thereafter and RMLC withdrew its preliminary injunction without prejudice to later re-filing.  (ECF No. 38).

The Interim License Agreement at base provided that GMR would provide RMLC's members with a nine-month interim license while the litigation proceeded.  First Am. Compl. ¶ 60 (ECF No. 52).  RMLC's members had until January 31, 2017 to enter an interim license.  ILA § 1(a) (ECF No. 92-9).  The Parties agreed to an interim license fee, but they "reserve[d] their respective rights to seek a retroactive fee adjustment in future licenses or as a result of the current litigation."  ILA § 2(c) (ECF No. 92-9).  As relates to RMLC's right to refile its preliminary injunction, the Parties agreed as follows:

> **Section 6.**   Lawsuits | Schedules.
>
> (b)   RMLC agrees it will not commence proceedings for injunctive relief prior to August 1, 2017 based on [a] circumstances as they exist as of the date of GMR agreement to offer the interim license or [b] any contention that GMR threatens to commence or actually commences an infringement lawsuit against radio stations who have performed or continue to perform GMR works without a written license from GMR.  RMLC agrees that it will not assert the level of industry acceptance of the interim license, or failure of any station(s) to accept the license as the basis for seeking preliminary injunctive relief[.]

And with respect to the jurisdiction and venue issues pending before the Court, the Interim License Agreement provides:

> **Section 7.**   Non-Precedential | No Impact on Lawsuits.
>
> (a)   GMR and RMLC agree that this agreement and the negotiations that led to this agreement are compromise negotiations protected pursuant to Federal Rule of Evidence 408.
>
> (b)   GMR and the RMLC agree that nothing about their discussions, this Agreement, and/or any interim license agreement shall affect any position of GMR, the RMLC, or any RMLC station with respect to alleged infringements that occurred prior to the date this Agreement was entered.  However, GMR agrees not to

> commence an infringement action against any RMLC member who executes an interim license until the expiration of the interim license, assuming all payments are timely made by the respective RMLC member.
>
> (c)    GMR and RMLC agree not to use the negotiation of or existence of any interim license with any RMLC member in any way, including to argue for or against personal jurisdiction or venue.

ILA §§ 1(a), § 6(b), § 7(a)-(c) (ECF No. 92-9).  The jurisdictional and venue terms are the result of GMR "insist[ing] that RMLC not use the negotiation or existence of interim licenses with RMLC members in any litigation" – "including to argue for or against personal jurisdiction or venue."  Decl. D. Marroso (Aug. 28, 2017) ¶ 8 (ECF No. 92-1); ILA § 7(c) (ECF No. 92-9).  And RMLC counsel, requesting that GMR "agree[] that nothing about this agreement, or RMLC's actions taken pursuant to it, can be used against RMLC or any member of the RMLC in any litigation, including GMR's litigation currently pending in the Central District of California." Decl. D. Marroso (Aug. 28, 2017) ¶ 8 (ECF No. 92-1) (quoting ECF No. 92-5).  GMR required that this term be reciprocal "so that nothing can be used against GMR in any litigation."  *Id*.

On January 20, 2017, after the execution of the Interim License Agreement, RMLC's counsel informed GMR's counsel that many of its members were reporting that they had not received an interim license offer from GMR.  Decl. A. Pfeiffer (Mar. 24, 2017) ¶ 4 (ECF No. 64).  As "GMR attempted to separately email the interim license offer to each of RMLC's 3,000 owner-members," it is possible that a RMLC member did not receive an offer from GMR.  Corr. Decl. R. Grimmett (Mar. 1, 2017) ¶ 62 (ECF 64-2).  Additionally, according to these reports, GMR was informing those station owners that did receive an offer that they had to take licenses for all of their stations, rather than on a per-station basis.  Decl. A. Pfeiffer (Mar. 24, 2017) ¶ 4 (ECF No. 64).  Mr. Grimmett, GMR's CEO and co-founder, states that "GMR did not refuse to grant an interim license to any radio station that agreed to the terms that GMR and RMLC had promulgated

13

to RMLC members." Corr. Decl. R. Grimmett (Mar. 1, 2017) ¶ 63 (ECF 64-2). Regardless, RMLC never identified which of its members supposedly did not receive an interim license offer. Decl. D. Marroso (Apr. 6, 2017) ¶¶ 15-19 (ECF No. 69-4). Moreover, of the "thousands of RMLC member[] stations" that did not purchase an interim license, several received an offer to do so, but opted not to after eliminating songs from GMR's repertory from their playlists. Corr. Decl. R. Grimmett (Mar. 1, 2017) ¶¶ 64-65 (ECF No. 64-2).

On May 9, 2017, RMLC approached GMR to discuss an extension of the interim licensing period because litigation was ongoing, and the licenses were set to expire in September 2017. Decl. W. Velez (July 21, 2017) ¶ 43 (ECF No. 87); May 9, 2017 Crsp. (ECF No. 90-7). GMR declined the offer to negotiate with RMLC in a letter dated May 20, 2017, stating it would discuss "additional interim and long-term licenses" with RMLC's members directly. Decl. W. Velez (July 21, 2017) ¶ 43 (ECF No. 87); *see also* May 20, 2017 Crsp. (ECF Nos. 90-8). In the May 20 letter, GMR premised its declination on statements made by RMLC's counsel throughout December 2016 while the Parties were negotiating an interim license. May 20, 2017 Crsp. (ECF Nos. 90-8). Specifically, GMR noted perceived impediments created by RMLC during the interim licensing process, RMLC's articulated inability to bind RMLC members to any license with GMR, and RMLC's alleged breach of the Interim License Agreement with its filing of the First Amended Complaint. Consequently, GMR informed RMLC that it was "willing to negotiate and is currently negotiating with individual stations and station groups long-term final licenses or extended interim licenses." *Id*. However, these negotiations did not include stations owned by companies existing under Pennsylvania law or headquartered within the state. Decl. W. Velez (July 21, 2017) ¶ 44 (ECF No. 87); Radio License Request (ECF No. 87-18). Indeed, RMLC posted a notice on its website entitled "Radio License Request," wherein it stated, in relevant part:

> As part of [the pending] lawsuit, the RMLC told GMR and its members that it did not negotiate the terms of licenses between RMLC members and the PROs and, going forward, GMR must approach each radio station owner directly and individually to make deals. GMR did so and we've entered hundreds of licenses with radio stations. Accordingly, radio station owners interested in securing the rights to perform works in GMR's catalog should contact GMR using the form below to negotiate the terms of a license or the extension of an existing license. ***Due to pending litigation with the RMLC, however, we cannot negotiate or enter licenses with stations owned by companies headquartered or based in Pennsylvania.***

Radio License Request at 2 (ECF No. 87-18) (emphasis added).

GMR maintained this position throughout June and July 2017 as the Parties negotiated interim license extensions for Pennsylvania radio stations. Decl. J. Giordano (Aug. 14, 2017) ¶¶ 21-33 (ECF No. 90-3); (*see also* ECF Nos. 90-7, 90-8, 90-9, 90-11 through 90-19). RMLC perceives GMR's conduct as a "boycott," the purpose of which was "to punish and retaliate against those Pennsylvania-based entities that have already stepped forward as third party [sic] witnesses to assist RMLC in this litigation, and to intimidate other witnesses from doing the same in the future." Mot. Suppl. MOL at 2 (ECF No. 90-1). However, GMR maintains that its conduct was reasonable and appropriate in light of RMLC's conduct after the Parties executed the Interim License Agreement. June 28, 2017 Crsp. (ECF No. 90-14). Consequently, GMR informed RMLC that:

> . . . [it] will not have any discussions, negotiations, or enter any licenses with any Pennsylvania-based company without sufficient assurance that those discussions, negotiations, or licenses will not be used by the RMLC or the Pennsylvania-based company in any way, including to argue for personal jurisdiction or venue in the State of Pennsylvania. In other words, we need iron-clad assurances that the RMLC will refrain from doing what it tried to do before: argue that Pennsylvania is an appropriate jurisdiction or venue because GMR was willing to extend an interim license to a Pennsylvania-based radio company as part of an effort to avoid potential preliminary injunction proceedings.

*Id.*  GMR reiterated this position in a letter dated July 20, 2017, however, RMLC did not respond. July 20, 2017 Crsp. (ECF No. 92-22).  Rather, the next day, feeling that GMR had placed it in an untenable position, RMLC again moved for a preliminary injunction ("Second Preliminary Injunction").  Second Prelim. Inj. (ECF No. 85); *see also* RMLC's Suppl. Memo. 7 (ECF No. 90-2).

RMLC based its Second Preliminary Injunction on GMR's purported boycotting of Pennsylvania radio stations and witness intimidation.  Second Prelim. Inj. 35 (ECF No. 85). Additionally, RMLC argued that GMR's "boycott" was further evidence of its anticompetitive conduct and an independent basis upon which the Court could exercise personal jurisdiction over GMR.  Second Prelim. Inj. MOL at 20-21, 31-32 (ECF No. 85-1).  In RMLC's view, GMR's "conditional refusal to deal," which "targeted" Pennsylvania stations constituted "tortious conduct," the effects of which were borne by Pennsylvania-based stations.  Second Prelim. Inj. MOL at 20-21, 31-32 (ECF No. 85-1).  However, as with the first preliminary injunction, the Parties were able to negotiate an interim license extension to allow the Court time to adjudicate the motion to dismiss for lack of personal jurisdiction and improper venue.  Decl. J. Giordano (Aug. 14, 2017) (ECF No. 90-3); August 14, 2017 Email Crsp. (ECF No. 90-20).

Per the terms of the Parties' agreement, on August 7, 2017, GMR offered license extensions to RMLC members through March 31, 2018 that included terms identical to those in the original interim license except for duration.  Decl. D. Marroso (Aug. 28, 2017) ¶ 31 (ECF No. 92-1); *see, e.g.*, August 7, 2017 Email Crsp. (ECF No. 92-24).  These extension offers were made to all RMLC members, including those based in Pennsylvania and including RMLC members who had submitted declarations in support of RMLC's lawsuit against GMR.  Decl. D. Marroso (Aug. 28, 2017) ¶¶ 32-33 (ECF No. 92-1); *see also* Mot. Suppl. (ECF No. 90); Second Mot. Suppl. (ECF

16

No. 114). A few days later, on August 11, 2017, GMR updated its website to inform the industry that it could now enter licenses with stations owned by companies headquartered or based in Pennsylvania. Decl. D. Marroso (Aug. 28, 2017) ¶ 34 (ECF No. 92-1). Despite this, RMLC still believes that GMR will at the next opportune moment attempt to coerce RMLC and its members into "supracompetitive" license fees because RMLC has not expressly stated that it "has abandoned its intention to boycott Pennsylvania-based entities after the interim license extensions expire." RMLC's Suppl. Memo. (ECF No. 90-2).

### C. Procedural History

The procedural history, although considerable, is relatively straight forward. On November 18, 2016, RMLC filed a Complaint and Motion for Preliminary Injunction (the "Preliminary Injunction") against GMR. The Complaint alleged monopolistic conduct in violation of the antitrust laws set forth in Section 2 of the Sherman Act, 15 U.S.C. § 2, and Section 16 of the Clayton Act, 15 U.S.C. § 26. Compl. ¶¶ 1, 12 (ECF No. 1). The Preliminary Injunction sought to enjoin GMR's unilateral imposition of monopolistic licensing terms on RMLC's members. Mot. Prelim. Inj. 1 (ECF No. 3).

On November 23, 2016, the Court referred the Preliminary Injunction to the Honorable Magistrate Judge Sitarski for a Report and Recommendation. Over the next month, the Parties negotiated an interim license solution to obviate the need for the Preliminary Injunction. They ultimately reached a resolution and RMLC withdrew the motion without prejudice to refiling at a later date. (ECF Nos. 38-39). Motion practice then ensued.

On January 20, 2017, GMR moved to dismiss the Complaint for lack of personal jurisdiction, improper venue, and failure to state a claim pursuant to Rules 12(b)(2), 12(b)(3), and 12(b)(6) (the "First Motion to Dismiss") (ECF No. 51). Alternatively, GMR sought to transfer the

action to the Central District of California pursuant to 28 U.S.C. § 1404(a). *Id.* In lieu of a response, RMLC amended the Complaint. First Am. Compl. (ECF No. 52). The First Amended Complaint included additional allegations relating to personal jurisdiction, venue, and the antitrust claims. First Am. Compl. ¶¶ 16(h), 16(i), 16(j), 17, 60-63, 86, Relief ¶ B (ECF No. 52); *see also* Allegations re Mot. Strike (ECF No. 56-2).

In response, GMR filed a Motion to Strike Specified Allegations ("Motion to Strike") on March 3, 2017. Mot. Strike (ECF No. 56). GMR argued that RMLC impermissibly added allegations to the First Amended Complaint related to discussions and conduct concerning the creation of the Interim License Agreement, execution of the interim licenses themselves, and extension of the interim licenses. Mot. Strike MOL at 6-10 (ECF No. 56-1). However, the Parties had agreed not to use the "negotiation of or existence of any interim license with any RMLC member . . . in any way." ILA, § 7 (ECF No. 92-9). Thus, RMLC's conduct violated the Interim License Agreement, Federal Rule of Evidence 408, which the Parties had incorporated by reference, and the doctrine of equitable estoppel. Mot. Strike MOL at 6-7, 10, 12-13 (ECF No. 56-1). GMR contends that given the immateriality of the allegations and impropriety of RMLC's conduct, the allegations should be stricken under Rule 12(f). Mot. Strike MOL at 6 (ECF No. 56-1). Contemporaneous with its filing of the Motion to Strike, GMR also filed a second Motion to Dismiss under Rule 12(b)(6), (ECF No. 58), and the present, reasserted Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue (the "Second Motion to Dismiss"). (ECF No. 57). On March 24, 2017, RMLC responded to each motion. (ECF Nos. 62, 63, 66).

In response to the Motion to Strike, RMLC argues that it was simply trying to update the Complaint, which is evident by its statement that "pursuant to the agreement between the parties to settle RMLC's motion for preliminary injunction, RMLC's member stations are not permitted

to pursue damages arising out of the interim license at this time."  First Am. Compl. ¶ 62 (ECF
No. 52); *see also* Opp. Mot. Strike at 1, 5 (ECF No. 63).  RMLC already had established personal
jurisdiction and venue in its original Complaint, thus the additional allegations were not needed
for that purpose.  Opp. Mot. Strike at 8 (ECF No. 63).  That notwithstanding, however, RMLC
believed GMR's material breaches of the Interim Licensing Agreement[7] permitted RMLC to use
activity related to the Interim License Agreement, and the execution of interim licenses subject
thereto, to support personal jurisdiction over GMR in Pennsylvania and venue in this judicial
district.  Opp. Mot. Strike at 1-2, 5-6, 11-12 (ECF No. 63).  This conduct provided an additional,
independent basis for personal jurisdiction and venue.

While these motions were pending, RMLC approached GMR in early May 2017 to discuss
an extension of the Interim License Agreement.  Decl. W. Velez (July 21, 2017) ¶ 43 (ECF No. 87).
The Parties attempted to negotiate an extension for the next two months but were unsuccessful.
On July 21, 2017, RMLC filed the Second Preliminary Injunction, based on GMR's "constructive
refusal to deal" with Pennsylvania radio stations without assurances that doing so would not be

---

[7] As set forth in the Report and Recommendation:

> RMLC asserts that GMR breached the interim licensing agreement by not
> offering licenses to some of RMLC's members: 'RMLC member stations
> contacted GMR before January 31 in an effort to purchase the interim license, but
> GMR did not respond them before January 31.'  RMLC Resp. Mot. Strike at 4-6,
> 10-13 (ECF 63).  In addition, RMLC asserts that GMR refused to offer interim
> licenses to some owners of 'stations groups on an individual-station basis,' as
> required by the interim license agreement.  *Id.* at 5-6, 11 (citing Term Sheet §
> 1(a)).  And 'because GMR is in unrepentant breach of the RMLC-GMR
> agreement [Interim License Agreement] that contains the use restriction, RMLC
> is now well within its rights to use the interim license to establish jurisdiction,
> venue, or liability.'  *Id.* at 1-2, 5, 8, 10, 12.

R&R at 12 n.8 (ECF No. 100).

19

used against GMR in any way.  Second Prelim. Inj. ¶ 2 (ECF No. 85).[8]  RMLC perceived GMR's conduct as a separate and independent "unlawful exercise of its monopoly power and effort to frustrate this litigation and intimidate potential witnesses."  *Id.*

On August 1, 2017, during a conference between the Parties overseen by this Court, the Parties were able to reach an agreement whereby GMR was granted an extension to the Interim License Agreement and RMLC agreed to postpone resolution of the Second Preliminary Injunction until the Court resolved the Second Motion to Dismiss.  R&R at 14-15 (ECF No. 100).  That same day, the Court referred the Second Motion to Dismiss to the Honorable Magistrate Judge Sitarski for a Report and Recommendation.  (ECF No. 88).

Shortly thereafter, RMLC filed a Motion for Leave to File Supplemental Memorandum in Opposition of the Second Motion to Dismiss ("Motion to Supplement").  Mot. Suppl. (ECF No. 90).  RMLC argued that the supplemental brief addressed "new facts that occurred after RMLC filed its original opposition brief, as well as the legal consequences of those new facts."  Mot. Suppl. 1 (ECF No. 90).  RMLC argues that review of its supplemental filing is appropriate because it is "well-settled" in this Circuit that a court may rely upon a defendant's post-complaint contacts with a forum to find jurisdiction where the underlying suit concerns an ongoing injury such as GMR's unlawful monopolistic scheme.  Mot. Suppl. 1-2 (ECF No. 90-1).  According to RMLC, GMR's "boycott" or "constructive refusal to deal" from May through August 2017 was specifically directed at Pennsylvania radio stations and is further evidence of GMR's unlawful, anticompetitive conduct.  Mot. Suppl. 2-3 (ECF No. 90-1).  RMLC supported the Motion to

---

[8] RMLC supported the Second Preliminary Injunction with Declarations from owners/managers of Pennsylvania-based stations, (*see, e.g.*, ECF Nos. 85-2, 85-6) and non-Pennsylvania based stations.  (*See, e.g.*, ECF Nos. 85-3, 85-5).

Supplement with the Parties' communications from May through July 2017 and declarations. (*See* ECF No. 90).

GMR contested the Motion to Supplement without qualification, arguing it was an "inexcusable maneuver to fabricate jurisdiction." Opp. Mot. Suppl. 2-3 (ECF No. 92). After RMLC approached GMR to extend the Interim License Agreement in May 2017, GMR immediately agreed to do so for all RMLC members except those based in Pennsylvania "until it received 'iron-clad assurances' that RMLC would not try to fabricate jurisdiction because of them." Opp. Mot. Suppl. 3 (ECF No. 92); (*see also* ECF No. 90-14). GMR argues that not only is there nothing improper with this conduct, it is well-established that entities that do not want to subject themselves to jurisdiction in Pennsylvania may choose not to do business with Pennsylvania residents. Opp. Mot. Suppl. 3 (ECF No. 92). Moreover, GMR maintains that it never refused to do business with Pennsylvania radio stations. Rather, it simply sought agreement to conditions that would ensure that an extension of the Interim Licensing Agreement would not be used to establish personal jurisdiction or venue given RMLC's purported violation of the original Interim License Agreement by using related activity as new allegations in the First Amended Complaint. Opp. Mot. Suppl. 2-4 (ECF No. 92); (*accord* ECF Nos. 90-8, 90-12, 90-14, 90-16).

Given the relatedness of the Motion to Supplement to the Second Motion to Dismiss, on November 28, 2017, the Court also referred the Motion to Supplement to the Honorable Magistrate Judge Sitarski for a Report and Recommendation. (ECF No. 99). The next day, on November 29, 2017, the Honorable Magistrate Judge Sitarski filed her Report and Recommendation, suggesting that the Court deny the Motion to Supplement and grant the Second Motion to Dismiss. RMLC filed timely and specific objections to the Report and Recommendation (the "Objections") on

December 13, 2017, Objs. R&R (ECF No. 101), which GMR timely opposed (the "Opposition to the Objections") on December 27, 2017. Opp. Objs. R&R (ECF No. 103). RMLC filed a Reply in Support of the Objections after the Court granted it leave to do so on January 12, 2018. (ECF No. 106).

While the Court reviewed the Report and Recommendation, interrelated motions, and hundreds of pages of record evidence, GMR filed three motions for telephonic status conferences requesting that the "Court provide the parties with a brief update regarding the status of RMLC's pending objections to Magistrate Judge Sitarski's Report." (*See, e.g.*, ECF No. 109-1).

Additionally, on January 18, 2019, RMLC filed a second Motion for Leave to Supplement the Jurisdictional Record with Additional Facts ("Second Motion to Supplement"), (ECF No. 114), which GMR opposed on January 29, 2019. (ECF No. 115). RMLC contends that its Second Motion for Leave supports the Objections it filed to the Report and Recommendation regarding the proposed denial of its Motion to Supplement. Second Mot. Suppl. MOL at 1-2 (ECF No. 114-1). Specifically, RMLC argues that it can set forth new evidence of the witness intimidation it attempted to illustrate in the Motion to Supplement through the Declaration of Mr. Levin, regarding GMR's purported "retaliation" against Entercom, a Pennsylvania-based RMLC member. Mr. Levin avers that GMR is the only PRO that refuses to offer Entercom a license that would allow it to play GMR's repertory on its new non-interactive streaming service. Decl. E. Levin (Jan. 17, 2019) ¶¶ 8-9 (ECF No. 114-2). The Interim License Agreement would not cover this activity. Decl. E. Levin (Jan. 17, 2019) ¶¶ 8-9 (ECF No. 114-2). Consequently, in December 2018, a Vice President of Entercom's Business Development team sought a separate license from the Interim License Agreement from GMR. Decl. E. Levin (Jan. 17, 2019) ¶ 10 (ECF No. 114-2). GMR's counsel conveyed that GMR declined to issue such a license "in light of RMLC's pending

antitrust litigation with Global Music Rights, and due to positions previously advanced by Entercom." Decl. E. Levin (Jan. 17, 2019) ¶¶ 10-12 (ECF No. 114-2). Mr. Levin avers that because of GMR's refusal to issue this separate license, "Entercom has determined that it cannot launch the new non-interactive streaming functionality for Radio.com that it had planned." Decl. E. Levin (Jan. 17, 2019) ¶ 14 (ECF No. 114-2).

GMR opposes the Second Motion to Supplement as well. Opp. Sec. Mot. Suppl. (ECF No. 115). GMR argues that as Entercom had no business dealings with it when RMLC filed the Complaint there is no need to supplement based on this post-Complaint contact because it is irrelevant to the jurisdictional analysis. Opp. Sec. Mot. Suppl. 5-6 (ECF No. 115). Indeed, according to GMR, the only business relationship between GMR and Entercom concerns the interim licenses entered pursuant to the Interim License Agreement. Opp. Sec. Mot. Suppl. 5 (ECF No. 115); *accord* Decl. E. Levin (Jan. 17, 2019) ¶¶ 3, 6 (ECF No. 114-2). GMR perceives the Second Motion to Supplement as another "strategic" attempt to create jurisdiction. Opp. Sec. Mot. Suppl. 6 (ECF No. 115). It believes that had it acquiesced to Entercom's "out of the blue" request, RMLC "would have sought to use *that* new license to establish jurisdiction." *Id.*

## II.     REPORT AND RECOMMENDATION

The Honorable Magistrate Judge Sitarski recommended that the Court: (1) grant GMR's Second Motion to Dismiss, and (2) deny RMLC's Motion to Supplement. R&R at 6 (ECF No. 100). After a careful and thorough jurisdictional analysis, she determined that this Court may not exercise personal jurisdiction over GMR and venue is not proper in this judicial district. R&R at 28 (ECF No. 100).

The Report and Recommendation first addresses whether this judicial district is a proper venue for GMR. R&R at 27-28 (ECF No. 100). After considering Section 2 of the Sherman Act,

Section 12 of the Clayton Act, and the general venue statute, 28 U.S.C. § 1391, it recommends that neither of these provisions make venue proper in this judicial district because the Court may not exercise personal jurisdiction over GMR. *Id.*

The Report and Recommendation then addresses personal jurisdiction with a four-part jurisdictional analysis. *First*, it addresses RMLC's implied argument that the Court may exercise jurisdiction over GMR based on the "National Contacts Test," provided for by Section 12 of the Clayton Act. R&R at 25-27 (ECF No. 100); *see also In re Automotive Refinishing*, 358 F.3d 288, 296-978 (3d Cir. 2004). It concludes that this is an improper basis from which to exert personal jurisdiction because GMR is not a foreign (non-U.S.) corporation. *Second*, the Report and Recommendation addresses RMLC's lack of argument regarding general jurisdiction and the absence of any supporting record evidence. R&R at 29 (ECF No. 100). *Third*, it considers whether the Court may exercise specific jurisdiction over GMR. R&R at 31-35 (ECF No. 100). Although, this piece of the jurisdictional analysis requires an evaluation of three requirements, the Report and Recommendation only addresses the purposeful availment prong, finding RMLC's failure to satisfy this prong dispositive. R&R at 30, 35 (ECF No. 100). *Fourth*, and finally, the Report and Recommendation considers whether personal jurisdiction could be exercised over GMR based on the "Effects Test" set forth in *Calder v. Jones*, 465 U.S. 783 (1984). R&R at 35-38 (ECF No. 100). *Calder* provides for the exercise of specific jurisdiction over a defendant that commits an intentional tort, the effects of which were aimed at and primarily felt in a particular forum. R&R at 36-37 (ECF No. 100). For the purposes of resolving the Second Motion to Dismiss, the Report and Recommendation accepts as true that RMLC plausibly pled an intentional antitrust violation and that Pennsylvania radio stations felt the brunt of the harm caused by GMR's alleged anticompetitive conduct. R&R at 37 (ECF No. 100). Nonetheless, the Report and

Recommendation concluded that RMLC could still not demonstrate that GMR "expressly aimed" its tortious conduct at Pennsylvania, thus jurisdiction could not be exercised over GMR under this theory. R&R at 37-38 (ECF No. 100).

The Report and Recommendation next discusses why the Court should deny the Motion to Supplement. R&R at 23-24 (ECF No. 100). The Report and Recommendation discusses the Parties' critique of one another's performance of their interim licensing obligations, but found that neither side's purported material breaches justified non-performance of the Interim License Agreement. *Id*. Thus, after considering RMLC's supplementary materials the Report and Recommendation concludes that:

> nothing contained in the proffered supplementary materials, and none of the cited flaws as to each side's discharge of their respective obligations, warrants departure from the promise they made to each other 'not to use the negotiation of or existence of any interim license with any RMLC member in any way, including to argue for or against personal jurisdiction or venue.' Term Sheet § 7(c).

R&R at 24 (ECF No. 100).[9]

Finally, the Report and Recommendation discusses why the Court should dismiss RMLC's case rather than transfer the matter under 28 U.S.C. § 1404(a). Dismissal is recommended rather than transfer because RMLC did not request a transfer or cite any hardship or prejudice it would suffer in the absence of a transfer. R&R at 39 (ECF No. 100).

## III.    RMLC'S OBJECTIONS TO THE REPORT AND RECOMMENDATION

RMLC raised four objections to the Report and Recommendation. Objs. R&R at 1 (ECF No. 101). ***First***, RMLC objected to the recommendation that this Court deny RMLC's Motion to

---

[9] The Second Motion to Supplement was not before the Honorable Magistrate Judge Sitarski.

Supplement.  Objs. R&R at 6-10 (ECF No. 101).  **Second**, RMLC objected to the recommendation

that the Court dismiss the First Amended Complaint for lack of personal jurisdiction and improper

venue.  *Id*.  **Third**, RMLC objected to the Report and Recommendation's purported failure to

address RMLC's request for jurisdictional discovery.  *Id*.  **Fourth**, and finally, RMLC objected to

the recommendation that the Court dismiss this matter, rather than transfer it to the Central District

of California.  Objs. R&R at 16 (ECF No. 101).  The Court will address RMLC's arguments

supporting the first two objections together, as they are related, and the remaining objections in

turn.

RMLC contends that the Honorable Magistrate Judge Sitarski's recommendation to deny

the Motion to Supplement resulted from an improper refusal to consider the "Pennsylvania-

specific boycott that GMR imposed on Pennsylvania-based radio stations from at least May to

August 2017 as a relevant jurisdictional contact."  Objs. R&R at 4 (ECF No. 101).  RMLC

perceives this as an error, because it believes the "boycott" is evidence of the type of contact that

was found lacking in the Report and Recommendation and independently establishes a prima facie

case of jurisdiction and venue.  *Id*.  RMLC argues that "the evidence of record demonstrates

conclusively that GMR engaged in the complete boycott of Pennsylvania-based stations from at

least May to August 2017 for reasons **other than** trying to protect its jurisdictional arguments."

Objs. R&R at 5(ECF No. 101).  Moreover, even if this argument is not obvious on its face, RMLC

argues that the posture of the case required that these allegations be taken as true.  Objs. R&R at 6

(ECF No. 101).  According to RMLC, the Report and Recommendation erred on this issue because

it did not separate interim license related conduct from GMR's boycott.  *Id*.  The latter constituted

independent conduct unrelated to activity concerning the Interim License Agreement, which was

permissible for the Court to review.  Objs. R&R at 6-8 (ECF No. 101).  Moreover, RMLC argues

that the Report and Recommendation improperly relies upon GMR's eventual offer of extensions to the interim licenses as mooting the fact that the boycott occurred in the first place. Objs. R&R at 9 (ECF No. 101). Finally, RMLC argues that the Report and Recommendation improperly concluded that GMR's public notice of its boycott did not constitute intimidation and retaliation. Objs. R&R at 10-11 (ECF No. 101). RMLC contends that if this boycott and witness intimidation had been considered, it would have been evidence that GMR purposefully availed itself of Pennsylvania under a traditional specific jurisdictional analysis and/or that the tortious conduct established jurisdiction under *Calder's* "Effects Test." Objs. R&R at 12 (ECF No. 101).

RMLC next critiques the Report and Recommendation's alleged failure to address RMLC's requests for jurisdictional discovery in the event the jurisdictional contacts identified were found lacking. Objs. R&R at 13-16 (ECF No. 101). Indeed, RMLC argues that this "omission alone is a sufficient ground for rejecting the R&R in its entirety." Objs. R&R at 13 (ECF No. 101). RMLC argues that its requests for jurisdictional discovery were set forth in its Opposition to the Second Motion to Dismiss:

- RMLC's knowledge of the contents of GMR's contract with iHeartMedia comes from public sources and GMR's own statements. Should the Court conclude that additional details of the iHeart Media contract are possibly relevant to these motions, jurisdictional discovery into this license is requested and appropriate. Opp. Mot. to Dismiss at 5 n. 4 (ECF No. 62); *accord* Objs. R&R at 15 (ECF No. 101).

- Jurisdictional discovery would likely demonstrate that GMR had similar communications with additional groups to license Pennsylvania stations, including CBS. Opp. Mot. to Dismiss at 16 n. 11 (ECF No. 62); *accord* Objs. R&R at 13 (ECF No. 101).

- To the extent the Court has any doubt about whether personal jurisdiction or venue are proper, then RMLC requests an opportunity for jurisdictional discovery. . . . Existing facts suggest that discovery will uncover other substantial contacts that GMR has had with Pennsylvania both before and after RMLC filed its original complaint. Opp. Mot. to Dismiss at 36-37 (ECF No. 62); *accord* Objs. R&R at 13 (ECF No. 101).

27

Alternatively, but relatedly, RMLC argues that its arguments for jurisdiction set forth with "'reasonable particularity' the 'possible existence' of relevant jurisdictional contacts," which warranted the grant of jurisdictional discovery.  Objs. R&R at 16 (ECF No. 101).

Finally, RMLC objects to the Report and Recommendation's dismissal of the case instead of transfer pursuant to 28 U.S.C. § 1631 or § 1406(a).  RMLC argues that under circumstances such as these, transfer is preferable to dismissal in this Circuit.  Objs. R&R at 16 (ECF No. 101).  Moreover, even though RMLC did not request transfer, it argues that it is within the Court's authority to transfer a case *sua sponte* where doing so is in the interest of justice.  Objs. R&R at 17 (ECF No. 101).

## STANDARD OF REVIEW

### I.      REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1)(c), a district court reviewing a magistrate judge's report and recommendation must "make a de novo determination of those portions of the report or specified proposed findings or recommendation to which objection is made."  *Accord* Fed. R. Civ. P. 72(b).  General or blanket objections do not comply with the specificity requirement and do not comport with the Federal Rules or this Court's Local Rule 72.1(IV)(b).  *Facyson v. Barnhart*, No. 02-3593, 2003 WL 22436274, at *1 (E.D. Pa. May 30, 2003).  Where these prerequisites have not been met, the Third Circuit Court of Appeals has held that it is best to review dispositive legal issues addressed in the report for plain error or manifest injustice.  *Henderson v. Carlson*, 812 F.2d 874, 878 (3d Cir. 1987*); see also Harper v. Sullivan*, No. 89-4272, 1991 WL 24908, at *1 n.3 (E.D. Pa. Feb. 22, 1991).

## II.    MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE

After a jurisdictional challenge is made pursuant to Rule 12(b)(2), plaintiff bears the burden of putting forth facts that demonstrate the existence of personal jurisdiction.  *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002).  As a Rule 12(b)(2) motion "is inherently a matter which requires resolution of factual issues outside the pleadings . . . [o]nce the defense has been raised, then the plaintiff must sustain its burden of proof by establishing jurisdictional facts through sworn affidavits or other competent evidence."  *Time Share Vacation Club v. Atlantic Resorts, Ltd.*, 735 F.2d 61, 66 n. 9 (3d Cir. 1984).  The proffered evidence must show "with reasonable particularity the existence of sufficient contacts between the defendant and the forum state to support jurisdiction." *See Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987).  Where a jurisdictional challenge is raised and the Court does not hold an evidentiary hearing, plaintiff need only establish a prima facie case of personal jurisdiction.  *O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 316 (3d Cir. 2007).  In this circumstance, a court must accept as true all uncontroverted allegations in the pleadings and all reasonable inferences therefrom.  *United Healthcare Services, Inc. v. Cephalon, Inc.*, No. 17-0555, 2018 WL 878766, at *1 (E.D. Pa. Feb. 13, 2018).  Where "allegations are contradicted by an opposing affidavit . . . plaintiff[] must present similar evidence in support."  *Pearce v. Mizuho Bank, Ltd.*, No. 18-0306, 2018 WL 4094812, at *3 (E.D. Pa. Aug. 27, 2018).  Any factual disputes must be resolved in plaintiff's favor.  *United Healthcare Services,* 2018 WL 878766, at *1.

## **DISCUSSION**

### I.  **MOTION TO STRIKE AND MOTIONS TO SUPPLEMENT**

Given the posture of the case, the Court must resolve GMR's Motion to Strike and RMLC's Motions to Supplement prior to addressing the merits of the Second Motion to Dismiss.   The court must accept as true all uncontroverted allegations in the pleadings, including their reasonable inferences, and resolve any factual disputes in RMLC's favor.  *United Healthcare Services,* 2018 WL 878766, at *1.  Consequently, the Court must first determine the universe of reviewable facts.

#### **A.  The Court Will Grant GMR's Motion to Strike**

Under Rule 12(f) "the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent or scandalous matter.  "The purpose of a motion to strike is to clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters." *Natale v. Winthrop Resources, Corp.*, No. 07-4686, 2008 WL 2758238, at *14 (E.D. Pa. July 9, 2008) (internal quotations omitted).  "An 'immaterial' matter is that which has no essential or important relationship to the claim for relief." *Allegrino v. Conway E & S, Inc.*, No. 09-1507, 2010 WL 1854125, at * 10 (W. D. Pa. May 5, 2010).  "'Impertinent' matter consists of statements that do not pertain, and are not necessary, to the issues in question." *Id*.  And a "'scandalous' matter can either cast a derogatory light on someone, or may also detract from the dignity of the court." *Id*.  Courts have significant discretion when disposing of a motion to strike under Rule 12(f), however, "such motions are not favored and usually will be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, ***or if the allegations confuse the issues in the case.***" *Natale*, 2008 WL 2758238, at *14 (emphasis added).

At base, striking a portion of a pleading is appropriate "when required for the purposes of justice." *Id*.

GMR has asked the Court to strike allegations in the First Amended Complaint concerning activity related to the negotiation and execution of the Interim License Agreement. GMR argues that RMLC's use of this activity violates the Interim License Agreement, Federal Rule of Evidence 408, and the doctrine of equitable estoppel. Mot. Strike MOL at 6-7 (ECF No. 56-1).

RMLC does not contest that the allegations identified by GMR in Exhibit A to its Motion to Strike pertain to activity related to the Interim License Agreement. Opp. Mot. Strike (ECF No. 63). Rather, RMLC argues that there is no legal or factual basis for striking the allegations at issue. *First*, RMLC contends that it did not violate the "use" limitations in the Interim License Agreement. Indeed, in a letter dated February 22, 2017, RMLC informed GMR that it would not "'use' the negotiation or existence of the interim license to establish jurisdiction or venue in the Eastern District of Pennsylvania or to establish substantive liability against GMR." February 22, 2017 Crsp. 1 (ECF No. 64-1). RMLC contends that it simply wanted to update the Complaint and preserve its rights as set forth in the Interim License Agreement so that GMR could not later claim those rights were waived. Opp. Mot. Strike at 1, 8-9 (ECF No. 63). From RMLC's perspective, the February 22nd letter should have alleviated GMR's concerns and mooted the Motion to Strike. *Id*. Especially where RMLC also pled in the First Amended Complaint that it "is not pursuing any substantive remedies based on the interim licenses at this time." First Am. Compl. ¶ 62 (ECF No. 52).

*Second*, the prior argument notwithstanding, RMLC also argues that GMR's breach of the Interim License Agreement permits RMLC's use of interim license activity to support personal jurisdiction and venue. Opp. Mot. Strike at 1-2, 10-11 (ECF No. 63). Although, the Complaint

provided sufficient jurisdictional facts to establish both personal jurisdiction and venue, GMR cannot enforce obligations in an agreement for which it is in material breach. *Id*.

**Third**, RMLC maintains that Federal Rule of Evidence 408 is inapplicable to this situation. Rule 408 limits the ways in which compromise negotiations may be used during litigation, but that restriction is not without exception. Courts have permitted compromise negotiations subject to Rule 408 to be used to establish personal jurisdiction, because doing so does not "prove or disprove the validity or amount of a disputed claim or [] impeach by a prior inconsistent statement or a contradiction." Fed. R. Evid. 408(a); *see, e.g., Smith v. Cutler*, 504 F. Supp. 2d 1162, 1167 n.3 (D.N.M. 2007); *see also* Opp. Mot. Strike at 2, 13-14 (ECF No. 63).

**Fourth**, and finally, RMLC argues that if either party is entitled to rely upon the doctrine of equitable estoppel it is RMLC, not GMR, given GMR's material breaches of the Interim License Agreement. Opp. Mot. Strike at 2, 15-16 (ECF No. 63).

The Court need not address all the arguments raised by the Parties as the "use" limitation in the Interim License Agreement is dispositive on this issue. Section 7(c) of the Interim License Agreement states: "GMR and RMLC agree not to **use** the negotiation of or existence of any interim license with any RMLC member in any way, including to argue for or against personal jurisdiction or venue." (emphasis added). RMLC concedes that the allegations set forth in Exhibit A to the Motion to Strike pertain to activity related to the Interim License Agreement. RMLC concedes that to use that activity to establish personal jurisdiction and/or venue would violate the "use" restrictions in the Interim License Agreement given its arguments about its February 22nd letter and ¶ 61 of the First Amended Complaint. RMLC simply believes that its "use" of the allegations at issue in the Amended Complaint is permissible given GMR's alleged material breach of the

Interim License Agreement. RMLC is incorrect. Consequently, the Court will strike the allegations as identified by GMR in Exhibit A to the Motion to Strike.

Since the onset of this litigation, GMR has articulated its intention to move to dismiss the Complaint for lack of personal jurisdiction and RMLC had stated its belief that GMR's argument lacked merit. For example, during the first telephonic conference held before the Honorable Magistrate Judge Sitarski regarding the negotiation of an interim license to obviate RMLC's need for a preliminary injunction, counsel said the following:

> **RMLC's counsel**: "Your Honor, we will be moving to quash service, and we will be contesting personal jurisdiction over GMR." . . .

> **GMR's counsel**: "I'm puzzled by the . . . personal jurisdiction and venue arguments because during negotiation with the RMLC it was clear as between what the RMLC understood that GMR was demanding or making offers for licenses for radio stations . . . located within your district [the Eastern District of Pennsylvania]."

Hr'g Tr. (Dec. 8, 2016) 7:14-16 (ECF No. 35); (*see also* ILA, §§ 7(a)-(c) (ECF No. 92-9). Thus when the Parties executed the Interim License Agreement with the language: "GMR and RMLC agree not to use the negotiation of or existence of any interim license with any RMLC member in any way, including to argue for or against personal jurisdiction or venue," (*see* ILA, §§ 7(c) (ECF No. 92-9), they did so with full knowledge of the other's anticipated arguments and a desire to not allow the other to use the Interim License Agreement to advance those arguments in any way. *See also* December 8, 2016 Email Crsp. 3 (ECF No. 75-1 *SEALED*).

RMLC's claim that GMR's material breach justifies its use of activity related to the Interim License Agreement does not change this analysis given that "[w]hether a breach is material is an issue of fact unless the question 'admits of only one reasonable answer.'" *Smith v. Allstate Corp.*, No. 12-0144, 2013 WL 990438, at *8 (E.D. Pa. Mar. 13, 2013). As this is not a case where there is only one reasonable answer and the Parties dispute whether material breaches have occurred,

and if so, by whom, the Court will not endorse RMLC's unilateral determination on this issue where it cannot itself make that determination at this posture on the present record.

Accordingly, although striking allegations from pleadings are disfavored, the Court will do so here in the interest of justice. *Natale*, 2008 WL 2758238, at *14. If, as RLMC argues, the additional allegations are not needed to establish personal jurisdiction or venue, striking them at this juncture will not prejudice RMLC. Moreover, striking these allegations will militate against any confusion of the issues, given the posture of this case. The Court must afford RMLC's well-pled factual allegations and the inferences therefrom the deference of truth when determining whether RMLC has made a prima facie showing of personal jurisdiction. The First Amended Complaint need not include allegations that cannot be relied upon in this inquiry. The Court's exercise of its inherent authority in this regard is thus a reasonable response given RMLC's representations and the posture of this case. *Dietz v. Bouldin*, 136 S. Ct. 1885, 1892 (2016); *see also United States Sec. and Exch. Comm'n v. One or More Unknown Traders in Sec. of Fortress Inv. Grp., LLC*, No. 17-1287, 2018 WL 4676043, at *3 n. 4 (D.N.J. Sept. 27, 2018) (noting that it would consider all allegations in the complaint in its 12(b)(2) analysis because defendant's motion to strike certain allegations was denied).[10]

---

[10] The cases cited by RMLC do not warrant a different outcome. *See Nupro Indus. Corp. v. Lexington Ins. Co.*, 2010 WL 2553698, at *2 (E.D. Pa. June 21, 2010) (denying a motion to strike ***affirmative defenses*** because they were filed after the close of discovery and concerned disputed issues of fact and law); *Medevac MidAtlantic, LLC v. Keystone Mercy Health Plan*, 817 F. Supp. 2d 515, 533 (E.D. Pa. 2011) (denying a motion to strike damages requested in an amended complaint where the parties disputed the applicability of the facially ambiguous governing statute and there was ***no suggestion or demonstration that the allegations would prejudice the non-moving party*** if they remained in the pleading).

## B. The Court Will Grant, In Part, And Deny, In Part, RMLC's Motion to Supplement

RMLC seeks to supplement its Opposition to the Second Motion to Dismiss with evidence of GMR's alleged jurisdictionally relevant contacts with Pennsylvania post-filing of the Complaint.  It is within a court's discretion to grant leave to supplement the record of a case. *Edwards v. Pa. Tpk. Comm'n*, 80 F. App'x 261, 265 (3d Cir. 2003).  However, such a request should be denied where the proposed supplementation "does not provide any new evidence" that would impact the ruling on the pending motion.  *Karlo v. Pittsburgh Glass Works, LLC*, 2015 WL 3966434, at *2 (W.D. Pa. June 8, 2015).  The Court will depart from the Report and Recommendation in part and grant the Motion to Supplement, in so far as the supplemental information pertains to allegations not stricken from the First Amended Complaint.  The Court will deny the Second Motion to Supplement *in toto*.

To add context, the Court will first address the law on considering post-complaint contacts with a forum in a personal jurisdiction analysis.  Due to the abundance of personal jurisdiction jurisprudence, it is now axiomatic that such an analysis requires a case-by-case factual assessment of a defendant's contacts with the forum.  *Mellon Bank (East) PSFS, Nat. Ass'n v. Farino*, 960 F.2d 1217, 1224 (3d Cir. 1992).  Questions of personal jurisdiction do not lend themselves to categorical determinations.  *Id.*  Consequently, the Third Circuit Court of Appeals has directed courts in this Circuit to employ a "highly realistic" approach when making personal jurisdiction decisions.  *Id*.

In certain contexts, such as a specific jurisdiction analysis in a premises liability case, only pre-injury contacts are relevant.  *See Rocke v Pebble Beach Co.*, 541 Fed. Appx. 208, 212 (3d Cir. 2013).  However, in cases alleging an ongoing injury, a proper inquiry may appropriately require review of pre- and post-complaint contacts that concern "events occurring before, during, and after

the events giving rise to the cause of action." *Endless Pools, Inc. v. Wave Tec Pools, Inc.*, 362 F. Supp. 2d 578, 584 (E.D. Pa. 2005) (first citing *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F. 3d 1558, 1562-1563 (Fed. Cir. 1994); then citing *Farino*, 960 F.2d at 1224). Notably, however, a defendant's post-complaint contacts with a forum that are the result of its defense of pending litigation, are not relevant to the jurisdictional inquiry. *Educational Testing Service v. Katzman*, 631 F. Supp. 550, 556 (D.N.J. 1986) (considering all of defendant's contacts with the forum after the filing of the complaint in its personal jurisdiction analysis *except* those resulting from the defense of his case).

RMLC has filed two motions to file supplemental memoranda in support of its Opposition to the Second Motion to Dismiss. In the Motion to Supplement, RMLC seeks to add facts about GMR's alleged "boycott" of Pennsylvania-based stations beginning on May 29, 2017. RMLC's Suppl. Memo. 2-3 (ECF No. 90-2). According to RMLC, when GMR "announced on its website (and has since repeatedly confirmed) its refusal, after its litigation-related interim licenses expire, to do business with radio 'stations owned by companies headquartered or based in Pennsylvania' because of this lawsuit," it was attempting to punish and retaliate against Pennsylvania-based entities that have assisted RMLC in this litigation and intimidate other witnesses from doing the same. Mot. Suppl. MOL at 2 (ECF No. 90-1). RMLC contends that these post-complaint contacts constitute "tortious conduct" and are demonstrative of GMR's ongoing and injurious monopolistic scheme. Mot. Suppl. MOL at 2-3 (ECF No. 90-1). Moreover, RMLC argues that these contacts set forth an independent basis for personal jurisdiction under the "Effects Test" established in *Calder v. Jones*. Mot. Suppl. MOL at 2-3 (ECF No. 90-1).

In response, GMR argues that RMLC is using the Interim License Agreement, which was negotiated "with the Court's assistance specifically to permit sufficient time to *determine* if there

was jurisdiction in this Court, [to] *create*[] jurisdiction in this Court." Opp. Mot. Suppl. 2 (ECF No. 92). According to GMR, it never "boycotted" any RMLC member, including those based in Pennsylvania. Opp. Mot. Suppl. 3 (ECF No. 92). Rather, when RMLC approached GMR in May 2017 seeking an extension of the Interim License Agreement, GMR immediately agreed for members in all 49 states where litigation was not then pending between it and RMLC. The only RMLC members to whom GMR refused to immediately issue a license extension were those based in Pennsylvania, and even then, GMR agreed to issue extensions (and ultimately issued them) once it received "'iron-clad assurances' that RMLC would not try to fabricate jurisdiction because of them." *Id*.; *see also* June 28, 2017 Crsp. (ECF No. 90-14), p. 2; *accord* Resp. Objs. R&R at 4 (ECF No. 103); *see also* R&R at 24 (ECF No. 100). Moreover, the only reason for GMR's cautiousness with respect to an extension was RMLC's alleged breach of the Interim License Agreement by using related activity to amend its Complaint and argue for personal jurisdiction and venue. Opp. Mot. Suppl. 2-3, 9-13 (ECF No. 92). Finally, GMR argues that RMLC's unsupported accusation that GMR's purported "boycott" was an attempt to retaliate against Pennsylvania-based RMLC members that provided declarations in support of RMLC's Opposition to the Second Motion to Dismiss is belied by the facts. Opp. Mot. Suppl. 4-5 (ECF No. 92). According to GMR, not only were license extension offers made to all RMLC members, the recipients of those offers included two RMLC members whose vice president and president submitted declarations in support of RMLC's Second Preliminary Injunction. Decl. D. Marroso (Aug. 28, 2017) ¶ 33 (ECF No. 92-1).

The Honorable Magistrate Judge Sitarski recommended that the Court deny the Motion to Supplement because none of the proffered supplementary materials or arguments therein warranted a departure from the promises the Parties made to one another "not to use the negotiation

of or existence of any interim license with any RMLC member in any way, including to argue for or against personal jurisdiction or venue." R&R at 24 (ECF No. 100) (internal citation omitted). As she oversaw multiple negotiations between the Parties on this issue, the Court gives weight to this recommendation. However, it is compelled to depart, in part.

Since the onset of this litigation, GMR has maintained that it is not subject to jurisdiction in Pennsylvania. Hr'g Tr. (Dec. 8, 2016) 7:14-16 (ECF No. 35). However, RMLC perceives GMR's refusal to license Pennsylvania-based stations as a boycott and witness intimidation. RMLC also perceives GMR's desire to obtain fees from RMLC members for accessing its repertory after two years without payment as coercive, anticompetitive conduct. While the merits of those allegations are yet to be decided, here, as pertains to RMLC's Motion to Supplement, the Court finds it much more likely – and record evidence to support – that GMR simply erred on the side of caution and away from any semblance of creating a jurisdictionally relevant contact when it posted the Radio Music Notice. *See Katzman*, 631 F. Supp. at 556 ("Once a defendant has been served with a complaint, [it] is on notice that [it] may be subject to jurisdiction in that forum. At that time, perhaps more than at any other, the defendant who wishes to contest jurisdiction . . . begins ordering [its] affairs to show that [it] has no contacts with the forum state"). GMR repeatedly told RMLC that it **_would offer_** interim license extensions to Pennsylvania-based stations once it received "iron-clad assurances" that RMLC would not attempt to use those contacts to establish personal jurisdiction or venue, or as a basis of antitrust liability. These assurances were essentially repackaged versions of those set forth in §§ 7(a), and (c), of the Interim License Agreement. Consequently, though framed as a "boycott" and "witness intimidation" by RMLC, the Court views GMR's conduct as an effort not to create jurisdictional contacts in a forum where its amenability to suit is presently being litigated. As such, the Court will deny the Motion to

Supplement, and will not rely upon supporting documents, to the extent they relate to activity concerning the Interim License Agreement.

However, given the posture of the case and the lack of an evidentiary hearing, the Court will grant the Motion to Supplement and appropriately rely upon the appended exhibits, to the extent the documents provide additional information about the pre-complaint jurisdictional contacts alleged by RMLC.  Per this Court's Local Rule, 72.1.IV(c), "new issues and evidence shall not be raised after the filing of the Magistrate Judge's Report and Recommendation if they could have been presented to the magistrate judge."  Consequently, RMLC had to move to supplement the record as it did or risk waiving what it deemed to be jurisdictionally relevant evidence.

The Court bears in mind RMLC's objection that it was entitled to have its boycott allegations taken as true given that there was no evidentiary hearing.  Objs. to R&R at 6 (ECF No. 101).  However, that is not true given the Court's grant of GMR's Motion to Strike.  Moreover, setting that point aside, the Court need only credit well-pled factual allegations and their reasonable inferences as being true.  RMLC's framing of GMR's conduct as a "boycott" and "witness intimidation" and its general arguments in its brief that GMR's "refusal to deal is designed to intimidate [unnamed] witnesses," are not well-pled facts owed the deference of truth.  *See Fleury v. U.S. Postal Service*, No. 00-5500, 2001 WL964147, at * 2 n.5 (E.D. Pa. Aug. 1, 2001) ("It is axiomatic that statements or suggestions in briefs are not a substitute for well pled facts in a complaint"); *see also* RMLC's Suppl. Memo. 10 (ECF No. 90-2).  As the Court has stricken any related allegations from the Amended Complaint, these assertions are without any support owed the deference of truth.

In the Second Motion to Supplement, RMLC seeks leave to file the January 17, 2019 Declaration of Eugene D. Levin, RMLC Executive Committee member and Vice President, Treasurer, and Controller of Entercom, a Pennsylvania-based radio station. Sec. Mot. Suppl. MOL at 1 (ECF No. 114). RMLC argues that Mr. Levin's declaration further demonstrates that personal jurisdiction and venue are proper in this Court because of GMR's refusal to grant Entercom a license independent of the Interim License Agreement (and its extension), which would enable Entercom to play GMR's repertory on its new non-interactive streaming platform – Radio.com. Sec. Mot. Suppl. MOL at 1-2 (ECF No. 114). RMLC construes GMR's conduct as further evidence of witness intimidation and an independent establishment of personal jurisdiction under the *Calder* "Effects Test." Sec. Mot. Suppl. MOL at 1, 3, 5 (ECF No. 114). When denying Entercom's request for a separate license for its streaming service, GMR offered the following explanation:

> [I]n light of RMLC's pending antitrust litigation with Global Music Rights, and due to positions previously advanced by the RMLC related to Global Music Rights' licensing practices, Global Music Rights is not in a position where it can license it[s] works for performance on Entercom's non-interacting streaming service.

Decl. E. Levin (Jan. 17, 2019), Ex. 2 (ECF No. 114-2). Having obtained licenses from ASCAP, BMI, and SESAC, Mr. Levin declares that Entercom cannot launch this service as planned without a license from GMR. Decl. E. Levin (Jan. 17, 2019) ¶ 14 (ECF No. 114-2).

GMR argues that the Second Motion to Supplement is improper as well because RMLC improperly relies upon events that occurred two years after it filed the Complaint. Moreover, GMR contends that RMLC is attempting to create a relevant jurisdictional contact from this post-Complaint conduct through GMR's decision *to not do* business in Pennsylvania, which is the exact

opposite of the purposeful availment needed to establish specific jurisdiction.[11]  Opp. Sec. Mot. Suppl. 1-2 (ECF No. 115).  The Court agrees with GMR.

Where a defendant does not want to be amenable to jurisdiction in Pennsylvania, it may lawfully choose not to do business with Pennsylvania residents.  *Toys "R" US, Inc. v. Step Two, S.A.*, 318 F.3d 446, 452 (3d Cir. 2003) (citing *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1126-27 (W.D. Pa. 1997).  That said, a defendant will not be permitted to cease doing business "in order to stifle the main action, especially where it is apparent that such conduct will further the monopoly which plaintiff alleges defendant is attempting to bring about and which, if proved, would entitle plaintiff to permanent relief."  *Bergen Drug Co. v. Parke, Davis & Co.*, 307 F.2d 725, 727 (3d Cir. 1962) (reversing the denial of a preliminary injunction after finding that defendant ceased doing business with plaintiff in retaliation for filing an antitrust complaint and plaintiff would be unable to secure the cooperation of witnesses out of fear of the same retaliatory conduct); (*see also* RMLC's Suppl. Memo. 11-12 (ECF No. 90-2).

The record demonstrates that GMR's actions were not done to frustrate litigation, but rather to maintain its defense – advanced since the onset of litigation – that personal jurisdiction and venue were not proper in this Court.  GMR's conduct is not analogous to that in *Bergen Drug* where the defendant stopped using the distribution facilities of plaintiff and its subsidiaries two weeks after plaintiff filed its complaint for no strategic purpose, *Bergen Drug Co.*, 307 F.2d at 726, or *Lorain Journal Co v. United States*, 342 U.S. 143, 152-54 (1951), where defendant attempted to force its advertisers to boycott a competitor radio station.  Rather, after negotiating the Interim License Agreement with RMLC and incorrectly believing the Parties to have agreed

---

[11] RMLC does not argue that general jurisdiction exists over GMR, which is discussed further *infra* p. 44.

upon terms prohibiting the use of that agreement and related activity to establish personal jurisdiction or venue, the record evidences GMR's attempt not to fall into the same situation.

Thus, the Court will deny the Second Motion to Supplement. Unlike the cases relied upon by RMLC, here RMLC purely seeks to supplement the record with irrelevant facts couched as post-complaint jurisdictional contacts. Though the Court must construe all well-pled factual allegations and factual disputes in RMLC's favor, allegations of boycott and witness intimidation that are not borne out by the record are owed no such deference. RMLC may not use GMR's decision not to issue a license for a new platform it has never licensed to establish personal jurisdiction and venue. This is especially so where the alleged contact is based upon an interested party's unilateral determination that it cannot launch a "new non-interactive streaming functionality" as "it had planned." Decl. E. Levin (Jan. 17, 2019) ¶ 14 (ECF No. 114-2).

## II.     PERSONAL JURISDICTION

The Honorable Magistrate Judge Sitarski recommended that this Court hold that it may not exercise personal jurisdiction over GMR and that venue is not proper in this judicial district. R&R at 28 (ECF No. 100). RMLC argues that this recommendation is incorrect and results from an improper exclusion of "boycott-related" conduct and an improper application of the *Calder* "Effects Test." After considering all the feasible means by which RMLC may arguably contend that this Court may exercise personal jurisdiction over it, including: (1) general jurisdiction, (2) specific jurisdiction, (3) the *Calder* "Effects Test," and (4) the National Contacts Test under § 12 of the Clayton Act – the Court agrees with the conclusions in the Report and Recommendation – though it arrives at those determinations on slightly different grounds. The Court will address each of these methods in turn.

### A.  Legal Standards For Determining General And Specific Jurisdiction

Federal Rule of Civil Procedure 4(e)(1) permits a court with subject matter jurisdiction to exercise personal jurisdiction over a non-resident defendant according to the law of the state where the district court sits.  *Eurofins Pharma US Holdings v. BioAlliance Pharma SA*, 623 F.3d 147, 155 (3d Cir. 2010).  "Personal jurisdiction [] is an essential element of the jurisdiction of a district court … without which the court is powerless to proceed to an adjudication."  *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999) (internal citations omitted).  It represents a restriction on judicial power … as a matter of individual liberty."  *Id*.  Pennsylvania's long-arm statute is coextensive with the Due Process Clause of the Fourteenth Amendment (the "Due Process Clause") and permits the exercise of personal jurisdiction over a non-resident to the extent allowed by the United States Constitution.  42 Pa. Cons. Stat. § 5322(b); *O'Connor v. Sandy Lane Hotel Co.*, Ltd., 496 F.3d 312, 316 (3d Cir. 2007).  Where personal jurisdiction has been challenged, the inquiry is whether "the relationship among the defendant, the forum, and the litigation" fairly permits a court to subject a defendant to its binding judgment in accordance with the requirements of the Due Process Clause.  *Daimler AG v. Bauman*, 571 U.S. 117, 126 (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977)).

The paradigmatic means by which courts determine if they may constitutionally exercise personal jurisdiction over a defendant is through general or specific jurisdiction.  Courts conducting this analysis first consider whether the defendant's contacts with the forum state are sufficient to support general personal jurisdiction.  *Pennzoil Prod. Co. v. Colelli & Assoc., Inc.*, 149 F.3d 197, 200 (3d Cir. 1998).  General jurisdiction exists where a nonresident's contacts with the forum are "continuous and substantial," thus permitting the court to exercise jurisdiction "regardless of whether the subject matter of the cause of action has any connection to the forum."

*Id.* (internal quotations omitted). "A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the state are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 317 (1945)).

In the absence of general jurisdiction, a court may exercise specific jurisdiction where a three-part test is met: (1) "the defendant must have 'purposefully directed [its] activities' at the forum"; (2) "the litigation must 'arise out of or relate to' at least one of those activities"; and (3) "if the prior two requirements are met, a court may consider whether the exercise of jurisdiction otherwise 'comport[s] with fair play and substantial justice.'" *O'Conner*, 496 F.3d at 317 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 476 (1985) (internal citations omitted).

### B. The Court Does Not Have General Or Specific Jurisdiction Over GMR

1. General Jurisdiction

As discussed in the Report and Recommendation, RMLC does not argue general jurisdiction nor does the record support a finding of general jurisdiction. R&R at 29-30 (ECF No. 100).

However, RMLC did set forth a general theme regarding GMR's nationwide monopoly scheme that when paired with references to the national contacts provision in Section 12 of the Clayton Act led the Honorable Magistrate Judge Sitarski to address the inapplicability of the National Contacts Test provided for by § 12 to GMR. R&R at 25-27 (ECF No. 100). The Court will do the same for the same reasons. However, to be clear, the Court does not believe RMLC expressly argued the National Contacts Test as a basis for establishing personal jurisdiction. R&R at 25 (ECF No. 100).

Section 12 of the Clayton Act provides:

> Any suit, action, or proceeding under the antitrust laws against a corporation may
> be brought not only in the judicial district whereof it is an inhabitant, but also in
> any district wherein it may be found or transacts business; and all process in such
> cases may be served in the district of which it is an inhabitant, or wherever it may
> be found.

Stated differently, this provision authorizes nationwide service of process – and thus, nationwide personal jurisdiction – based on a non-resident defendant corporation's aggregate contacts with the United States as a whole.  However, the Third Circuit Court of Appeals has interpreted this section as only applying to foreign, **non-U.S.**, corporations.  *In re Auto. Refinishing Paint Antitrust Litig.*, 358 F.3d 288, 293 (3d Cir. 2004).  This provision has never been applied to establish personal jurisdiction over a domestic antitrust defendant.  *In re Heckmann Corp. Sec. Litig.*, 869 F. Supp. 2d 519, 524 (D. Del. 2012) (citing *Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc.*, 516 F. Supp. 2d 324, 337 (D. Del. 2007), *aff'd*, 602 F. 3d 207 (2010).  Consequently, as GMR is a domestic entity that is not a corporation, First Am. Compl. ¶ 19 (ECF No. 52); Opp. Mot. to Dismiss at 2 (ECF No. 62), RMLC may not utilize § 12 of the Clayton Act to establish jurisdiction.  If it could, any domestic corporation subject to the antitrust laws would be subject to general jurisdiction in any state in the nation based on its contacts with the United States as a whole.

Accordingly, the Court agrees with the conclusion in the Report and Recommendation on this issue, however, the Court notes that Report and Recommendation incorrectly states that "RMLC asserts that GMR's national contacts should determine jurisdiction, rather than GMR's specific contacts with the forum."  R&R at 25 (ECF No. 100).[12]

---

[12] *See* First Am. Compl. ¶ 15 (ECF No. 52); *compare* Opp. Mot. to Dismiss at 2 (ECF No. 62) ("GMR's uniform national application of its anticompetitive strategy—including in Pennsylvania—makes it subject to the jurisdiction of this Court"), *with* at 30 ("GMR has effectively waived any argument that a district-by-district analysis applies by hiding behind its

2.   Specific Jurisdiction

Given GMR's jurisdictional challenge and the lack of an evidentiary hearing, RMLC had to make a prima facie showing that GMR's "minimum contacts" with Pennsylvania, and not just persons or entities residing here, constitutionally permit the Court to exercise personal jurisdiction over GMR.  *O'Connor*, 496 F.3d at 316; *Walden v. Fiore*, 571 U.S. 277, 285 (2014).  To satisfy this burden, RMLC had to "establish[,] with reasonable particularity[,] sufficient contacts" between GMR and Pennsylvania through the pleadings, sworn affidavits, and other competent evidence.  *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009).  Jurisdictionally relevant contacts are those that "arise out of contacts that the 'defendant [itself]' creates" with the forum.  *Walden*, 571 U.S. at 284 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985).  An attempt to satisfy the minimum contacts inquiry through a plaintiff or third party's contacts with the forum is not sufficient.  *Id.* at 285.  Additionally, the "unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum state to justify an assertion of jurisdiction." *Helicopteros*, 466 U.S. at 417.  Appropriately considered contacts are not "random, fortuitous, or attenuated." *Burger King*, 471 U.S. at 475.

Where a contract serves as the basis of a purported jurisdictional contact, courts must take a "highly realistic approach that recognizes that a contract is ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction."  *Burger King v. Rudzewicz*, 471 U.S. 462, 479 (1985); *accord Sunbelt Corp. v. Noble, Denton & Assoc., Inc.*, 5 F.3d 28, 32 (3d Cir. 1993 ("a nonresident's

---

limited-liability-company-status **to avoid the nationwide jurisdiction** that applies to corporate antitrust defendants under 15 U.S.C. § 22") (emphasis added).

contracting with a forum resident, without more, is insufficient to establish the 'minimum contacts' required for an exercise of personal jurisdiction over the nonresident"). Consequently, any prior negotiation, contemplated future consequences, the terms of the contract, and the parties' actual course of dealing must be evaluated when "determining whether the defendant purposefully established minimum contacts within the forum." *Id*. The Court finds that RMLC failed to meet this burden.

As discussed *supra* pp. 30-34, the Court will only consider the pre-complaint contacts cited by RMLC as a basis for jurisdiction. To be clear, this is not because the Court has determined as a matter of law that post-complaint contacts cannot be considered. Indeed, the Court believes there to be a sufficient jurisprudential basis to review post-complaint contacts with a forum, in the antitrust context, where plaintiffs allege an ongoing harm. *See*, *e.g*, *Bergen Drug Co.*, 307 F.2d at 728. But rather, the Court is not considering the post-complaint contacts because it finds them to be violative of the Interim License Agreement and/or irrelevant to this jurisdictional inquiry.

Therefore, the Court will only consider those allegations (1) in the Amended Complaint that are not identified in Exhibit A to GMR's Motion to Strike, and (2) in the exhibits supporting the Motion to Supplement that do not pertain to the stricken allegations. The foregoing notwithstanding, the Court agrees with the Report and Recommendation in that even if activity related to the Interim License Agreement was considered, they do not provide a sufficient basis to establish jurisdiction.

### a. *GMR's Pre-Complaint Conduct Does Not Give Rise To Personal Jurisdiction*

RMLC failed to demonstrate that its cause of action arose from its negotiations with GMR and from GMR's licensure of two RMLC members that have radio stations based in Pennsylvania.

RMLC's jurisdictional allegations reduce down to "GMR interact[ing] with third parties who are not Pennsylvania residents but who themselves conduct business in this State." R&R at 12 (ECF No. 100). RMLC relies on three essential pre-complaint contacts in an attempt to establish personal jurisdiction: (1) GMR's licensure of iHeart Media and Townsquare; (2) GMR's alleged targeting of Pennsylvania-based radio stations owned by Mr. VerStandig; and (3) the negotiations between RMLC and GMR from 2014 until the filing of the Complaint.

*First*, GMR's issuance of licenses to iHeart and Townsquare fail to evidence purposeful availment of Pennsylvania. Opp. Mot. to Dismiss at 16-19 (ECF No. 62). Neither entity is headquartered in Pennsylvania or has its principal places of business in Pennsylvania. Moreover, and notably, "[t]he record is devoid of any evidence that GMR had anything to do with where the companies' representatives decided to use a license." R&R at 33 (ECF No. 100). As iHeart and Townsquare have a total 1,140 radio stations operating across the United States, to the extent any of those licenses were used in Pennsylvania, iHeart and Townsquare unilaterally directed them there. (*Id.*; Decl. R. Grimmett (Mar. 3, 2017) ¶ 21 (ECF No. 57-2); Corr. Decl. R. Grimmett (Mar. 1, 2017) ¶ 41a (ECF No. 64-2); Decl. E. Levin (July 21, 2017) ¶ 10 (ECF No. 90-24). As jurisdictionally relevant contacts are those created by the defendant and not by a plaintiff or third-party, these license agreements do not suffice.

Moreover, the Court agrees with GMR and the Report and Recommendation that an "offer to license is more closely akin to an offer for settlement of a disputed claim than an arms-length negotiation in anticipation of a long-term continuing business relationship." *Red Wing Shoe Co., Inc. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1361 (Fed. Cir. 1998); R&R at 33-34 (ECF No. 100). An offer to license is a "covenant not to sue" that does not create "continuing obligations between itself and the forum." *RedWing*, 148 F.3d at 1362; R&R at 34 (ECF No. 100).

Even if this were not the case, viewing the license as a simple contract yields the same result. The record evidence regarding the course of dealings between GMR with iHeart and Townsquare demonstrates that there is not a sufficient basis to count GMR's issuance of licenses to these entities as relevant jurisdictional contacts simply because each entity has stations operating in Pennsylvania. There is no record evidence that the negotiations that took place prior to GMR's issuance of the licenses took place in Pennsylvania. The license terms, which permit iHeart and Townsquare to access and use GMR's repertory for a fee, without fear of suit, do not create continuing obligations that are jurisdictionally relevant. Moreover, there is no record evidence demonstrating that, since the issuance of the licenses, GMR has attempted to expand upon its business relationship with either entity, including their Pennsylvania-based stations. *Cf. Endless Pools, Inc. v. Wave Tec Pools, Inc.*, 362 F. Supp. 2d 578 (E.D. Pa. 2005); *Educational Testing Services v. Katzman*, 631 F. Supp. 550 (D.N.J. 1986) (considering both pre- and post-complaint contacts with a forum where the defendant expanded its activity therein after plaintiff filed the complaint).

**Second**, RMLC's alleges that GMR "targeted" Pennsylvania-based VerStandig Broadcasting by identifying by name the four radio stations operated by it in Pennsylvania at an October 2016 meeting. Opp. Mot. to Dismiss at 15-16 (ECF Nos. 62); Decl. J. VerStandig (Mar. 23, 2017) ¶¶ 1-2, 5(c) (ECF No. 62-1). RMLC further claims GMR did this in an effort "to coerce VerStandig to purchase a license at the price that GMR was demanding." *Id*. However, these allegations are pure speculation unsupported by the factual record. These averments are akin to RMLC's allegation that GMR indicated that it would sue if an agreement was not reached after the licenses-in-effect expired. Neither, without more – such as a cease-and-desist letter, an attempt to require an exclusive license, or some other evidence of extrajudicial enforcement of the alleged

infringement – permits the Court to find that personal jurisdiction exists. *See Xilinx, Inc. v. Papst Licensing GmbH & Co. KG*, 848 F.3d 1346, 1354 (Fed Cir. 2017); *see also Red Wing*, 148 F.3d at 136. Also, these allegations fail to acknowledge that Mr. VerStandig as a member of RMLC's Executive Committee was present at these negotiations as a representative of RMLC – not VerStandig Broadcasting. The Court appreciates that a meeting may begin with one purpose and transition to another, but without more the Court may not reasonably use this as a basis to exert jurisdiction.

Finally, the Court bears in mind that RMLC has also pled that GMR's founder stated that GMR had compiled a repertory of musical works that radio stations could not "comfortably exist without" and that "GMR sought out RMLC to negotiate licensing terms and rates that could apply to RMLC's member pool of radio stations." First Am. Compl. ¶¶ 4, 50 (ECF No. 52). RMLC has simply not plausibly pled that GMR purposefully availed itself of Pennsylvania to target four stations residing therein that it might bend 9,996 to its monopolistic will.

***Third***, the negotiations between GMR and RMLC's Executive Committee did not provide any jurisdictionally relevant contacts. Opp. Mot. to Dismiss at 12-15 (ECF No. 62). Shortly after its founding in 2013, GMR approached RMLC's Executive Committee to negotiate licenses with RMLC's members who operated terrestrial radio stations located throughout the United States. Decl. R. Grimmett (Mar. 3, 2017) ¶ 18 (ECF No. 57-2). A license would permit each covered member radio station to play works from GMR's repertory in their FCC-licensed geographic area. Decl. W. Velez (Mar. 23, 2017) ¶¶ 5-6, 10 (ECF No. 65). The officers and/or representatives of RMLC's members comprising the Executive Committee, participated in those discussions as members of that committee. Decl. R. Grimmett (Apr. 7, 2017) ¶ 38 (ECF No. 69-5). As RMLC's sole purpose is to negotiate license fees on its members behalves, the Executive Committee served

as an intermediary between GMR and RMLC members during these negotiations.  First Am. Compl. ¶¶ 10, 18, 20, 22 (ECF No. 52).  These negotiations occurred over a two-year period, taking place in locations across the United States – except Pennsylvania.  On all but one occasion, occurring in August 2015, the participants attended these meetings in person or via the phone in locations outside of Pennsylvania. Decl. R. Grimmett (Mar. 3, 2017) ¶ 19 (ECF No. 57-2); Decl. J. VerStandig (Mar. 23, 2017) ¶ 5 (ECF No. 62-1); Decl. E. Levin (Mar. 23, 2017) ¶ 8 (ECF No. 62-6).  For the August 2015 meeting, Mr. Levin, Treasurer of RMLC and Vice President, Treasurer, and Controller of Entercom, which is headquartered in Bala Cynwyd, Pennsylvania, attended the call via the phone while at Entercom's headquarters.

The negotiations that occurred between the Parties prior to the filing of the Complaint do not independently, or in the aggregate, provide a basis to subject GMR to this Court's jurisdiction. GMR was negotiating with RMLC for licenses for *all* of RMLC's members.  RMLC may not hold itself out as an intermediary between its members and PROs such as, GMR, and then, without more, argue when a PRO interacts with RMLC based on this representation that it is being used as a conduit to purposefully direct illegal activity at a forum where some of its members are located. Although not expressly stated in the record, RMLC's 10,000 members undoubtedly reside in many, if not all, of the states in the nation.  Were the Court to give credence to RMLC's argument, it would essentially be authorizing de facto personal jurisdiction in any state where a RMLC member resides.  This result is not only untenable, it would in effect directly contravene Third Circuit precedent interpreting Section 12 of the Clayton Act, which, however, as the Court noted above, does not apply here.

RMLC's arguments to the contrary do not move the Court.  The Court disagrees that RMLC's provision of "a list identifying '10,216 individual stations represented by the RMLC,' . .

.  confirm[] that GMR knew and intended for its scheme to be directed at *hundreds* of RMLC member-stations located in Pennsylvania."  Nor will the Court construe RMLC's decision to have two members of its Executive Committee, who operated radio stations in Pennsylvania, participate in the negotiations between RMLC and GMR, as GMR purposefully availing itself of Pennsylvania.  Moreover, Mr. Levin's attendance of a call from Pennsylvania is also of no moment.  These purported contacts are the very "random, fortuitous, [and] attenuated" contacts that courts have been instructed not to rely upon when conducting a personal jurisdiction inquiry. *Burger King*, 471 U.S. at 475.  They are the result of the unilateral decisions of RMLC and its Executive Committee and do not evidence the type of purposeful availment of a forum that would sufficiently apprise a defendant of its amenability to suit in that state in accordance with the Due Process Clause.

Accordingly, the Court agrees with the summary of the record evidence in the Report and Recommendation regarding the lack of jurisdictional contacts with Pennsylvania:

> Neither GMR nor RMLC is a citizen of or resides in Pennsylvania. Neither maintains a business office in Pennsylvania. Neither employs a person who is a citizen of, or resides in, Pennsylvania. None of the songwriters and publishers affiliated with GMR is based, or has a primary residence, in Pennsylvania. GMR does not own property in Pennsylvania. GMR's and RMLC's representatives did not conduct any meetings in Pennsylvania. GMR conducted every phone conference of record with RMLC from GMR's headquarters in Los Angeles. Before GMR offered and sold the interim licenses, GMR did not conduct any business in Pennsylvania. GMR did not offer or sell a license to any RMLC member or radio station that had a substantial place of business in Pennsylvania, or that was formed under the laws of Pennsylvania. The record is devoid of any evidence that GMR's representatives travelled to, visited, or physically entered Pennsylvania at any time). GMR did not send any communications to Pennsylvania companies, citizens, or residents. GMR has not sent any cease and desist letters to Pennsylvania companies, citizens, or residents. GMR has not filed a lawsuit for copyright infringement in Pennsylvania—or any other cause of action or proceeding of record.

R&R at 34-35 (ECF No. 100).

The record demonstrates no purposeful availment of Pennsylvania that could not be argued with respect to any state wherein a RMLC member resides.[13]   Given this threshold failing, the Court need not address the second two prongs of the specific jurisdiction inquiry.

### b.   *Specific Jurisdiction Is Not Established By The Calder Effects Test*

Similarly, RMLC's attempt to establish personal jurisdiction through the *Calder* Effects Test is also unavailing.   Under *Calder*, a plaintiff may establish jurisdiction where: (1) the defendant committed an intentional tort; (2) the forum could be fairly characterized as the focal point of the harm because plaintiff felt the brunt of the harm in the forum; and (3) the forum could be fairly characterized as the focal point of the tortious activity given defendant's express aiming of the tortious conduct at the forum.   *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 265-66 (3d Cir. 1998) (citing *Calder*, 465 U.S. at 788-90).   Although, the Court agrees that an antitrust violation constitutes an intentional tort under *Calder*, *see In re Fasteners Antitrust Litig.*, No. 08-md-1912, 2011 WL 3563989, at *12 (E.D. Pa. Aug. 12, 2011), the Court disagrees that RMLC has satisfied the remaining factors of the test.

RMLC contends that GMR expressly aimed its tortious conduct at Pennsylvania, as evidenced by its conduct with VerStandig Broadcasting and iHeart, and that the harm due to the alleged "boycott" of RMLC's Pennsylvania-based members was felt in Pennsylvania.   Opp. Mot. Dismiss at 20-22 (ECF No. 62); Opp. R&R at 12-13 (ECF No. 101).   Additionally, RMLC argues

---

[13] RMLC argues that an antitrust defendant may not skirt personal jurisdiction by committing the offending conduct in multiple forums.   Opp. Mot. to Dismiss at 22 (ECF No. 62) (citing *Step2 Co., LLC v. Parallax Grp. Int'l, LLC*, No. 8-2580, 2010 WL 3783151, at * 9 n. 11 (N.D. Ohio Sept. 17, 2010)).   The Court finds this case distinguishable as the cited portion concerns a specific jurisdiction analysis under Federal Circuit law of an individual patentee who not only sent cease-and-desist letters to the forum but also made several subsequent contacts with individuals in the forum asking them to remove the alleged infringing product from stores in the forum.

that the Pennsylvania-based stations operated by Entercom, iHeart, and VerStandig Broadcasting have felt the brunt of GMR's monopolistic conduct in Pennsylvania. Opp. Mot. Dismiss at 22 (ECF Nos. 62).

The Report and Recommendation accepted as true that these RMLC member stations felt the brunt of the harm in Pennsylvania, but found that RMLC could not demonstrate that GMR purposefully availed itself of Pennsylvania. R&R at 37 (ECF No. 100). The Court agrees with the Report and Recommendation's finding that RMLC did not expressly aim the pled tortious conduct at Pennsylvania, for the reasons set forth in the previous section. However, the Court will depart from the Report and Recommendation in that it will not accept as true that the brunt of the harm of the alleged tortious conduct was felt in Pennsylvania. A court only need address whether the brunt of the harm was actually suffered in an identified forum, if the Court first determines the alleged conduct was expressly aimed at the forum. *IMO*, 155 F.3d at 266. As the Court determines that this was not the case, it will not assume that RMLC would have satisfied the brunt of the harm element of the test.

As the Court has stated previously, although RMLC *perceives* GMR's conduct as a boycott and witness intimidation, the Court *finds* that GMR's conduct resulted from an appropriate defense strategy given RMLC's attempts to exercise personal jurisdiction over it. Accordingly, the Court finds that RMLC also fails to establish personal jurisdiction under *Calder*.

## III.   JURISDICTIONAL DISCOVERY

RMLC objects to the Report and Recommendation's failure to address its multiple requests for jurisdictional discovery in the event it was determined that RMLC failed to establish personal jurisdiction. Objs. R&R at 13 (ECF No. 101); Opp Mot. Dismiss at 5 n.4, 16 n.11, 36-37 (ECF No. 62). RMLC argues that jurisdictional discovery is warranted under Third Circuit precedent

54

because its claim is not "clearly frivolous" and it has presented facts that suggest "'with reasonable particularity' the possible existence of the requisite contacts between [GMR] and [Pennsylvania]." Objs. R&R at 14 (ECF No. 101); citing *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003)). Specifically, RMLC argues that additional discovery would have been helpful because "[r]espectfully, Judge Sitarski . . . simply misunderstood the relevant facts, and she did not hold a hearing at which RMLC could have corrected her misunderstanding." Objs. R&R at 1, 14-15 (ECF No. 101). Additionally, RMLC argues that jurisdictional discovery would have permitted RMLC to gain more information regarding the negotiation and structure of the non-interim licenses with iHeart and Townsquare as relates to their Pennsylvania stations. Objs. R&R at 15 (ECF No. 101). The Court ==respectfully,== disagrees.

As RMLC notes, "[i]n order to obtain jurisdictional discovery, a plaintiff need only demonstrate with 'reasonable particularity' the 'possible existence' of relevant jurisdictional contacts between the defendant and the forum state." Objs. R&R at 16 (ECF No. 101) (citing *Toys "R" Us*, 318, F.3d at 456). It is within a court's discretion to grant jurisdictional discovery. *Toys "R" Us*, 318, F.3d at 455.

The Court finds that the Report and Recommendation gave RMLC's conditional requests for jurisdictional discovery the consideration they deserved, determining, as the Court does, that the factual allegations presented do not suggest with reasonable particularity the possible existence of the requisite minimum contacts to support a finding of personal jurisdiction. Resp. Objs. R&R at 20-21 (ECF No. 103). RMLC made three conditional requests for jurisdictional discovery:

(1) "Should the Court conclude that additional details of the iHeartMedia contract are possibly relevant to these motions, jurisdictional discovery into this license is requested and appropriate";

(2) "Jurisdictional discovery would likely demonstrate that GMR had similar communications [to coerce RMLC members to purchase licenses at prices

demanded by GMR] with additional radio groups to license Pennsylvania stations, including CBS"; and

(3) "To the extent the Court has any doubt about whether personal jurisdiction or venue are proper, then RMLC requests an opportunity for jurisdictional discovery."

Opp Mot. Dismiss at 5 n.4, 16 n.11, 36-37 (ECF No. 62).

*First*, RMLC should not need jurisdictional discovery to ask its own members, on behalf of whom it has brought this suit based on its alleged associational standing, about their contacts with GMR. *Second*, this Court has determined that neither the iHeart or Townsquare licenses, nor the licensure of VerStandig Broadcasting are jurisdictionally relevant contacts. *Finally*, as to RMLC's catch-all request, neither the Honorable Magistrate Judge Sitarski nor this Court had any doubt about whether personal jurisdiction (or venue, as discussed *infra* Section IV) were proper.

Consequently, as RMLC's conditional requests for jurisdictional discovery amount to no more than "vague assertions" based upon "mere speculation" regarding alleged jurisdictional contacts that the Court has found irrelevant, jurisdictional discovery is not warranted. Resp. Objs. R&R at 24 (ECF No. 103) (collecting cases) (internal citations omitted). RMLC argues that "[i]f the basis set forth for personal jurisdiction is not clearly frivolous, the Court should allow for jurisdictional discovery in order to aid the party opposing dismissal in discharging its burden." Objs. R&R at 14 (ECF No. 101) (citing *Philadelphia Contribution Ship Ins. Co. v. Neoteric Sols. Inc.*, 2016 WL 791427, at *2 (D.N.J. Feb. 5, 2016). However, the Court need not assist RMLC with discharging its burden where the Court has determined the alleged contacts at issue are not jurisdictionally relevant. Doing so would result in unnecessary costs to the Parties in both the taking of discovery and subsequent related motion practice, and cause a baseless expenditure of this Court's time and resources.

## IV.    TRANSFER OF VENUE PURSUANT TO § 1406(a)

### A.  Venue Is Not Proper In This Judicial District

RMLC argues that venue is proper in this judicial district pursuant to § 16 of the Clayton Act, 15 U.S.C. § 26, and the general venue statute, 28 U.S.C. § 1391(c).  Opp. Mot. Dismiss at 28-30 (ECF No. 62).  Both statutes premise the propriety of venue for a non-resident defendant on the establishment of personal jurisdiction.  § 26; § 1391; (*accord* Opp. Mot. Dismiss at 28-29 (ECF No. 62)).  As the Court has found that it may not exercise personal jurisdiction over GMR, it also finds that this judicial district is an improper venue in accord with the Report and Recommendation.  R&R at 27-28 (ECF No. 100).

### B.  Transfer is Appropriate in the Interests of Justice

Finally, the Court will depart from the Report and Recommendation with respect to dismissing this case rather than transferring it to the Central District of California.  R&R at 39-40 (ECF No. 100).  The Honorable Magistrate Judge Sitarski suggested dismissal over transfer, reasoning that RMLC failed to request transfer and thus would not be prejudiced by dismissal because it failed to cite any hardship or prejudice in the absence of a transfer.  R&R at 39 (ECF No. 100). GMR agrees with this assessment.  Resp. Objs. R&R at 27 (ECF No. 103).  Additionally, GMR argues that RMLC's belated request for transfer in its Opposition to the Report and Recommendation is merely a "tactical gambit to give RMLC plaintiff priority."  Resp. Objs. R&R at 28 (ECF No. 103).  Conversely, RMLC contends that transfer is appropriate under 28 U.S.C. § 1631 or § 1406(a), despite its failure to request a transfer.  Objs. R&R at 16-17 (ECF No. 101).

Tactical gambit or not, the Court agrees that the equities weigh in favor of transfer.  Section 1631 permits transfer where an action is filed in a court that lacks jurisdiction and §1406(a) permits

the transfer of a case that was brought in an improper venue. Both statutes premise transfer on being "in the interest of justice." *Id.* However, the Third Circuit has recently held that § 1631 only permits transfer to remedy a lack of statutory, and not constitutional, jurisdiction. *See In re IMMC Corporation*, 909 F.3d 589, 596 (3d Cir. 2018). Although *In re IMMC* concerns the bankruptcy context, as the personal jurisdiction inquiry has both statutory and constitutional components, the Court will not transfer on this basis, given the propriety of transfer under § 1406(a).

As an initial point, the Court may transfer an action even though it lacks personal jurisdiction over GMR. *Lomanno v. Black*, 285 F. Supp. 2d 637, 640; *see also* § 1406(a). Additionally, the Court may *sua sponte* transfer a suit to cure a venue defect. *Fish Net, Inc. v. PetPlace.com*, No. 08-5786, 2009 WL 10675677, at *2 n.2 (E.D. Pa. Sept. 29, 2009 (citing *Island Insteel Systems, Inc. v. Waters*, 296 F.3d 200, 218 n.9 (3d Cir. 2002). Transfer is generally appropriate and "in the interest of justice because dismissal of an action that could be brought elsewhere is time consuming and justice defeating." *Id.* Moreover, transfer will preserve the initial filing date of the action.[14]

This matter originally could have been brought in the Central District of California given that forum possesses personal jurisdiction over GMR and venue would be proper based on § 1391(a). Moreover, and importantly, the Court finds notable that the District Court overseeing the matter initiated by GMR in the Central District of California, *Global Music Rights, LLC v. Radio Music License Comm., Inc., et al.*, No. 16-9051 (C.D. Cal. Mar. 10, 2017), stayed that action

---

[14] The Court will note that it bore in mind the four-year statutes of limitation for both the Sherman and Clayton Acts. 15 U.S.C. § 15(b). After finding no issues upon an independent review and noting that the Parties did not raise any objection or cite potential prejudice based on limitations grounds, the Court found transfer to be proper.

and waited to rule on a pending motion to dismiss GMR's Amended Complaint after finding that "both actions [the above-captioned matter and the matter pending in the Central District of California] involve the same facts, the same set of negotiations, and overlapping evidence."  Order dated Apr. 7, 2017 at 10 (ECF No. 40).  Consequently, to the extent the District Court in the Central District of California finds that GMR's claims raised there were more appropriately raised as counterclaims to RMLC's claims herein; or that RMLC does not have plaintiff priority; or that the cases may each proceed, but they are not sufficiently similar to be heard in one action, that court may exercise its "broad discretion" accordingly to hear or sever the cases.  *See* Rule 21; *see also Johnson v. Relves*, No. 13-0866, 2014 WL 1325388, at *6 (C.D. Cal. Feb. 10, 2014); *accord Anrig v. Ringsby United*, 603 F.2d 1319, 1324-25 (9th Cir. 1979).

Accordingly, as GMR has not asserted any prejudice warranting dismissal over transfer, the Court finds that the interest of justice warrant transfer pursuant to § 1406(a).

## CONCLUSION

For the foregoing reasons the Court holds that it may not exercise personal jurisdiction over GMR and that venue is not proper in this judicial district.  As GMR is subject to the jurisdiction of the Central District of California, and venue is proper therein, the Court will transfer this matter there pursuant to § 1406(a).  The Court's rulings on the pending motions referenced herein and the Report and Recommendation are set forth in the accompanying Order.

BY THE COURT:

*/s/ C. Darnell Jones, II*
C. DARNELL JONES, II      J.