LATHAM & WATKINS LLP
  Margaret M. Zwisler (*pro hac vice*)
    *margaret.zwisler@lw.com*
  Jennifer L. Giordano (*pro hac vice*)
    *jennifer.giordano@lw.com*
555 Eleventh St. NW, Suite 1000
Washington, D.C. 20004-1304
Telephone: +1.202.637.2200
Facsimile: +1.202.637.2201

  Andrew M. Gass (Bar No. 259694)
    *andrew.gass@lw.com*
505 Montgomery Street, Suite 2000
San Francisco, California 94111-6538
Telephone: +1.415.391.0600
Facsimile: + 1.415.395.8095

Attorneys for RADIO MUSIC LICENSE COMMITTEE, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GLOBAL MUSIC RIGHTS, LLC, <br><br> Plaintiff, <br><br> v. <br><br> RADIO MUSIC LICENSE COMMITTEE, INC. and DOES 1 through 3,000, <br><br> Defendants. | Case No. 2:16-cv-09051-TJH-AS <br><br> **DEFENDANT RADIO MUSIC LICENSE COMMITTEE, INC.'S RESPONSE TO STATEMENT OF INTEREST OF THE UNITED STATES** <br><br> The Honorable Terry J. Hatter, Jr. <br><br> Under Submission September 9, 2019 |

**TABLE OF CONTENTS**

**Page**

I.   RMLC HAS NOT ASKED THE COURT TO DISMISS GMR'S CLAIMS BASED ON A FAILURE TO ALLEGE "INTENT"; GMR'S CLAIMS FAIL BECAUSE IT HAS NOT ALLEGED ANY AGREEMENT AMONG 10,000 RADIO STATIONS TO DO ANYTHING AT ALL ........................................................................... 3

II.  THE DIVISION'S POSITION THAT PRICE FIXING AND GROUP BOYCOTTS ARE NOT NECESSARILY MUTUALLY EXCLUSIVE HAS NOTHING TO DO WITH THE FACTS THAT GMR ALLEGED ................................................................................. 6

III. GIVEN ITS OWN RECENT CONDUCT, THE DIVISION SURELY IS NOT ASKING THIS COURT TO BE THE FIRST IN HISTORY TO HOLD THAT IT IS *PER SE* UNLAWFUL FOR PARTIES TO PROPOSE ARBITRATION AS A WAY TO RESOLVE DISPUTES IN ORDER TO AVOID PROTRACTED FEDERAL COURT LITIGATION ............................................................ 9

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Adaptive Power Solutions, LLC v. Hughes Missile Systems Co.*,
  141 F.3d 947 (9th Cir. 1998) ............................................................................. 7

*Alaska v. Fed. Subsistence Bd.*,
  544 F.3d 1089 (9th Cir. 2008) ........................................................................... 2

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) .................................................................................... 5, 11

*Conley v. Gibson*,
  355 U.S. 41 (1957) ........................................................................................... 11

*Drayer v. Krasner*,
  572 F.2d 348 (2d Cir. 1978) ......................................................................... 9, 12

*E.I. Du Pont De Nemours & Co. v. Smiley*,
  138 S.Ct. 2563 (2018) ....................................................................................... 2

*The Fair v. Kohler Die & Specialty Co.*,
  228 U.S. 22 (1913) ............................................................................................ 8

*FTC v. Superior Court Trial Lawyers Ass'n*,
  493 U.S. 411 (1990) .......................................................................................... 7

*Int'l Healthcare Mgmt. v. Hawaii Coal. for Health*,
  332 F.3d 600 (9th Cir. 2003) ........................................................................... 12

*Kelsey K. v. NFL Enterprises, LLC*,
  757 F. App'x 524 (9th Cir. 2018) ...................................................................... 5

*Kendall v. Visa U.S.A. Inc.*,
  2005 WL 2216941 (N.D. Cal. July 25, 2005), *aff'd*, 518 F.3d 1042
  (9th Cir. 2008) .................................................................................................. 4

*Kendall v. Visa U.S.A., Inc.*,
  518 F.3d 1042 (9th Cir. 2008) ........................................................................... 4

*Knevelbaard Dairies v. Kraft Foods, Inc.*,
   232 F.3d 979 (9th Cir. 2000) ................................................................... 5, 11, 12

*LSP Transmission Holdings, LLC v. Lange*,
   329 F. Supp. 3d 695 (D. Minn. 2018), *appeal filed sub nom. LSP Transmission Holdings, LLC v. Sieben*, No. 18-2559 (8th Cir. July 24, 2018) ........................................................................................................ 3

*Monsanto Co. v. Spray-Rite Serv. Corp.*,
   465 U.S. 752 (1984) ............................................................................................ 5

*In re Musical Instruments & Equip. Antitrust Litig.*,
   798 F.3d 1186 (9th Cir. 2015) ............................................................................ 4

*NextEra Energy Capital Holdings, Inc. v. Walker*,
   No. 1:19-cv-00626-LY (W.D. Tex. Dec. 2, 2019) .............................................. 2

*Nitro-Lift Techs., L.L.C. v. Howard*,
   568 U.S. 17 (2012) .............................................................................................. 9

*Oliver v. SD-3C LLC*,
   2016 WL 5950345 (N.D. Cal. Sept. 30, 2016) ................................................... 5

*Oscar Ins. Co. of Fla. v. Blue Cross Blue Shield of Fla., Inc.*,
   2019 WL 5295091 (M.D. Fla. Sept. 20, 2019) ................................................... 3

*Republic of Austria v. Altmann*,
   541 U.S. 677 (2004) ............................................................................................ 2

*United States ex rel. Ruckh v. Salus Rehab.*,
   2017 WL 1495862 (M.D. Fla. Apr. 26, 2017) .................................................... 3

*William Morris Endeavor Entm't, LLC v. Writers Guild of Am.*,
   No. 2:19-cv-05465-AB-AFMx (C.D. Cal. Dec. 2, 2019) ................................... 2

**STATUTES**

15 U.S.C. § 1 ............................................................................................................. 5

28 U.S.C. § 517 ......................................................................................................... 1

**RULES**

Fed. R. Civ. P. 12(b)(6) .......................................................................................... 11

The Antitrust Division's December 5, 2019 Statement of Interest, ECF No. 111 ("SOI")—which it filed with no advance notice to Defendant Radio Music License Committee, Inc. ("RMLC"), three months after briefing closed and on the eve of the Court's decision—is, above all else, puzzling:

*First*, the Division asks the Court to "reject[]" arguments that RMLC has not made.

*Second*, the Division explains its view of law that has nothing to do with the facts that Plaintiff Global Music Rights, LLC ("GMR") has actually alleged, while at the same time agreeing with RMLC on the law that *does* apply to the particular facts alleged in this case.

*Third*, without citing any supporting authority, the Division seems to ask this Court to be the first one in history to condemn as *per se* unlawful a proposal to use arbitration to avoid protracted antitrust litigation in federal court. But surely that cannot be *this* Division's position. A mere two months ago, it publicly lauded its own "groundbreaking" decision to start using arbitration in lieu of litigation precisely because arbitration is so much more efficient.[1]

*Finally*, the Division does not address two of the independent arguments that RMLC has made for dismissal, so none of the points addressed in the Division's filing is dispositive of the outcome of the motion at issue. To the contrary, even if the Court were to credit in full everything the Division has said, granting RMLC's motion for judgment on the pleadings would still be warranted.

For all of these reasons, the United States does not appear to have an actual interest, within the meaning of 28 U.S.C. § 517, in RMLC's pending motion for judgement on the pleadings. The Statement of Interest does not address any issue of

---

[1]   *See, e.g.*, Makan Delrahim, Assistant Attorney General, Antitrust Divison, U.S. Dept't of Justice, "Special, So Special"*: Specialist Decision-Makers in, and the Efficient Disposition of, Antitrust Cases (Sept. 9, 2019), https://www.justice.gov/opa/speech/file/1201301/download.

relevance to the operative questions before this Court.

\* \* \*

In a departure from previous administrations, the current leadership of the Antitrust Division has adopted a practice of offering its views on how district courts should address antitrust issues in private cases before them.[2] *Cf. E.I. Du Pont De Nemours & Co. v. Smiley*, 138 S.Ct. 2563, 2564 (2018) (Gorsuch, J., respecting denial of *certiorari*) ("Don't serious equal protection concerns arise when an agency advances an interpretation only in litigation with full view of who would benefit and who would be harmed? . . . Should we be concerned that some agencies . . . have apparently become particularly aggressive in attempting to mold statutory interpretation and establish policy by filing 'friend of the court' briefs in private litigation?") (alterations omitted). Although there may be cases where the Division's stated interest in assuring that courts apply antitrust law fairly and correctly could assist federal district judges in resolving novel legal issues of first impression, this case has no such issues. It requires only a straightforward application of the uncontroversial binding law of this Circuit to the allegations of GMR's complaint. There is nothing unique or difficult about that exercise that requires the court to consider the unsolicited views of a federal agency. And the Court does not owe any deference to the Division's views on either the law or its application to the facts here. *Alaska v. Fed. Subsistence Bd.*, 544 F.3d 1089, 1095 (9th Cir. 2008) ("We do not afford *Chevron* or *Skidmore* deference to litigation positions unmoored from any official agency interpretation . . . ."); *Republic of Austria v. Altmann*, 541 U.S. 677,

---

[2]   Courts have recently denied the Division's requests to participate in private litigation. *See, e.g.*, Or. Den. Req. of the U.S. to Participate in the Dec. 6, 2019 Hr'g on Defs.' Mot. to Dismiss, *William Morris Endeavor Entm't, LLC v. Writers Guild of Am.*, No. 2:19-cv-05465-AB-AFMx (C.D. Cal. Dec. 2, 2019), ECF No. 62; Or. Den. Opposed Mot. of the U.S. to Participate in the Dec. 4, 2019 Hr'g, *NextEra Energy Capital Holdings, Inc. v. Walker*, No. 1:19-cv-00626-LY (W.D. Tex. Dec. 2, 2019), ECF No. 132.

701 (2004) (noting that executive branch statements of interest regarding the interpretation of law are entitled to no deference from the judiciary).[3]

Solely to eliminate any 11th-hour confusion that the Division's filing may have created about the arguments that RMLC has and has not made, we briefly address each of the Division's points below.

**I.   RMLC HAS NOT ASKED THE COURT TO DISMISS GMR'S CLAIMS BASED ON A FAILURE TO ALLEGE "INTENT"; GMR'S CLAIMS FAIL BECAUSE IT HAS NOT ALLEGED ANY AGREEMENT AMONG 10,000 RADIO STATIONS TO DO ANYTHING AT ALL**

First, the Division asks this Court to "reject[]" RMLC's argument that GMR

---

[3] *See also LSP Transmission Holdings, LLC v. Lange*, 329 F. Supp. 3d 695, 703 (D. Minn. 2018) (declining to consider the Division's statement of interest filed two and a half months after the completion of briefing on motion to dismiss), *appeal filed sub nom. LSP Transmission Holdings, LLC v. Sieben*, No. 18-2559 (8th Cir. July 24, 2018); *United States ex rel. Ruckh v, Salus Rehab.*, 2017 WL 1495862, at *1 (M.D. Fla. Apr. 26, 2017) (28 U.S.C. §517 does not provide the Department of Justice free reign to "appear and submit argument in any case in which the United States articulates a generic interest in the 'development' and the 'correct application' of the law."); *Oscar Ins. Co. of Fla. v. Blue Cross Blue Shield of Fla., Inc.*, 2019 WL 5295091, at *1 n.1 (M.D. Fla. Sept. 20, 2019) (same); *Salus*, 2017 WL 1495862, at *2 (denying DOJ motion for leave to submit a statement of interest where the statement "appear[ed] calculated to duplicate" one party's arguments regarding the interpretation of relevant law). Even outside the context of statements of interest, the Antitrust Division of the U.S. Department of Justice has no specially delegated authority from Congress to promulgate binding interpretations of the Sherman Act, has certainly not validly exercised any such authority with respect to any topic at issue here, and thus merits no *Chevron* or similar deference in any event. *See United States v. Mead Corp.*, 533 U.S. 218, 226-27 (2001) ("[A]dministrative implementation of a particular statutory provision qualifies for *Chevron* deference when it appears that Congress delegated authority to the agency generally to make rules carrying the force of law, and that the agency interpretation claiming deference was promulgated in the exercise of that authority."); *cf.* Sanford N. Caust-Ellenbogen, *Blank Checks: Restoring the Balance of Powers in the Post-Chevron Era*, 32 B.C.L. Rev. 757, 817 (1991) ("*Chevron* is [] inapplicable in situations involving parallel enforcement models, such as the antitrust laws.").

has failed to "plausibly plead[] that RMLC intended to harm commerce." SOI at 5. But RMLC has not made any such argument, so there is nothing for the Court to "reject[]." *Id*. As RMLC described at length, the reason that GMR has not alleged the first element of a Section 1 claim—an agreement in violation of the antitrust laws—is because it has not plausibly alleged that 10,000 radio stations agreed with each other to do ***anything at all***. *See* RMLC Mem. of P. & A. in Supp. of Mot. for J. on the Pleadings at 10-16, ECF No. 95-1 ("RMLC Mot."); RMLC Reply in Supp. of Mot. for J. on the Pleadings at 8-15, ECF No. 99 ("RMLC Reply"). In making that argument—which has nothing to do with "intent"—RMLC exhaustively discussed (among others) the very case that the Division accuses RMLC of "never acknowleg[ing]": *In re Musical Instruments & Equip. Antitrust Litig.*, 798 F.3d 1186 (9th Cir. 2015). *Compare* SOI at 7 *with* RMLC Mot. at 13-16; RMLC Reply at 8.

The Division's confusion appears to stem from RMLC directly quoting the standard for a Section 1 violation set forth in *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1047-48 (9th Cir. 2008): "To state a claim under Section 1 of the Sherman Act, 15 U.S.C. § 1, claimants must plead not just ultimate facts (such as a conspiracy), but evidentiary facts which, if true, will prove: (1) a contract, combination or conspiracy among two or more persons or distinct business entities; (2) ***by which the persons or entities intended to harm or restrain trade or commerce among the several States, or with foreign nations***; (3) which actually injures competition." *Id*. at 1047 (emphasis added); RMLC Mot. at 10. The Division says that *Kendall* was only setting forth the standard for the type of agreement that would violate the rule of reason, and that *Kendall* is irrelevant to the types of agreements that amount to a *per se* claim. SOI at 7. But *Kendall* itself makes no such distinction and the specific Section 1 claim that *Kendall* addressed was alleged to be a *per se* violation, *i.e.,* horizontal price fixing. *See Kendall v. Visa U.S.A. Inc.*, 2005 WL

4

2216941, at *1 (N.D. Cal. July 25, 2005) ("Plaintiffs allege that Defendants' act of setting merchant discount and interchange fees amounts to horizontal price fixing under Section 1 of the Sherman Antitrust Act"), *aff'd*, 518 F.3d 1042 (9th Cir. 2008). Other courts in this Circuit have cited the *Kendall* standard in cases involving *per se* claims.[4] Indeed, in *Kelsey K. v. NFL Enterprises, LLC*, 757 F. App'x 524, 526 (9th Cir. 2018), the Ninth Circuit itself quoted this exact standard from *Kendall* as the standard "[t]o prove *per se* illegality."

In any event, this purely academic debate of the Division's own making—which again has nothing to with the arguments for dismissal that RMLC has actually made—obscures what appears to be the Division's *agreement* with RMLC on the substance of the issue in question. The Division acknowledges that to violate Section 1 under either the *per se* standard or the rule of reason the defendants must have "had a **conscious commitment** to a common scheme **designed to achieve an unlawful objective**." SOI at 6 (emphasis added) (citing *Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 764 (1984)). Under the Sherman Act, the "unlawful objective" is to harm competition—otherwise known as restraining trade. 15 U.S.C. § 1. *Knevelbaard Dairies v. Kraft Foods, Inc.*, 232 F.3d 979, 985 (9th Cir. 2000), a *per se* case on which the Division places heavy emphasis, is one of many cases that makes that point plain.

Surely the Division is not suggesting that the standard that courts must apply to determine whether an antitrust plaintiff has plausibly alleged facts necessary to plead an *agreement*, *vel non*, for a Section 1 violation is different or more lenient for a *per se* claim than for a rule of reason claim. The Supreme Court and the Ninth Circuit have made clear that—at least as to the predicate question of whether a plaintiff has plausibly alleged that any agreement between the defendants existed at

---

[4] *See, e.g.*, *Oliver v. SD-3C LLC*, 2016 WL 5950345, at *3 (N.D. Cal. Sept. 30, 2016).

5

all—the same standards apply regardless of the type of claim. Both *Kendall* and *Musical Instruments* applied the standards set forth in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) to *per se* claims.

In any event, it bears repeating that the issue for this Court to decide on RMLC's pending motion is not whether GMR has alleged that 10,000 radio stations intended to harm competition; it is whether GMR has plausibly alleged ***any*** agreement among 10,000 radio stations ***at all***.[5] The SOI does not address this question—one that the Court is perfectly capable of answering itself, applying well-settled Supreme Court and Ninth Circuit law to GMR's complaint without the Division's assistance.

## II. THE DIVISION'S POSITION THAT PRICE FIXING AND GROUP BOYCOTTS ARE NOT NECESSARILY MUTUALLY EXCLUSIVE HAS NOTHING TO DO WITH THE FACTS THAT GMR ALLEGED

Next the Division asks this Court to "reject[]" RMLC's argument that parties can never engage in both price fixing and also a group boycott because, according to the Division, price fixing and group boycotts are not "mutually exclusive." SOI at 8-9. Here again, RMLC has not made any such argument, so the Division's views on the law in this area are beside the point.

RMLC has not asked this Court to dismiss GMR's claims because it is legally impossible for parties to engage in price fixing and also to engage in a group boycott. Rather, RMLC argues that price fixing and group boycotts are not necessarily the same thing—a point with which the Division appears to agree (SOI at 8)—and that courts must look at the actual conduct alleged to determine whether to apply the law

---

[5] For this reason, the Division's views on the "success of the conspiracy" (SOI at 12-13) are irrelevant. RMLC does not argue that there was, in fact, an agreement among radio stations to achieve something unlawful, but they were never quite able to bring it to fruition. Rather, RMLC argues that GMR has not plausibly alleged any agreement among radio stations at all.

6

of group boycotts, the law governing price fixing, both, or neither. RMLC Mot. at 17-19; Reply at 18-21.

Here, if GMR has plausibly alleged any actionable agreement among 10,000 radio stations at all (and it clearly has not), it could only be an agreement not to buy licenses from GMR. Nowhere in the complaint does GMR allege that 10,000 radio stations agreed with each other on the price at which they all would buy a license from GMR. The SOI cites no allegations in the complaint (much less plausible ones) about any agreement among 10,000 radio stations on the price for a GMR license because ***there are none***.[6]

As RMLC detailed exhaustively in two briefs, in *Adaptive Power Solutions, LLC v. Hughes Missile Systems Co.*, 141 F.3d 947, 950 (9th Cir. 1998), the Ninth Circuit held that when horizontal competitors agree with each other not to buy a product because they think that the price they are being charged is too high, but they do not separately agree on the particular price at which they would buy the product, that conduct is not price fixing as a matter of law; it is, at most, a group boycott. RMLC Mot. at 17-19; Reply at 4-7. And that conduct is also subject to the rule of reason, not the *per se* standard. *Id.*

The Ninth Circuit decided *Adaptive Power* **after** *FTC v. Superior Court Trial Lawyers Ass'n*, 493 U.S. 411 (1990), and the two decisions are in no way inconsistent. Indeed, the Division itself acknowledges that *Adaptive Power* "stands for the . . . proposition that a refusal to deal, without an agreement as to pricing, is

---

[6] GMR's false allegation that **RMLC** at one point supposedly made a "single license fee proposal" covering all stations (GMR First Amended Complaint ¶¶ 61-62, ECF No. 23) ("GMR FAC") does not come close to plausibly alleging an agreement on price. GMR does not allege that all 10,000 radio stations even knew about that proposal, much less authorized and agreed to it. In any event, the Division does not dispute the well-settled law that there is no liability under Section 1 without an actual impact on the plaintiff. Reply at 6. The only injuries that GMR alleges arise from the purported failure of radio stations to buy licenses. GMR FAC ¶¶ 121-33.

1 not price-fixing." SOI at 10. That is the same argument that RMLC has made in its
2 motion, so it is unclear what exactly the Division thinks that RMLC has "wrongly
3 argue[d]." *Id*. at 8.

4     It seems that the only issue in dispute is whether GMR has plausibly alleged
5 that 10,000 radio stations all agreed with each other on a price at which they would
6 buy a license from GMR. If GMR has not done so, then the Division appears to be
7 in full agreement with RMLC that GMR's claims fall squarely within *Adaptive*
8 *Power*. To resolve the question of what GMR actually alleges, the Court does not
9 need the Division's help—nor has the Division meaningfully offered any, since its
10 brief offers not a single citation to any paragraph of the operative complaint.
11 Regardless, the Court can read that document for itself to confirm that GMR has not
12 alleged at all (much less plausibly so) that 10,000 radio stations made any agreement
13 on price with respect to GMR licenses. In fact, GMR alleges that RMLC told radio
14 stations to make their own independent decisions as to whether to buy a license from
15 GMR and, if so, at what price. GMR FAC ¶ 68.

16     The Division also says that, "[b]ecause 'the party who brings a suit is master
17 to decide what law he will rely upon', this Court should decide whether GMR has
18 plausibly pleaded price fixing, regardless of whether its allegations could also, or
19 should instead, be categorized as describing a group boycott." SOI at 10-11 (citation
20 omitted) (quoting *The Fair v. Kohler Die & Specialty Co.*, 228 U.S. 22, 25 (1913)).
21 It is not clear what the Division's quotation of *Kohler Die* is intended to mean, but
22 the Division certainly cannot be asking this Court to find that GMR has plausibly
23 stated a claim for price fixing merely because GMR used the words "price fixing"
24 in its complaint. It has long been settled law that courts are required to disregard
25 these conclusory labels and to look at the facts actually alleged. RMLC Reply at 4-
26 7. If, however, the Division instead is asking the Court to look at the actual facts
27 pleaded to determine whether GMR has plausibly alleged price fixing wholly apart
28

from whether it has alleged a group boycott, then RMLC is in full agreement because that is precisely RMLC's point. Even the completely false facts that GMR alleges—taken at face value—do not plausibly allege that 10,000 radio stations agreed with each other on the price at which they would buy a license from GMR. It is not a close question.

### III. GIVEN ITS OWN RECENT CONDUCT, THE DIVISION SURELY IS NOT ASKING THIS COURT TO BE THE FIRST IN HISTORY TO HOLD THAT IT IS *PER SE* UNLAWFUL FOR PARTIES TO PROPOSE ARBITRATION AS A WAY TO RESOLVE DISPUTES IN ORDER TO AVOID PROTRACTED FEDERAL COURT LITIGATION

The Division's last point is perhaps the most puzzling of all. It seems to suggest that proposing to arbitrate disputes in order to try to avoid costly and time consuming antitrust litigation in federal court could be a *per se* violation of the antitrust laws. We are aware of no court that has ever so held, and the Division cites none. Indeed, the Second Circuit has held that agreements that actually *compelled* a party to accept arbitration—far more than GMR alleges here—are subject to the rule of reason.[7] It would be odd, to say the least, to interpret the Sherman Act to condemn the use of arbitration when this country has a "national policy favoring arbitration." *Nitro-Lift Techs., L.L.C. v. Howard*, 568 U.S. 17, 17 (2012) (per curiam). This Court knows firsthand the extraordinary use of judicial resources that complex antitrust cases like this one require that could be saved through a more efficient arbitration process. Indeed, it is the express policy of this Court to "encourage" the use of Alternative Dispute Resolution procedures, like arbitration. L.R. 16-15. The Division cannot possibly be suggesting that the Sherman Act precludes parties from merely asking an adversary whether it is willing to agree to

---

[7] RMLC Reply at 19 (citing *Drayer v. Krasner*, 572 F.2d 348, 353-55 (2d Cir. 1978)).

9

use a more efficient alternative to litigation, which the adversary is free to accept or reject.

It would be particularly bizarre for this administration's Antitrust Division to be the first ever to advocate for such a radical interpretation of antitrust law given its own recent activity. In September 2019, the Division publicly announced its "groundbreaking" decision, "[f]or the first time in its history," to use "its authority under the Administrative Dispute Resolution Act of 1996 *to arbitrate* a Clayton Act Section 7 challenge."[8] Just two months ago, Assistant Attorney General Makan Delrahim stated that

> [t]he benefits of arbitration are well-established. Arbitration allows a neutral third party to decide important or dispositive issues without the expense of trial and often leads to a more speedy resolution of cases.

*Id.* at 9. He went on to say that the Division will be looking for more opportunities to use arbitration in the future for these reasons:

> While antitrust legal standards have embraced efficiency, antitrust legal processes still have a long way to go. No one here needs to be reminded of the tremendous costs of antitrust litigation. Indeed, the Supreme Court repeatedly has recognized, including in the relatively recent *Bell Atlantic v. Twombly* case, the expense and burden that lengthy antitrust cases can impose. I submit that antitrust enforcers should be more attuned to ensuring an efficient process for resolving merger and conduct investigations and, when necessary, litigations . . . .

*Id.* at 3 (footnote omitted).

Because the Division's position otherwise makes no sense, RMLC must assume that this is a merely third example of the Division misunderstanding RMLC's argument. The Division states that:

> [t]he mere fact . . . that a third party decides the price on which competitors will agree does not, standing on its own, remove the restraint from the price-fixing category.

---

[8] Delrahim, *supra* note 1, at 1-2 (emphasis added).

> That restraint is still an agreement to charge the same prices and thus still eliminates competition on price.

SOI at 11. But GMR has not alleged any agreement among 10,000 radio stations "to charge *the same prices*" for a GMR license, and RMLC has not argued for some categorical rule that the "mere fact" that some "third party decides the price" makes all associated conduct *per se* lawful. *Id*. Rather, RMLC argues that—under the particular facts alleged here—GMR's claims must be subject to the rule of reason rather than the *per se* rule. That is because GMR does not allege that radio stations agreed with each other on price. It does not even allege that 10,000 radio stations agreed with each other to propose arbitration. At most, GMR alleges that **RMLC**—the trade association that would be filing the lawsuit—asked GMR whether it would be willing to resolve disputes about prices in arbitration in order to avoid protracted federal court litigation. RMLC Reply at 6-7. GMR itself alleges that when it refused the arbitration proposal, RMLC sued it in federal court. GMR FAC ¶ 73.

The Division's confusion may stem from its mistaken view that when RMLC supposedly proposed using arbitration in lieu of litigation that somehow means that 10,000 radio stations had agreed with each other "to charge the same price[]." SOI at 11. But GMR does not allege that, nor does that follow logically. Under RMLC's alleged proposal, GMR could have argued for whatever rates it wanted, including for different rates for each different radio station, or even for separate arbitrations. RMLC Reply at 5-7. And, if the arbitrators had sided with GMR's position, each radio station that had made its own decision to agree, beforehand, to be bound to those results would have paid the rate determined for it, regardless whether that was the same or different from any other station's rate. *Id.* Just because RMLC supposedly proposed a more efficient process for determining rates than federal court litigation does not mean that GMR has alleged that all radio stations agreed with each other that they would only buy at "the same price[]." SOI at 11. The complaint does not say that, and it never happened. So, on this issue, the Division

11

is not accepting the facts as alleged, but is reading into the complaint something that is not there.

As the presiding District Judge in *Knevelbaard Dairies*, this Court is uniquely familiar with the facts of that case and thus knows that that case had nothing to do with the question of whether an alleged agreement to propose arbitration to avoid costly litigation should be judged as *per se* or under the rule of reason. In that case, which did not address the sufficiency of the conspiracy allegations,[9] the cheese maker defendants were alleged to have fixed the price of cheese sold at auction in order to suppress the price of fluid milk, which was based, in part, on the auction price of cheese. 232 F.3d at 982, 990. Here, GMR does not allege that 10,000 radio stations made any agreement with each other on the price for a GMR license. GMR merely alleges that most of those stations—although certainly not all—did not buy a license before they needed to do so, that RMLC supposedly asked GMR if it would agree to arbitrate rate disputes in order to avoid precisely the costly antitrust litigation that the parties have been engaged in for three years now, and that GMR declined. If any of that plausibly constitutes an agreement within the meaning of Section 1 (and it does not), it clearly has to be subject to the rule of reason, not he *per se* standard. *See, e.g.,* RMLC Reply at 19 (citing *Drayer*, 572 F.2d at 353-55); *see also id.* at 7 (citing *Int'l Healthcare Mgmt. v. Hawaii Coal. for Health*, 332 F.3d 600, 608 (9th Cir. 2003) (jointly proposing contract term requiring "fair and reasonable" prices was not *per se* unlawful and did not harm competition)).

\* \* \*

In sum, RMLC has not made any of the arguments that the Division has asked this Court to "reject[]" so the SOI is not relevant to the Court's resolution of RMLC's

---

[9] *Id.* at 987. *Knevelbaard*, which pre-dated *Twombly*, applied the "no set of facts" Federal Rule of Civil Procedure 12(b)(6) standard from *Conley v. Gibson*, 366 U.S. 41, 45-46 (1957). *Knevelbaard*, 232 F.3d at 979, 984. The Supreme Court rejected the *Conley* standard in *Twombly*. 550 U.S. at 560-63.

pending motion for judgment on the pleadings. Regardless, the SOI does not take any position on the other independent arguments that RMLC has made for dismissal including that:

(1) GMR has not plausibly alleged any agreement among 10,000 radio stations to do anything—an independently fatal problem whether its claims fall under the rule of reason or the *per se* standard (RMLC Mot. at 10-13; RMLC Reply at 8-12);

(2) GMR has failed to allege antitrust injury, which also is the same requirement for both *per se* and rule of reason claims (RMLC Mot. at 21-24; RMLC Reply at 15-18); and

(3) GMR's rule of reason claims fail to allege harm to competition in a relevant market (RMLC Mot. at 19-21; RMLC Reply at 21-25).

Thus, notwithstanding anything in the Division's Statement of Interest and even if the Court were to credit it in full, the Court should still grant RMLC's motion for judgment on the pleadings and dismiss all of GMR's claims.

Dated:  December 18, 2019                              Respectfully submitted,

/s/ Jennifer L. Giordano
Jennifer L. Giordano (*pro hac vice*)
Margaret M. Zwisler (*pro hac vice*)
William M. Friedman (*pro hac vice*)
David L. Johnson (*pro hac vice*)
LATHAM & WATKINS LLP
555 Eleventh Street, N.W., Suite 1000
Washington, D.C. 20004-1304
Telephone: (202) 637-2200
Facsimile: (202) 637-2201
Email: Margaret.Zwisler@lw.com
Email: Jennifer.Giordano@lw.com
Email: William.Friedman@lw.com
Email: David.Johnson@lw.com

Alfred C. Pfeiffer, Jr. (Bar No. 120965)
Andrew M. Gass (Bar No. 259694)
Brittany N. Lovejoy (Bar No. 286813)
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111-6538
Telephone: (415) 391-0600
Facsimile: (415) 395-8095
Email: Al.Pfeiffer@lw.com
Email: Andrew.Gass@lw.com
Email: Brittany.Lovejoy@lw.com

Manuel A. Abascal (Bar No. 171301)
LATHAM & WATKINS LLP
355 South Grand Avenue, Suite 100
Los Angeles, CA 90071-1560
Telephone: (213) 485-1234
Facsimile: (213) 891-8763
Email: Manny.Abascal@lw.com