1  LATHAM & WATKINS LLP
2     Margaret M. Zwisler (*pro hac vice*)
      *margaret.zwisler@lw.com*
3     Jennifer L. Giordano (*pro hac vice*)
      *jennifer.giordano@lw.com*
4   555 Eleventh St. NW, Suite 1000
    Washington, D.C. 20004-1304
5   Telephone: +1.202.637.2200
    Facsimile: +1.202.637.2201

6     Andrew M. Gass (Bar No. 259694)
      *andrew.gass@lw.com*
7   505 Montgomery Street, Suite 2000
    San Francisco, California 94111-6538
8   Telephone:  +1.415.391.0600
    Facsimile:  + 1.415.395.8095

9
    Attorneys for RADIO MUSIC LICENSE
10  COMMITTEE, INC.

11

12              UNITED STATES DISTRICT COURT

13             CENTRAL DISTRICT OF CALIFORNIA

14

15  RADIO MUSIC LICENSE            Case Nos.  2:19-cv-03957-TJH-AS
    COMMITTEE, INC.,
                                              2:16-cv-09051-TJH-AS
16              Plaintiff,
                                   **RADIO MUSIC LICENSE**
17       v.                        **COMMITTEE, INC.'S REPLY IN
                                   SUPPORT OF ITS OBJECTIONS**
18  GLOBAL MUSIC RIGHTS, LLC,      **TO, AND MOTION FOR REVIEW
                                   AND RECONSIDERATION OF,**
19              Defendant.         **MAGISTRATE JUDGE'S ORDER
                                   DENYING MOTION TO COMPEL**
20  *and*                          **WITHOUT PREJUDICE**

21  GLOBAL MUSIC RIGHTS, LLC,
                                   Hearing: February 24, 2020
22              Plaintiff,         Time:  UNDER SUBMISSION
                                   Place: Courtroom #9B
23       v.

24  RADIO MUSIC LICENSE            Fact Discovery Cut-Off: March 2, 2020
    COMMITTEE, INC. and DOES 1     Pre-Trial Conference: October 19, 2020
25  through 3,000,                 Trial Date: TBD

26              Defendants.

27

28

# <u>TABLE OF CONTENTS</u>

**Page**

I.   INTRODUCTION ........................................................................ 1

II.  GMR DOES NOT DEFEND THE LIMITED PORTIONS OF
     THE ORDER TO WHICH RMLC OBJECTS ................................. 2

     A.   GMR Admits That The Market It Has Alleged In Its
          Affirmative Case Is Legally Distinct From The Market
          That RMLC Alleged In Its Case ............................................ 5

     B.   GMR Does Not Identify Any Evidence Supporting Judge
          Sagar's Statement That RMLC Has "Consistently
          Asserted" That The Relevant Market For GMR's Claims
          Is Limited To Terrestrial Radio ........................................... 6

     C.   GMR Has Confirmed That It Wants To Continue To
          Argue That Radio License Fees Are Depressed Relative
          To Non-Radio License Fees, Despite Its Earlier Position
          That Non-Radio License Fees Are Legally Irrelevant ................... 9

III. GMR'S REMAINING ARGUMENTS ARE WITHOUT
     MERIT ................................................................................... 10

     A.   RMLC Did Not Misstate The Legal Standard That
          Applies To Its Objection ................................................... 10

     B.   RMLC Was Not Required To Engage In Another Futile
          Meet And Confer Before Filing Its Objections ........................ 13

     C.   GMR's Assertion That RMLC Is Seeking An Advisory
          Opinion Is Nonsense ......................................................... 15

IV.  CONCLUSION ......................................................................... 16

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

## CASES

4

5

*Al-Kidd v. Gonzales*,
   No. 05-093, 2009 WL 10705950 (D. Idaho Sept. 12, 2009)............................. 12

6

7

*Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp. Inc.*,
   No. 14-03053, 2016 WL 6821116 (C.D. Cal. June 17, 2016) .......................... 12

8

*Bernstein v. Virgin America, Inc.*,
   No. 15-02277, 2017 WL 7156342 (N.D. Cal. June 28, 2017) .......................... 13

9

10

*In re BofI Holding Inc. Sec. Litig.*,
   318 F.R.D. 129 (S.D. Cal. 2016)................................................................ 11, 12

11

12

*Bower v. Wright Medical Technology, Inc.*,
   No. 17-03178, 2018 WL 6330410 (C.D. Cal. Dec. 3, 2018) ............................ 9

13

14

*Brown v. Am. Airlines, Inc.*,
   No. 10-8431, 2011 WL 13217553 (C.D. Cal. July 13, 2011) ....................... 8, 13

15

16

*Burt v. AVCO Corp.*,
   No. 15-3355, 2015 WL 12912366 (C.D. Cal. Nov. 17, 2015)......................... 12

17

*China Nat. Metal Prod. Imp./Exp. Co. v. Apex Dig., Inc.*,
   155 F. Supp. 2d 1174 (C.D. Cal. 2001)........................................................... 5

18

19

*Cox v. Cont'l Cas. Co.*,
   703 F. App'x 491 (9th Cir. 2017)................................................................... 4

20

21

*Curry v. Baca*,
   No. 04-9992, 2007 WL 9706924 (C.D. Cal. Nov. 29, 2007)........................... 14

22

23

*EEOC v. Peters' Bakery*,
   301 F.R.D. 482 (N.D. Cal. 2014) .......................................................... 11, 12, 13

24

25

*Fox Broad Co. v. DISH Network LLC*,
   No. 12-04529, 2015 WL 12765545 (C.D. Cal. Jan. 12, 2015) ................... 11, 12

26

27

*Franco-Gonzales v. Holder*,
   No. 10-02211, 2010 WL 11643590 (C.D. Cal. Oct. 18, 2010)........................... 5

28

*Geophysical Systems Corp. v. Raytheon Co.*,
    117 F.R.D. 646 (C.D. Cal. 1987) ............................................................ 12

*Grimes v. City & Cty. of S.F.*,
    951 F.2d 236 (9th Cir. 1991) (Opp'n ) ..................................................... 11

*Lin v. Kia Motors Am., Inc.*,
    No. 11-1662, 2012 WL 12887102 (Aug. 27, 2012) ................................... 14

*MAO-MSO Recovery II LLC v. Mercury Gen.*,
    Nos. 17-02525, 17-02557, 2019 WL 1976454 (C.D. Cal. Mar. 28,
    2019) ......................................................................................................... 14

*Newcal Indus., Inc. v. Ikon Office Sol.*,
    513 F.3d 1038 (9th Cir. 2008) .................................................................... 5

*Nugget Hydroelectric, L.P. v. Pac. Gas & Elec. Co.*,
    981 F.2d 429 (9th Cir. 1992) (Opp'n ) ..................................................... 11

*Physician Healthsource Inc. v. Masimo Corp.*,
    No. 14-00001, 2019 WL 1966663 (C.D. Cal. Feb. 27, 2019) ..................... 6

*Quest Software, Inc. v. DirecTV Operations, LLC*,
    No. 09-1232, 2011 WL 13225042 (C.D. Cal. 2011) ................................. 14

*In re Suboxone Antitrust Litig.*,
    325 F.R.D. 551 (E.D. Pa. 2016) .................................................................. 8

*Todd v. Exxon Corp.*,
    275 F.3d 191 (2d Cir. 2001) .................................................................. 5, 8

*In re Toyota Motor Corp. Hybrid Marketing Sales, Practices &
    Prods. Liab. Litig.*,
    2011 WL 13130898 (C.D. Cal. Dec. 2, 2011) .................................... 11, 14

*UMG Recordings, Inc. v. Global Eagle Entmt., Inc.*,
    No. 14-3466, 2015 WL 12752881 (C.D. Cal. Aug. 27, 2015) ................... 11

*Vident v. Dentsply International, Inc.*,
    No. 06-1141, 2008 WL 4384124 (C.D. Cal. Aug. 29, 2008) ..................... 11

**STATUTES**

17 U.S.C. § 114(d)(1) ................................................................................. 7

28 U.S.C. 636(b)(1)(A) ........................................................................... 12

28 U.S.C.
    § 636(b)(1)(A) .............................................................................. 12, 13
    § 636 subparts (A) and (B) ............................................................. 11

## RULES

Fed. R. Civ. P. 72(a) ...................................................................... *passim*

Fed. R. Evid. 402 ............................................................................ 4, 10

L.R. 7-3 .................................................................................. 13, 14, 15

L.R. 37-1-37-4 .................................................................................. 14

Rule 26(b)(1) ..................................................................................... 8

## I.      INTRODUCTION

Global Music Rights, LLC's 25-page Opposition[1] to Radio Music License Committee's 15-page Objection[2] suggests that GMR does not understand Federal Rule of Civil Procedure 72(a), nor the procedures or law that apply to it.  RMLC has not asked this Court to issue an "advisory opinion" about anything.  RMLC also has not "ignor[ed]" Judge Sagar's instructions regarding future discovery dispute procedures, nor has RMLC asked this Court to order GMR to produce any discovery beyond that which GMR told Judge Sagar that it had offered to produce.

Rather, pursuant to Rule 72(a), RMLC timely filed ***objections*** to specific and narrow portions of Judge Sagar's non-prejudicial denial of RMLC's motion to compel certain discovery from GMR, because those specific portions of the order are contrary to law and clearly erroneous.[3]  This Court "***must***" "modify or set aside any part of a [Magistrate Judge's] order that is clearly erroneous or is contrary to law," and the only procedural vehicle for RMLC to bring these errors to the Court's attention was to file timely objections within 14 days of the Order.  Fed. R. Civ. P. 72(a) ("a party may not assign as error a defect in the order not timely objected to").  The Court does not need to look any further than GMR's own Opposition to know exactly what GMR would have argued about these particular aspects of the Order if RMLC had not timely objected to them.  *See* Opp'n at 24-25 (arguing that RMLC

---

[1]      Global Music Rights, LLC Opposition to Radio Music License Committee, Inc.'s Motion for Review of Magistrate Judge's Order Denying Radio Music License Committee, Inc.'s Motion to Compel ("Opp'n"), identical versions filed at ECF No. 197 in Case No. 19-cv-03957 ("RMLC's case"); ECF No. 135 in Case No. 16-cv-09051 ("GMR's case").

[2]      Radio Music License Committee, Inc.'s Objections to and Notice of Motion for Review of Magistrate Judge's Memorandum Opinion and Order Denying Radio Music License Committee's Motion to Compel Without Prejudice, identical versions filed at ECF No. 196 in RMLC's case; ECF No. 131 in GMR's case.

[3]      ECF No. 194 in RMLC's case, ECF No. 126 in GMR's case (each identical order referred to as the "Order").

1   has "waived" objections to portions of the order to which it has not specifically
2   objected).

3        For all its bluster, nowhere in GMR's lengthy brief does it even try to defend
4   the specific, limited portions of the Order to which RMLC actually objects.  First,
5   GMR does not dispute that as a *legal* matter, the relevant markets that GMR and
6   RMLC have alleged in their respective complaints are different.  Second, GMR does
7   not identify any evidence supporting Judge Sagar's statement that RMLC has
8   "consistently asserted" that the relevant market for *GMR's* monopsony/buyer-cartel
9   claims is limited to terrestrial radio.  Order at 10.  Third, GMR confirms that it is
10  indeed trying to have its cake and eat it too by continuing to argue that radio licensing
11  fees are depressed relative to non-radio licensing fees, despite convincing Judge
12  Sagar to adopt its argument that non-radio licensing fees are *legally* irrelevant to its
13  case.  GMR's remaining arguments are an unnecessary sideshow that this Court can
14  ignore.

15       The Court should sustain RMLC's narrow objections to the Magistrate's
16  Order.

17  **II.   GMR DOES NOT DEFEND THE LIMITED PORTIONS OF THE**
18  **      ORDER TO WHICH RMLC OBJECTS**

19       GMR spills much ink bemoaning the volume of documents that it claims
20  RMLC requested related to non-radio buyers of public performance rights licenses,
21  and the burden that it would allegedly face should it be required to produce all of
22  that information.  Opp'n at 3-4, 12-15.  Those hyperbolic claims are both irrelevant
23  to the narrow objections at issue, and wrong.[4]  GMR neglects to mention that (i) it

24  ────────────────────────────

25  [4]     As RMLC made clear in its motion to compel, and in its supplemental brief,
26  the category of non-radio materials that RMLC sought was directly tailored to
    GMR's own complaint allegations, and the *$450 million* in damages that it seeks.
    Joint Stip. at 17-18, ECF No. 178-1; RMLC Suppl. Mem. to Joint Stip. at 2-3, 5,
27  ECF No. 192 ("RMLC Suppl. Mem.").  RMLC did not ask Judge Sagar to compel
28  GMR to produce "every piece of paper in its possession," nor did RMLC reject "out

is seeking **$450 million** in damages ($150 million trebled) supposedly from, among other things, "[l]ost licensing revenue from **potential licensees in non-radio industries**,"[5] (ii) it made express allegations in its own complaint about the prices of its licenses with non-radio entities,[6] (iii) it relied on those specific allegations about its non-radio licenses to ask this Court to deny RMLC's motion for judgment as a matter of law,[7] and (iv) it expressly sought discovery about non-radio licenses from RMLC and from third parties.[8]  Despite all of this, GMR not only argued that discovery about the licenses it has sold (or tried to sell) to non-radio entities is

---

of hand" any "compromise proposals."  Opp'n at 3-4.  The only compromise proposal that GMR ever offered about non-radio issues was to cherry-pick *15* of its 2,300 license agreements and produce them *with price terms redacted.*  Joint Stip. at 45-46, ECF No. 178-1 ("Joint Stip.").  RMLC explained in great detail the reasons that GMR's own allegations make the price term the single most important part of the license and that therefore redacted licenses would be practically useless.  *Id.* Despite making that offer, GMR apparently is now refusing to produce any license agreements at all, in any form, because RMLC had the temerity to ask Judge Sagar to require it to disclose the most important terms of the licenses—the prices.  Opp'n at 22-24; *see also* concurrently filed Declaration of Anna M. Rathbun ("Rathbun Declaration") ¶ 6.

[5]    Rathbun Decl. Ex. 1, GMR's Combined Rule 26(a)(1) Initial Disclosures at 9 (emphasis added).

[6]    *See* FAC ¶ 6 ("In fact, in industries where competitors do not conspire to suppress prices, such as digital music streaming services, companies actively sought out and negotiated public performance licenses from GMR"); *see also id.* ¶ 34 ("Other media distributors, such as streaming music services, who do not benefit from the negotiating leverage of a cartel, pay substantially more of their revenue share to perform the same works."); *id.* ¶ 8.

[7]    Joint Stip. at 38-39.

[8]    *Id.* at 41-42.  GMR continues to seek information from third parties about non-terrestrial radio music use while refusing to produce anything itself.  It did so most recently on February 4, 2020, *the day after it filed its Opposition*, GMR wrote to various radio broadcasters that it had subpoenaed that it was prepared to move to compel the broadcasters to produce information about digital and internet platforms.  Rathbun Decl. ¶ 8.

1    *irrelevant* to its case, it convinced Judge Sagar to adopt its position and did not file

2    any objections to those relevancy determinations.[9]

3         GMR's categorical refusal to produce discovery about the non-radio licenses

4    that its sells (or has attempted to sell) will have legal consequences in this case down

5    the road, because a party cannot refuse to produce information on the basis that it is

6    irrelevant to its claims and then later try to use that information to support those

7    claims.[10]  And GMR is the party with the affirmative burden to prove every element

8    of its case—with evidence.  But that is an issue for this Court to decide another day.

9    In these Objections, RMLC is not asking this Court to order GMR to produce any

10   discovery beyond that which GMR told Judge Sagar it had offered to produce, nor

11   to order any different discovery dispute resolution procedure.  RMLC has committed

12   to review GMR's promised forthcoming productions to determine whether there are

13   "material gaps" on the subject of non-radio licenses and, if so, to follow the

14   procedure that Judge Sagar ordered.[11]  Order at 12.  RMLC's Objections are directed

15   to an entirely different issue, namely the specific, limited portions of the Order that

16   are clearly erroneous and contrary to law that this Court "must" set aside.  Fed. R.

17

18

---

19   [9]     Order at 8-9.

20   [10]    *E.g., Cox v. Cont'l Cas. Co.*, 703 F. App'x 491, 495 (9th Cir. 2017) (district
     court did not abuse its discretion by judicially estopping defendant from making
21   arguments and relying on documents it refused to produce in discovery on the
     ground that the documents were irrelevant); Fed. R. Evid. 402 ("Irrelevant evidence
22   is not admissible" at trial).

23   [11]    To date, GMR has not produced *any* documents evidencing the prices or terms
     of its license agreements with non-radio entities, or even identifying any of these
24   licensees.  Rathbun Decl. ¶ 4.  And GMR apparently has no intention of producing
     even the *15* license agreements that it had previously offered to produce.  GMR
25   Opp'n at 22-24; Rathbun Decl. ¶ 6.  If that indeed remains GMR's position, then
     RMLC will follow the dispute procedure that Judge Sagar outlined (Order at 10, 12),
26   and/or will later move this Court to preclude GMR from offering any evidence or
27   argument on this subject in support of its claims.  *Supra* n.11.

28

Civ. P. 72(a).  As to these specific and narrow objections, GMR does not dispute RMLC's arguments.

### A. GMR Admits That The Market It Has Alleged In Its Affirmative Case is Legally Distinct from the Market That RMLC Alleged In Its Case

GMR admits that cases like *Todd v. Exxon Corp.*, 275 F.3d 191, 201-202 (2d Cir. 2001) clearly establish that the market that RMLC alleges in its own first-filed monopoly/seller cartel complaint is legally and analytically distinct from the market that GMR has alleged in the separate monopsony/buyer cartel complaint that it filed in retaliation after RMLC sued it.  GMR Opp. at 12-13.  And GMR does not dispute that, if Judge Sagar did in fact reach a *legal* conclusion that the same relevant product market applies to both RMLC's affirmative claims and GMR's retaliatory claims, that conclusion would be contrary to law.[12]  Although GMR does not believe that Judge Sagar actually reached that legal conclusion, the Order plainly and repeatedly refers to only one product market ("*the*" market) applicable to both cases.[13]  That conclusion is directly contrary to the legal principles that govern the definition of a "relevant market" in GMR's case.  *Todd*, 275 F.3d at 201-202; *Newcal Indus., Inc. v. Ikon Office Sol.*, 513 F.3d 1038, 1045 (9th Cir. 2008) (stating that there are "legal principles that govern the definition of an antitrust relevant market.").  Because even GMR acknowledges that a legal conclusion that both cases have the same relevant market is contrary to law, this Court must set aside that conclusion and not adopt it. *Franco-Gonzales v. Holder*, No. 10-02211, 2010 WL 11643590, at *3 (C.D. Cal. Oct. 18, 2010) (setting aside Magistrate Judge's order as contrary to law because it "failed to address" controlling authority); *China Nat. Metal Prod. Imp./Exp. Co. v. Apex Dig., Inc.*, 155 F. Supp. 2d 1174, 1182 (C.D. Cal. 2001) (setting aside

---

[12]    RMLC Mem. in Supp. of Objs. at 5-6, ECF No. 196-1 in RMLC case, ECF No. 131-1 in GMR's case ("RMLC Mem.").

[13]    Order at 10 ("RMLC has consistently asserted that terrestrial radio stations are *the* relevant market.") (emphasis added); *id.* at 9 ("Here, both parties' complaints identify terrestrial radio licenses as *the* applicable market.") (emphasis added).

Magistrate Judge's order as contrary to law because it misinterpreted binding authority); *Physician Healthsource Inc. v. Masimo Corp.*, No. 14-00001, 2019 WL 1966663, at *3 (C.D. Cal. Feb. 27, 2019) (setting aside Magistrate Judge's order as contrary to law because it incorrectly interpreted the scope of the relevant protective order).

**B.**   **GMR Does Not Identify Any Evidence Supporting Judge Sagar's Statement That RMLC Has "Consistently Asserted" That The Relevant Market For GMR's Claims Is Limited To Terrestrial Radio**

Judge Sagar's legal error about the relevant market that applies to GMR's buyer-cartel claims caused her to make a second specific error to which RMLC also objects: she erroneously concluded that "RMLC has consistently asserted that terrestrial radio stations are *the* relevant market" applicable to GMR's claims. The Court must set aside that finding because it flows from her predicate legal mistake about market definition and because it is not supported by any evidence. RMLC Mem. at 5-9 & n.11; Order at 10. Even GMR cannot muster any serious defense of this clearly erroneous statement. It points to no evidence that was before Judge Sagar that RMLC *ever once* took the position—expressly or implicitly—that GMR's sales of licenses to radio stations are not reasonably interchangeable with GMR's sales to other buyers. There was none.

GMR attempts a sleight of hand by arguing that the statements RMLC's Mr. Christian and Mr. Velez made support *one* allegation in GMR's complaint, *i.e.,* that radio stations provide "unique promotional support" to copyright holders relative to other transmission platforms. Opp'n at 18. But that allegation has nothing to do with the specific Objection before this Court. The issue before this Court is whether there was any *evidence* before Judge Sagar that would allow her to conclude that RMLC has "consistently asserted" that *from GMR's perspective*, GMR's sales of licenses to radio stations are not reasonably interchangeable with GMR's sales of licenses to other music users. Order at 10. Judge Sagar could not have properly

concluded that RMLC has "consistently asserted" anything about the correctness of GMR's alleged market without evidence that meets the governing legal standard for market definition in monopsony/buyer-cartel cases. But there was no such evidence in the record; GMR points to none. Thus, Judge Sagar's conclusion about what RMLC supposedly "consistently asserted," which flows from her mistake of law, is clearly erroneous.

Mr. Christian and Mr. Velez's statements—made six and nine years ago, respectively, and before GMR even had any rights to license to anyone—are clear and unambiguous.[14] GMR does not dispute (because it cannot dispute) that both addressed *sound recording* rights, not the *musical works* performance rights at issue in this litigation, and that *Congress* treats sound recording rights differently from musical works performance rights.[15] The plain words in both statements are likewise clear that, regardless of what radio stakeholders may have contended 6-9 years ago, copyright holders have continuously urged Congress to treat terrestrial radio *the same* as other transmission platforms. To the extent that Mr. Christian and Mr. Velez's old statements about a totally different intellectual property right have any relevance to GMR's market definition at all, they are evidence that, from the perspective of sellers like GMR, terrestrial radio *is* reasonably interchangeable with other music users. And, of course, we already know from the cherry-picked facts that GMR has provided that GMR's own documents almost certainly would confirm

---

[14]   Joint Stip. McIntyre Decl. Exs. M, N, ECF No. 181 in RMLC's case, ECF No. 112-3 in GMR's case. Contrary to GMR's claim (Opp'n at 18), RMLC did argue to Judge Sagar that neither of these statements (among other arguments) had anything to do with the market that GMR has alleged (although it was constrained to do so within the 5-pages its was allowed to respond to GMR's 40+ pages of argument). RMLC Suppl. Mem. at 3. In any event, the statements are plain on their face that they have nothing to do with the legal test for the relevant market in GMR's complaint, which focuses on the *perspective of sellers*, not buyers.

[15]   It is unclear why GMR dubs this a "novel" argument (Opp'n at 19) when it is embodied in the statute. *See* 17 U.S.C. § 114(d)(1).

1   that fact—and that is why GMR does not want to produce them.  RMLC Mem. at

2   12.[16]

3          The bottom line for purposes of the narrow Objection before this Court is that

4   the parties agree that the legal contours of GMR's market are defined by the

5   reasonable substitutability of buyers *from the perspective of sellers*, *e.g.,* the buyers

6   to whom a PRO could reasonably sell its performance rights license other than

7   terrestrial radio.  *Todd*, 275 F.3d at 201-02.  Judge Sagar did not have ***any*** evidence

8   before her that RMLC has ever once "asserted that terrestrial radio stations are the

9   relevant market" for purposes of GMR's claims against RMLC, much less that

10  RMLC has done so "consistently."  Order at 10.  That means her conclusion (which

11  flows from her legal error about market definition) is clearly erroneous and the Court

12  must set it aside.  *Brown v. Am. Airlines, Inc.*,  No. 10-8431, 2011 WL 13217553, at

13  *2 (C.D. Cal. July 13, 2011) (setting aside magistrate judge's order denying motion

14  to compel because the Magistrate incorrectly assumed facts in the record); *In re

15  Suboxone Antitrust Litig*., 325 F.R.D. 551, 556 (E.D. Pa. 2016) (setting aside

16  magistrate judge's order denying motion to compel because the magistrate's

17  misapplication of antitrust law resulted in the erroneous application of Rule

18  26(b)(1)'s proportionality requirement).

19

20

21

22

23

-----

24  [16]     RMLC is glad that GMR attached RMLC's interrogatory responses to its

25  Opposition so the Court can see for itself that it is demonstrably false that that RMLC
    "refused to respond" to these interrogatories.  The problem is that GMR feigns

26  ignorance of the difference between the concept of share of performance right
    "licenses" to which its interrogatories are directed and for which RMLC has no

27  information, and the concept of "spin share" (*i.e.,* share of musical works played)
    for which RMLC does possess some information.  RMLC has explained this to GMR

28  repeatedly.  Rathbun Decl. Ex. 3 at 3.

**C.   GMR Has Confirmed That It Wants To Continue To Argue That Radio License Fees Are Depressed Relative To Non-Radio License Fees, Despite Its Earlier Position That Non-Radio License Fees Are Legally Irrelevant**

GMR's Opposition paints a clear picture of its gamesmanship.  GMR is indeed asking this Court to affirm Judge Sagar's conclusion that non-radio discovery is legally irrelevant to its anticompetitive effects theory, while trying to maintain its ability to argue that radio license fees are suppressed relative to non-radio fees.  Opp'n at 20-21 ("the radio industry's comparatively low license fees are just one of *many* anticompetitive effects identified in GMR's complaint.").    GMR conspicuously does *not* deny that it will seek to use evidence regarding its non-radio license fees to attempt to prove its allegations that radio license fees are depressed.[17]  Instead, GMR pretends this issue is merely one about the appropriate scope of discovery on the issue of anticompetitive effects.  *Id.*  It is not.  GMR argued, and Judge Sagar accepted, that the rates GMR receives from non-radio entities are ***legally irrelevant*** to any anticompetitive effects theory ***because*** "the price effect of monopoly power is generally determined by comparing actual prices to what the prices would be but for the anticompetitive conduct alleged."  Order at 10.   If discovery into the prices that non-radio entities pay is legally irrelevant to this theory, as GMR argued, GMR cannot itself rely on evidence of non-radio prices to support its theory.  *Supra* n.11.

The reverse is also true:  if GMR is permitted to proffer its non-radio license prices in support of its theory, then Judge Sagar was wrong to conclude that

---

[17]    GMR cites *Bower v. Wright Medical Technology, Inc.* for the proposition that "relevance cannot be established solely on plaintiffs' speculation that defendants may introduce certain evidence at trial," No. 17-03178, 2018 WL 6330410, at *5 (C.D. Cal. Dec. 3, 2018), but that case is inapposite.  In *Bower*, the defendants "repeatedly den[ied] an intention" to introduce that evidence, *id.*, which GMR has never done.  Moreover, RMLC's discovery requests are not based on speculation—they are based on the *allegations in GMR's own complaint*.

discovery about those prices is legally irrelevant and this Court must reject that conclusion.[18]   Fed. R. Evid. 402.   GMR does not dispute any of this in its opposition—it merely argues that such discovery should be limited to avoid burdening GMR.  Opp'n at 20-21.  But the supposed burden on GMR has nothing to do with the narrow ***relevance*** question at issue here based on what GMR elected to argue to Judge Sagar.  Relevance and burden are two very different things.  During the motion to compel briefing, GMR chose to argue that this discovery was ***legally irrelevant*** to its anticompetitive effects theory because such evidence legally cannot be used to prove that theory.  Joint Stip. at 57-58.  Judge Sagar accepted GMR's argument, Order at 10, and GMR has not objected to her conclusion that the discovery is not relevant to its case.  If Judge Sagar's relevance decision stands, GMR must face the consequences of its choice and must be precluded from advancing its anticompetitive effects theory using non-radio license prices.  *Supra* n.11.

## III.   GMR'S REMAINING ARGUMENTS ARE WITHOUT MERIT

The above points fully address the reasons that the Court should sustain each of RMLC's narrow objections to the Order.  Although the rest of GMR's Opposition brief is irrelevant and unhelpful to resolving any of the narrow objections set forth above, RMLC briefly responds to a few points solely to point out the ways in which GMR is flat wrong:

### A.   RMLC Did Not Misstate The Legal Standard That Applies To Its Objections

---

[18]   To be clear again, by asking this Court not to adopt a legally erroneous basis for concluding that the discovery at issue is irrelevant, RMLC is not asking this Court to order GMR to produce anything beyond that which it offered to produce.  RMLC is merely asking the Court to follow Rule 72(a) and not adopt a narrow aspect of this order that is clearly erroneous and contrary to law so that GMR cannot argue that RMLC has "waived" an objection to this conclusion.

1    GMR bizarrely argues that RMLC has misstated the standard of review that
2    applies to the narrow issues raised in RMLC's Objections.  Opp'n at 10.  But RMLC
3    quoted the legal standard verbatim from *Vident v. Dentsply International, Inc.*, No.
4    06-1141, 2008 WL 4384124, at *2 (C.D. Cal. Aug. 29, 2008), a case on which Judge
5    Sagar and GMR itself relied.  Order at 8; Joint Stip. at 52.  It is the same standard
6    that countless courts in this district have applied.  *See*, cases cited *supra* 5-8.

7    There can be no dispute, as even GMR's cases confirm,[19] that a magistrate's
8    **legal** conclusions in connection with a non-dispositive order are reviewed *de novo*.
9    The Ninth Circuit has not held to the contrary.[20]  In any event, regardless of the
10   technical standard, what matters here is that GMR agrees that a legal conclusion is
11   "contrary to law" when it "'fails to apply or misapplies the relevant statutes, case
12   law, or rules of procedure.'"[21]  GMR does not dispute that, if Judge Sagar did
13   conclude that there is only one relevant market that applies to the two very different
14   complaints in this litigation, that conclusion would be reversible under any standard.

15   As to the Order's factual conclusions, the law also is clear that they must be
16   set aside as "clearly erroneous" when the district court is "left with the definite and
17   firm conviction that a mistake has been made."  RMLC Mem. at 4 (quoting *In re*

---

18   [19]    *See, e.g.,* Opp'n at 19 n. 24, 22 (citing *Fox Broad Co. v. DISH Network LLC*,
19   No. 12-04529, 2015 WL 12765545, at *3 (C.D. Cal. Jan. 12, 2015); Opp'n at 11
20   (citing *EEOC v. Peters' Bakery,* 301 F.R.D. 482 (N.D. Cal. 2014); Opp'n at 10
21   (citing *UMG Recordings, Inc. v. Global Eagle Entmt., Inc.*, No. 14-3466, 2015 WL
     12752881, at *4 (C.D. Cal. Aug. 27, 2015).

22   [20]    GMR cites *Grimes v. City & Cty. of S.F.*, 951 F.2d 236, 241 (9th Cir. 1991)
23   (Opp'n at 10), but there the Court of Appeals was merely distinguishing between
     subparts (A) and (B) of 28 U.S.C. § 636.  It did not hold that a district is precluded
24   from conducting an independent analysis to determine whether a legal conclusion is
25   "contrary to law."  GMR also cites *Nugget Hydroelectric, L.P. v. Pac. Gas & Elec.
     Co.*, 981 F.2d 429, 438-439 (9th Cir. 1992) (Opp'n at 10), but that case does not
26   address how district courts should determine whether a conclusion is "contrary to
     law" at all.

27   [21]    Opp'n at 10 (quoting *In re Toyota Motor Corp. Hybrid Marketing Sales,*
28   *Practices & Prods. Liab. Litig.,* 2011 WL 13130898, at *2 (C.D. Cal. Dec. 2, 2011)).

*BofI Holding Inc. Sec. Litig.,* 318 F.R.D. 129, 132 (S.D. Cal. 2016)); 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a).  Contrary to GMR's suggestion, RMLC never argued that a magistrate's factual conclusions are subject to *de novo* review.  RMLC Mem. at 13.

Rather, RMLC quoted the "clearly erroneous" standard of review verbatim from *Vident*, and the many other courts that have held similarly.  And here again GMR agrees that this Court must set aside any determination "'where the record contains no evidence on which [the magistrate] could have based the decision.'"[22] That is precisely the case with Judge Sagar's clearly erroneous conclusion that "RMLC has consistently asserted that terrestrial radio stations are the relevant market" for GMR's claims (Order at 10).  The record contains absolutely *no* evidence on which Judge Sagar could have based that decision.  Even GMR cannot point to any.

GMR spends a great deal of time ruminating about the "abuse of discretion" standard that some (but not all[23]) courts have applied to a magistrate's determination

---

[22]   Opp'n at 11 (quoting *EEOC v. Peters' Bakery,* 301 F.R.D. 482 (N.D. Cal. 2014)).

[23]   The "abuse of discretion" standard for a magistrate judge's determination of relevancy in discovery (first applied in *Geophysical Systems Corp. v. Raytheon Co.,* 117 F.R.D. 646 (C.D. Cal. 1987)) has never been adopted by the Ninth Circuit, nor has it been uniformly adopted by other district courts.  *Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp. Inc.*, No. 14-03053, 2016 WL 6821116, at *2 (C.D. Cal. June 17, 2016) (finding that *Geophysical System's* standard is "in conflict with the clear language of Rule 72(a) and 28 U.S.C. 636(b)(1)(A)"); *Burt v. AVCO Corp.*, No. 15-3355, 2015 WL 12912366 at *2 (C.D. Cal. Nov. 17, 2015) (same); *Al-Kidd v. Gonzales*, No. 05-093, 2009 WL 10705950 at *2 n.1 (D. Idaho Sept. 12, 2009) (disagreeing with *Geophysical System*'s application of the abuse of discretion standard).  In contrast, the "clearly erroneous or contrary to law" standard is enshrined in both the Federal Rules of Procedure and the U.S. Code, which are indisputably binding on this Court.  Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A). In any event, it is not even clear if there are any meaningful distinctions between the two standards.  GMR's own authorities use the "clearly erroneous" and "abuse of discretion" standards interchangeably.  Opp'n at 19 n. 24 (citing *Fox Broad Co. v.*

1  of "relevance" for discovery disputes.  Opp'n at 17.  But this too is much ado about

2  nothing for purposes of the Objections at issue here.  First, GMR's own authorities

3  state that the "abuse of discretion" standard (if it is valid at all) "does not apply to

4  the portions of a magistrate's discovery order not concerned with relevance," such

5  as legal conclusions. *EEOC v. Peters' Bakery,* 301 F.R.D. 482, 485 (N.D. Cal. 2014)

6  (cited Opp'n at 11).  Second, even if "abuse of discretion" were a valid standard on

7  the issue of "relevance" for purposes of Rule 72(a) and 28 U.S.C. § 636(b)(1)(A),

8  the objections at issue here would easily meet it, because those cases hold that such

9  an abuse of discretion occurs when the decision "is based on an erroneous conclusion

10  of law or where the record contains no evidence on which [the magistrate] rationally

11  could have based that decision."  *Id.* (internal quotations and citation omitted); *see*

12  *also Brown*, 2011 WL 13217553, at *2 (same).  As set forth above and in RMLC's

13  opening brief, each of the narrow objections that RMLC has raised is based on an

14  erroneous conclusion of law and/or is not supported by any record evidence.  When

15  a magistrate finds that discovery is not relevant because of an error of law, that ruling

16  cannot stand under any standard of review.

17
18  **B.    RMLC Was Not Required To Engage In Another Futile Meet And Confer Before Filing Its Objections**

19  GMR is wrong that RMLC's objections violated Local Rule 7-3.  Rule 7-3

20  expressly does not apply "in connection with discovery motions."  Judge Sagar's

21  Order resolved a discovery motion that RMLC brought only after extensive and

22
23  *DISH Network LLC*, No. 12-04529, 2015 WL 12765545, at *3 (C.D. Cal. Jan. 12,
24  2015) ("Judge Hillman did not abuse his discretion in determining that the
   documents requested were not sufficiently probative to justify the burden of
25  producing them. . . . The fact that DISH disagrees with Judge Hillman's assessment
   of the probative value of the evidence weighed against the burden of producing it
26  does not make his decision 'clearly erroneous.'"); *see also Bernstein v. Virgin*
27  *America, Inc.*, No. 15-02277, 2017 WL 7156342, at*1 (N.D. Cal. June 28, 2017)
   (finding that the magistrate did not "clearly err[] in denying the requested discovery
28  or abused her discretion").

exhaustive meet and confer efforts.[24]   RMLC's objections to that Order under Rule 72(a) clearly arise "in connection with discovery motions."   Multiple courts in this district have so held.   *See, e.g., MAO-MSO Recovery II LLC v. Mercury Gen.*, Nos. 17-02525, 17-02557, 2019 WL 1976454, at *2 (C.D. Cal. Mar. 28, 2019) (finding no violation of Local Rule 7-3 because Rule 72(a) objections to a magistrate's discovery order are "arguably a motion in connection with a discovery motion"); *Curry v. Baca*, No.  04-9992, 2007 WL 9706924 at *1 (C.D. Cal. Nov. 29, 2007) (same); *Quest Software, Inc. v. DirecTV Operations, LLC*, No. 09-1232, 2011 WL 13225042, at *1 (C.D. Cal. 2011) (Local Rule 7-3 does not require meet and confer before pursuing objections to magistrate's discovery order under Rule 72(a)).[25]

The logical reason that Local Rule 7-3 does not require yet *another* meet and confer before serving objections to a discovery order is because the local rules of this Court require extensive meet and confer procedures before parties can bring discovery disputes to a magistrate in the first place.   *See* Local Rules 37-1-37-4; *Lin v. Kia Motors Am., Inc.*, No. 11-1662, 2012 WL 12887102, at *2 (Aug. 27, 2012) (finding that Local Rule 7-3 did not require additional meet and confer for Rule 72(a) objections because parties had already engaged in "significant meetings and conferences" about the disputes).   Indeed, the declarations that RMLC and GMR submitted with the Joint Stipulation exhaustively detail the *months* of telephonic meet and confers and written correspondence that the parties engaged in before commencing motion practice on these issues.[26]   GMR itself points to the "nearly 100 pages of briefing, hundreds of pages of declarations and exhibits, and dozens of legal

---

[24]   *See* Lovejoy Decl. and McIntyre Decl. in Supp. of Nov. 26, 2019 Joint. Stip, ECF Nos. 179 and 181 in RMLC's case and ECF Nos. 107 and 108 in GMR's case ("Lovejoy Decl. and McIntyre Decl.").

[25]   The sole case that GMR cites that arguably interprets Local Rule 7-3 differently, *In re Toyota,* 2011 WL 13130898, at *2 (Opp'n at 1, 6) did not refuse to consider the objections; it addressed and decided the objections on the merits despite noting the failure to meet and confer.

[26]   *See* Lovejoy Decl. and McIntyre Decl.

authorities" that painstakingly detail the parties' competing positions.  Opp'n at 1.  RMLC has tried, tried, and tried again to resolve these disputes, but GMR has never once budged (and is now backtracking from offers it previously made, *supra* n.4).

Perhaps most importantly, GMR does not explain how ***any*** specific objection that RMLC has made could have been mooted or avoided by yet another meet and confer.  GMR's 25-pages of opposition are the best evidence of precisely the reasons that yet another meet and confer would have simply wasted everyone's time.  And that is why the local rules do not require it.[27]  There is no basis for this Court to deny RMLC's objections out of hand without considering them on the merits, when RMLC not only followed the terms of Local Rule 7-3 as these multiple court decisions confirm, but also met and conferred with GMR extensively on the underlying disputes.

## C.   GMR's Assertion That RMLC Is Seeking An Advisory Opinion Is Nonsense

One of the most inexplicable "frolic and detours" in its 25-page brief is GMR's assertion that this Court can overrule RMLC's timely filed Objection because RMLC is seeking a so-called "advisory opinion" over a "*hypothetical* dispute*."  Opp'n at 7-8 (emphasis in original).  The Court need not take this argument seriously.  RMLC is not objecting to anything hypothetical.  Judge Sagar issued an order adjudicating discovery disputes, and in so doing made certain specific errors of law and clearly erroneous findings.  There is, frankly, no dispute that these errors occurred.  Rule 72(a) provides the vehicle to challenge such errors so that GMR can never later claim that RMLC has "waived" any objection to them:  "[T]he district judge in the case must consider timely objections and modify or set aside any part

---

[27]     In any event, RMLC was required by law to serve its objections within 14 days of the Order or it waived them, regardless whether GMR agreed or not.  Fed. R. Civ. P. 72(a).  But it bears noting that nowhere in its 25-page brief does GMR argue that any of RMLC's objections are moot, nor does GMR tell the Court it should sustain any of the objections.

1  of the order that is clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a). The

2  cases that GMR cites about "advisory opinions" do not involve objections to a

3  Magistrate Judge's decision arising under Rule 72(a), and thus are irrelevant. *See*

4  Opp'n at 7-8. The Court should reject out of hand GMR's radical—and wrong—

5  proposition that raising specific objections to narrow legal and factual conclusions

6  in a magistrate's order somehow fails to satisfy the case or controversy requirement

7  of Article III, which would render Rule 72(a) a nullity.

8  **IV.   CONCLUSION**

9         For the reasons set forth above and in RMLC's opening brief, RMLC

10  respectfully requests that this Court (1) reject Judge Sagar's legally and factually

11  erroneous conclusion that there is only one product market relevant to both cases

12  (Order at 9, 10), (2) reject Judge Sagar's interim, non-prejudicial rulings regarding

13  the relevancy of non-radio discovery to GMR's market definition (*id.* at 9-10) and

14  its anticompetitive effects theory (*id.* at 10), and (3) direct GMR to proceed apace to

15  produce its initial set of non-radio discovery so that RMLC can review those

16  materials to determine whether it legitimately needs additional information (*id.* at

17  10, 12).[28]

18

---

19  [28]    RMLC notes that GMR's repeated professions that it has produced "155,510

20  documents" is extremely misleading. Declaration of David Marroso in Supp. of

21  Opp'n ¶ 4, ECF No. 197-1 ("Marroso Decl."). RMLC's initial review of GMR's
    production reveals that approximately 130,000 of those documents are interim

22  licenses between GMR and radio stations, extensions or modifications of those
    licenses, invoices to radio stations for fees under those licenses, or communications

23  between GMR and radio stations regarding those licenses. Rathbun Decl. ¶ 4. But

24  GMR has taken the position that the existence of the interim licenses may not be
    used in any way in this litigation. *Id.* To date, GMR has not produced *any*

25  documents in the majority of the categories it is required to produce under the Order.

26  *Compare* Marroso Decl. ¶¶ 3-5 *with* Order at 4-5. And none of the three documents
    that it cites in its declaration (Marroso Decl. ¶ 4) say anything about the terms of the

27  licenses that GMR sells to non-radio entities. Nonetheless, abiding by Judge Sagar's

28  Order, RMLC continues to await GMR's complete production, which GMR says
    will not happen until at least February 28. *Id.* ¶ 5.

Dated:  February 10, 2020                              Respectfully submitted,

                                                      /s/ Jennifer L. Giordano
                                                      Jennifer L. Giordano (*pro hac vice*)
                                                      Margaret M. Zwisler (*pro hac vice*)
                                                      Anna M. Rathbun (Bar No. 273787)
                                                      William M. Friedman (*pro hac vice*)
                                                      David L. Johnson (*pro hac vice*)
                                                      LATHAM & WATKINS LLP
                                                      555 Eleventh Street, N.W., Suite 1000
                                                      Washington, D.C. 20004-1304
                                                      Telephone: (202) 637-2200
                                                      Facsimile: (202) 637-2201
                                                      Email: Margaret.Zwisler@lw.com
                                                      Email: Jennifer.Giordano@lw.com
                                                      Email: Anna.Rathbun@lw.com
                                                      Email: William.Friedman@lw.com
                                                      Email: David.Johnson@lw.com

                                                      Alfred C. Pfeiffer, Jr. (Bar No. 120965)
                                                      Andrew M. Gass (Bar No. 259694)
                                                      Brittany N. Lovejoy (Bar No. 286813)
                                                      LATHAM & WATKINS LLP
                                                      505 Montgomery Street, Suite 2000
                                                      San Francisco, CA 94111-6538
                                                      Telephone: (415) 391-0600
                                                      Facsimile: (415) 395-8095
                                                      Email: Al.Pfeiffer@lw.com
                                                      Email: Andrew.Gass@lw.com
                                                      Email: Brittany.Lovejoy@lw.com

                                                      Manuel A. Abascal (Bar No. 171301)
                                                      LATHAM & WATKINS LLP
                                                      355 South Grand Avenue, Suite 100
                                                      Los Angeles, CA 90071-1560
                                                      Telephone: (213) 485-1234
                                                      Facsimile: (213) 891-8763
                                                      Email: Manny.Abascal@lw.com