1    LATHAM & WATKINS LLP
     Margaret M. Zwisler (*pro hac vice*)
2      *margaret.zwisler@lw.com*
     Jennifer L. Giordano (*pro hac vice*)
3      *jennifer.giordano@lw.com*
   555 Eleventh St. NW, Suite 1000
4    Washington, D.C. 20004-1304
   Telephone: +1.202.637.2200
5    Facsimile: +1.202.637.2201

6      Andrew M. Gass (Bar No. 212731)
     *andrew.gass@lw.com*
7    505 Montgomery Street, Suite 2000
   San Francisco, California 94111-6538
8    Telephone: +1.415.391.0600
   Facsimile: + 1.415.395.8095

9

   Attorneys for RADIO MUSIC LICENSE
10    COMMITTEE, INC.

11            UNITED STATES DISTRICT COURT

12            CENTRAL DISTRICT OF CALIFORNIA

13

| 14 RADIO MUSIC LICENSE | Case Nos. 2:19-cv-03957-TJH-AS |
| COMMITTEE, INC., | |
| 15 | 2:16-cv-09051-TJH-AS |
| Plaintiff, | |
| 16 | |
| v. | |
| 17 | **DECLARATION OF ANNA M.** |
| GLOBAL MUSIC RIGHTS, LLC, | **RATHBUN** |
| 18 | |
| Defendant. | Judge: Hon. Terry J. Hatter |
| 19 | |
| *and* | Magistrate Judge: Hon. Alka Sagar |
| 20 | |
| GLOBAL MUSIC RIGHTS, LLC, | |
| 21 | |
| Plaintiff, | |
| 22 | |
| v. | |
| 23 | |
| RADIO MUSIC LICENSE | |
| 24 COMMITTEE, INC. and DOES 1 | |
| through 3,000, | |
| 25 | |
| Defendants. | |

26

27

28

I, Anna M. Rathbun, declare as follows:

1.      I am an attorney with the law firm Latham & Watkins LLP, attorneys for Radio Music License Committee, Inc. ("RMLC"), in connection with *Radio Music License Committee Inc., v. Global Music Rights, LLC*, 2:19-cv-03957-TJH-AS (C.D. Cal.) and *Global Music Rights, LLC v. Radio Music License Committee, Inc.*, 2:16-cv-09051-TJH-AS (C.D. Cal.).  I am an attorney in good standing in California.  I have personal knowledge of the facts set forth below, and if called upon, can and will competently testify thereto.

2.      I am making this Declaration in support of RMLC's Objections to, and Motion for Review and Reconsideration of, Magistrate Judge's Order Denying Motion to Compel Without Prejudice.

3.      GMR served its Combined Rule 26(a)(1) Initial Disclosures ("Initial Disclosures") on June 20, 2019.  In its Initial Disclosures, GMR disclosed that it has estimated that it has suffered $150,000,000 in damages before trebling.  GMR also disclosed that its damages include, but are not limited to, "[l]ost licensing revenue from potential licensees in non-radio industries proximately caused by RMLC's collusive and monopsonistic conduct."  A true and correct copy of GMR's Initial Disclosures is attached hereto as **Exhibit 1**.

4.      GMR has produced 155,150 documents to RMLC as of February 10, 2020.  RMLC's initial review indicates that approximately 130,000 of these documents are interim licenses between GMR and radio stations, extensions or modifications of those interim licenses, invoices to radio stations for fees under those interim licenses, or communications between GMR and radio stations regarding those interim licenses.  GMR has taken the position that the existence of these interim licenses may not be used in any way in this litigation.  *See, e.g.*, GMR's Motion to Strike Specified Improper Allegations From First Amended Complaint, 2:16-cv-6076, ECF No. 56 (E.D. Pa. Mar. 3, 2017).  To date, GMR has not produced

1    any documents reflecting the terms or prices of its license agreements with non-radio

2    entities, nor has it identified any of those licensees.

3        5.    On January 22, 2020, the parties discussed the timing of their respective

4    document productions.   RMLC proposed that each party should produce non-

5    custodial documents listed in Judge Sagar's Orders by February 7, 2020.   GMR

6    declined this request in an email dated January 23, 2020 and explained that it could

7    not complete production of these materials until February 28, 2020.   A true and

8    correct copy of that email is attached hereto as **Exhibit 2.**

9        6.    On November 14, 2019, counsel for GMR offered to produce 15 non-

10   radio license agreements with the price terms redacted.   During a telephonic meet

11   and confer on February 3, 2020, counsel for GMR stated that it was withdrawing

12   this proposal.   GMR explained that this was because RMLC had filed a motion to

13   compel certain non-radio discovery and as GMR had only made the proposal to

14   avoid motion practice, it would not produce any non-radio licenses.

15       7.    Over the course of several teleconferences and letters, RMLC has

16   explained to GMR the difference between a PRO's share of performance rights

17   "licenses" and a PRO's "spin share".   RMLC recently explained the difference

18   between these two concepts again in its letter to GMR dated January 23, 2020 when

19   RMLC addressed, again, the reasons that RMLC does not possess information to

20   answer GMR's interrogatories directed to the concept of a PRO's share of

21   performance rights "licenses."   As RMLC explained, it is the PROs, like GMR, that

22   possess information about the licenses they sell to all music users.   RMLC is seeking

23   that information in discovery from GMR and other PROs, and GMR is refusing to

24   produce it.   A true and correct copy of that letter is attached hereto as **Exhibit 3**.

25       8.    GMR has subpoenaed numerous third party radio broadcasters seeking

26   broad information about those broadcasters' businesses.   In its most recent letter to

27   some of those broadcasters, dated February 4, 2020, GMR threatened to move to

28   compel the broadcasters to produce information about their non-terrestrial radio

1  performance rights, namely "all documents concerning any digital music service
2  (*e.g.*, internet-based radio platform) you own or operate, including but not limited to
3  (i) agreements with performing rights organizations and other persons who own or
4  license public performance rights for the rights to perform their work on any digital
5  music service, (ii) revenue per quarter derived from any digital music service, and
6  (iii) fees paid to any performing rights organization and other persons who own or
7  license public performance rights for the rights to perform their works on ***any digital***
8  ***music service***."

9       Dated:  February 10, 2020          LATHAM & WATKINS LLP

10                                         */s/ Anna M. Rathbun*

# EXHIBIT 1

Exhibit 1

5

1    DANIEL M. PETROCELLI (S.B. # 97802)
     dpetrocelli@omm.com
2    DAVID MARROSO (S.B. # 211655)
     dmarroso@omm.com
3    STEPHEN MCINTYRE (S.B. # 274481)
     smcintyre@omm.com
4    O'MELVENY & MYERS LLP
     1999 Avenue of the Stars, 8th Floor
5    Los Angeles, California  90067-6035
     Telephone:   (310) 553-6700
6    Facsimile:    (310) 246-6779

7    KATRINA M. ROBSON (S.B. # 229835)
     krobson@omm.com
8    O'MELVENY & MYERS LLP
     1625 Eye Street, NW
9    Washington, D.C. 20006-4001
     Telephone:   (202) 383-5300
10   Facsimile:    (202) 383-5414

11   *Attorneys for Global Music Rights, LLC*

12                **UNITED STATES DISTRICT COURT**

13               **CENTRAL DISTRICT OF CALIFORNIA**

14

15

16   GLOBAL MUSIC RIGHTS, LLC,          Case Nos. 2:16-cv-09051-TJH-AS

17              Plaintiff,                         2:19-cv- 03957-TJH-AS

18        v.                              **GLOBAL MUSIC RIGHTS,**
                                          **LLC'S COMBINED RULE**
19   RADIO MUSIC LICENSE                 **26(a)(1) INITIAL DISCLOSURES**
     COMMITTEE, INC. and DOES 1
     through 3,000,

20              Defendant.

21   *and*

22

23   RADIO MUSIC LICENSE
     COMMITTEE, INC.,

24

25              Plaintiff,

26        v.

27   GLOBAL MUSIC RIGHTS, LLC,

28              Defendant.

Pursuant to Federal Rule of Civil Procedure 26(a)(1), Global Music Rights, LLC ("GMRO"), Plaintiff in *Global Music Rights, LLC v. Radio Music License Committee, Inc.*, No. 2:16-cv-09051-TJH-AS and Defendant in *Radio Music License Committee, Inc. v. Global Music Rights, LLC*, No. 2:19-cv-03957-TJH-AS, by and through its counsel of record, hereby submits the following initial disclosures.

GMRO makes these disclosures based on its current knowledge, without the benefit of complete discovery in this action.  GMRO's investigation of relevant facts remains ongoing.  By providing these disclosures, GMRO does not represent that it has identified all potentially relevant documents, information, or individuals, and reserves the right to supplement, modify, or revise these initial disclosures and to rely upon additional documents, information, and individuals (including those identified by the Radio Music License Committee, Inc. ("RMLC")) that may become known to GMRO after further investigation or discovery.

GMRO makes these disclosures without waiving any attorney-client privilege, work product, common interest privilege, joint prosecution privilege, or any other applicable privilege or protection.  GMRO reserves all rights to object to the production and/or admissibility of documents and things from the categories identified herein, and to the obtaining testimony from the witnesses identified herein, on any permissible basis under the Federal Rules of Civil Procedure, the Federal Rules of Evidence, or any other applicable laws, rules, or regulations.

## A.   Individuals Likely to Have Discoverable Information.

Pursuant to Federal Rule of Civil Procedure 26(a)(1)(A)(i), GMRO identifies the following individuals as potentially having discoverable information GMRO may use to support its claims and/or defenses, not inclusive of information GMRO may use solely for purposes of impeachment.  Because discovery has only just commenced, GMRO has limited knowledge regarding the subjects to which certain

individuals identified herein may be competent to testify.  GMRO is informed and believes, however, that the individuals listed herein may have discoverable information concerning some or all of the topics described below.  Discovery from certain individuals may be limited due to privilege, work product, and/or other protections.  Individuals whose contact information is listed as O'Melveny & Myers are current or former employees of GMRO or its related affiliates or subsidiaries, and should only be contacted through GMRO's counsel of record. GMRO expressly reserves its right to supplement or amend these disclosures.

| Name | General Subject Matter |
|---|---|
| Irving Azoff, Chairman and Chief Executive Officer, Azoff Company, and Chairman, GMRO<br><br>O'Melveny & Myers LLP<br><br>1999 Avenue of the Stars, 8th Floor<br><br>Los Angeles, California 90067<br><br>(310) 553-6700 | Mr. Azoff has information relating to GMRO's origination, affiliates, licenses/licensees, and general business.<br><br>Mr. Azoff also has information concerning the RMLC, its members, licenses/licensors, and its anticompetitive conduct and effect. |
| Randy Grimmett, Esq., Chief Executive Officer, GMRO<br>O'Melveny & Myers LLP<br>1999 Avenue of the Stars, 8th Floor<br>Los Angeles, California 90067<br>(310) 553-6700 | Mr. Grimmett has information relating to GMRO's origination, affiliates, licenses/licensees, and general business.<br><br>Mr. Grimmett also has information concerning the RMLC, its members, licenses/licensors, and its anticompetitive conduct and effect. |

| Name | General Subject Matter |
|------|------------------------|
| Susan Genco, Esq., Co-President, Azoff Company<br><br>O'Melveny & Myers LLP<br>1999 Avenue of the Stars, 8th Floor<br>Los Angeles, California 90067<br>(310) 553-6700 | Ms. Genco has information relating to GMRO's affiliates, licenses/licensees, and general business.<br><br>Ms. Genco also has information concerning the RMLC, its members, licenses/licensors, and its anticompetitive conduct and effect. |
| Elizabeth Collins, Esq., Co-President, Azoff Company<br><br>O'Melveny & Myers LLP<br>1999 Avenue of the Stars, 8th Floor<br>Los Angeles, California 90067<br>(310) 553-6700 | Ms. Collins has information relating to legal issues about GMRO's affiliates, licensees, and business.<br><br>Ms. Collins also has information relating to legal issues about the RMLC, its members, licenses/licensors, and its anticompetitive conduct and effect. |
| William Velez, Executive Director, RMLC | Mr. Velez has information related to the RMLC, its members, licenses/licensors, and its anticompetitive conduct and effect. |
| Rebekah Freundt, Accountant and Data Manager, RMLC | Ms. Freundt has information related to the RMLC, its members, licenses/licensors, and its anticompetitive conduct and effect. |
| Current and former members of the RMLC Executive Committee (including but not limited to Gene Levin of Entercom, Ed Christian of Saga Communications Corp., and John VerStandig of VerStandig Broadcasting) | Current and former members of the RMLC Executive Committee have information related to the RMLC, its members, licenses/licensors, and its anticompetitive conduct and effect. |

| Name | General Subject Matter |
|------|------------------------|
| Current and former members of the RMLC Committee (including but not limited to Joyce Fitch of Beasley Broadcast Group Inc., Pat Walsh of Emmis Communications, and Jim Coloff of Coloff Media) | Current and former members of the RMLC Committee have information related to the RMLC, its members, licenses/licensors, and its anticompetitive conduct and effect. |
| Current and former members of the RMLC's Board of Directors (including but not limited to Tres Williams of iHeartMedia, Clayton Nix of Cox Media, and Paul Yates of Hubbard Radio) | Current and former members of RMLC's Board of Directors have information related to the RMLC, its members, licenses/licensors, and its anticompetitive conduct and effect. |
| Current and former RMLC members (including but not limited to Decorah Broadcasting Inc., Tabback Broadcasting Co., Steve Nichols, and William W. Brown)[1] | Current and former members of RMLC have information related to the RMLC, its members, licenses/licensors, and its anticompetitive conduct and effect.  They may also have information related to RMLC members' programming abilities and choices. |
| iHeartMedia (including Tres Williams, Executive Vice President, Business Affairs) | iHeartMedia has information related to business between iHeartMedia and GMRO, as well as the RMLC's anticompetitive conduct and effect. |
| Townsquare Media (including Stuart Rosenstein, Executive Vice President and Chief Financial Officer) | Townsquare has information related to business between Townsquare and GMRO, as well as the RMLC's anticompetitive conduct and effect. |

---

[1] GMRO believes that most, if not all, RMLC members, including members represented on the RMLC's Committee, Executive Committee, and/or Board of Directors, will have relevant, discoverable information that supports GMRO's claims and defenses.

GLOBAL MUSIC RIGHTS, LLC'S
RULE 26(a)(1) INITIAL DISCLOSURES

Exhibit 1
10

| Name | General Subject Matter |
|------|------------------------|
| Entercom Communications Corp. (including David Field, Chairman, Chief Executive Officer, and President) | Entercom has information related to business and negotiations between Entercom and GMRO, as well as the RMLC's anticompetitive conduct and effect. |
| CBS (including Susanna Lowy, Senior Vice President and Deputy Counsel, CBS, and Jo Ann Haller, Senior Vice President and General Counsel, CBS Radio) | CBS has information related to business and negotiations between CBS and GMRO, as well as the RMLC's anticompetitive conduct and effect. |
| Cumulus Media (including Collin Jones, Senior Vice President) | Cumulus has information related to business and negotiations between Cumulus and GMRO, as well as the RMLC's anticompetitive conduct and effect. |
| NRG Media (including Mary Quass, President and Chief Executive Officer) | NRG Media has information related to business and negotiations between NRG Media and GMRO, as well as the RMLC's anticompetitive conduct and effect. |
| Entravision (including Walter F. Ulloa, Chairman and Chief Executive Officer) | Entravision has information related to business and negotiations between Entravision and GMRO, as well as the RMLC's anticompetitive conduct and effect. |
| Spanish Broadcasting System (Raúl Alarcón, Jr., President, Chief Executive Officer, Chairman) | Spanish Broadcasting System has information related to business and negotiations between Spanish Broadcasting System and GMRO, as well as the RMLC's anticompetitive conduct and effect. |
| Broadcast Music, Inc. ("BMI") and BMI executives (including Michael O'Neill, Chief Executive Officer) | BMI has information relevant to BMI's origination, affiliates, licenses/licensees, and general business. BMI also has information concerning the RMLC, its members, licenses/licensors, and its anticompetitive conduct and effect. |

GLOBAL MUSIC RIGHTS, LLC'S
RULE 26(a)(1) INITIAL DISCLOSURES

Exhibit 1
11

| Name | General Subject Matter |
|------|------------------------|
| American Society of Composers, Authors, and Publishers ("ASCAP") and ASCAP executives (including Elizabeth Matthews, Chief Executive Officer) | ASCAP has information relevant to ASCAP's origination, affiliates, licenses/licensees, and general business.<br><br>ASCAP also has information concerning the RMLC, its members, licenses/licensors, and its anticompetitive conduct and effect. |
| Society of European Stage Authors and Composers ("SESAC") and SESAC executives (including John Josephson, Chairman and Chief Executive Officer). | SESAC has information relevant to SESAC's origination, affiliates, licenses/licensees, and general business.<br><br>SESAC also has information concerning the RMLC, its members, licenses/licensors, and its anticompetitive conduct and effect. |

### B.   Description by Category and Location of Documents

Pursuant to Rule 26(a)(1)(A)(ii), GMRO provides the following description of the categories of documents in GMRO's possession that may be used to support its claims and/or defenses, other than solely for purposes of impeachment.  By providing these descriptions, GMRO expressly preserves, and does not waive, any and all objections as to the relevance, discoverability, and/or admissibility of these documents, as well as any other documents later identified or produced by the parties.

1. Documents relating to and reflecting GMRO's negotiations with RMLC;

2. Documents relating to and reflecting GMRO's direct negotiations with RMLC's members;

3. Agreements between GMRO and licensees in the terrestrial radio industry;

4. Agreements between GMRO and affiliates;

GLOBAL MUSIC RIGHTS, LLC'S
RULE 26(a)(1) INITIAL DISCLOSURES

Exhibit 1
12

5. Documents relating to and reflecting to the contents and use of GMRO's repertory, including documents demonstrating GMRO's transparency with respect to its repertory;

6. Publicly available documents, news articles, statements, and press releases evidencing RMLC and RMLC members' collusion, group boycott, efforts to depress licensee fees, and other anticompetitive conduct; and

7. Documents relating to the facts, allegations, claims, and defenses referenced in the operative pleadings.

GMRO reserves the right to supplement or amend this disclosure as it identifies during discovery additional categories of documents in its possession, custody, or control that may be used to support its claims and/or defenses, and reserves the right to produce, rely on, or introduce into evidence additional documents that may be identified or discovered at a later time, including documents identified or produced by RMLC.  Some of the documents identified in this disclosure and during discovery may contain proprietary or highly confidential information and, upon request, will be produced or made available for inspection only after the Court enters a stipulated protective order agreeable to the parties. GMRO identifies these documents in this disclosure without waiver of attorney-client privilege, work product protection, common interest privilege, joint prosecution privilege, or other applicable privileges or protections, and without waiver of any other applicable objections as to the production of these documents.

8

GLOBAL MUSIC RIGHTS, LLC'S
RULE 26(a)(1) INITIAL DISCLOSURES

Exhibit 1
13

### C.   <u>Computation of Damages</u>

GMRO estimates its damages in *Global Music Rights, LLC v. Radio Music License Committee, Inc.* to be at least $150,000,000, before trebling.  GMRO currently does not have access to sufficient information and data to provide a precise computation for each category of damages.  The documents, data, and information supporting GMRO's ultimate computation of damages will be developed through GMRO's ongoing investigation and through formal discovery. Subject to the foregoing, GMRO states that its damages include, but are not limited to, the following categories:

1. Lost licensing revenue proximately caused by radio companies who have refused to take GMRO licenses due to RMLC's collusive and monoposonistic conduct;

2. Lost licensing revenue proximately caused by the below market-rate licenses GMRO has issued to radio companies due to RMLC's collusive and monopsonistic conduct;

3. Lost licensing revenue from potential licensees in non-radio industries proximately caused by RMLC's collusive and monopsonistic conduct; and

4. Other lost revenue proximately caused by RMLC's collusive and monopsonistic conduct.

GMRO is solely a Defendant in *Radio Music License Committee, Inc. v. Global Music Rights, LLC*, and to date has not asserted formal counterclaims against RMLC in that action.  Accordingly, there are no categories of damages for GMRO to compute as anticipated by Rule 26(a)(1)(A)(iii) for that action.

GLOBAL MUSIC RIGHTS, LLC'S
RULE 26(a)(1) INITIAL DISCLOSURES

Exhibit 1
14

GMRO reserves the right to supplement or modify this response to include information that may be discovered through the course of GMRO's ongoing investigation or through formal discovery.

### D. Insurance Agreements

The following are the insurance agreements (without regard to any excess policies) under which an insurance business may be liable to satisfy all or part of a possible judgment against GMRO, or to indemnify or reimburse for payments made to satisfy a possible judgment against GMRO with regard to the claims asserted by the RMLC:

- Directors & Officers Insurance Police No. EKS3200454, issued by Scottsdale Insurance Company.
- X.L. Catlin Errors & Omissions Insurance Policy No. MPP004222603, issued by Indian Harbor Insurance Company.

GMRO is investigating the existence or applicability of additional insurance agreements or policies responsive to this disclosure and reserves the right to supplement or modify this disclosure as discovery and the case progresses.  GMRO will make all such agreements available for inspection and copying pursuant to any Rule 34 discovery request.  By this disclosure, GMRO does not concede the lack of coverage under other insurance policies and reserves its right to seek coverage from other insurers.

*****

Nothing in this initial disclosure shall constitute a waiver of any claim, defense, or privilege, including, without limitation, the following:  any claim or defense as to the sufficiency of the complaint; any applicable privilege, including the attorney-client privilege, the work product doctrine, or any other privilege; and the right to object to discovery requests that seek documents or information that are

GLOBAL MUSIC RIGHTS, LLC'S
RULE 26(a)(1) INITIAL DISCLOSURES

Exhibit 1
15

1    not relevant or sufficiently probative to justify the burden or expense of a response.

2    Moreover, nothing in this initial disclosure shall constitute an admission or

3    concession on the part of GMRO with respect to any issues of fact or law, including

4    but not limited to the relevance, discoverability, or admissibility of any of the

5    information set forth herein.  GMRO specifically reserves the right to challenge the

6    discoverability or admissibility of such information or testimony relating thereto.

7

8

9

10   Dated:  June 20, 2019                    O'MELVENY & MYERS LLP

11

12                                            By:  /s/ Daniel M. Petrocelli

13                                                 Daniel M. Petrocelli

14                                            *Attorneys for Global Music Rights, LLC*

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**<u>PROOF OF SERVICE</u>**

2   I hereby certify that a true and correct copy of the above document was served

3   upon the attorneys of record by electronic mail to the addresses below.

4

5   Margaret Zwisler (margaret.zwisler@lw.com)

6   Al Pfeiffer (al.pfeiffer@lw.com)

    Jennifer Giordano (jennifer.giordano@lw.com)

7   Andrew Gass (andrew.gass@lw.com)

8   William Friedman (william.friedman@lw.com)

9   David Johnson  (david.johnson@lw.com)

10  Brittany Lovejoy (brittany.lovejoy@lw.com)

11  Zack Zaharoff (zack.zaharoff@lw.com)

12

13  June 20, 2019                        /s/   Jordyn Ostroff

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 2

Exhibit 2

18

**From:** McIntyre, Stephen <smcintyre@omm.com>
**Sent:** Thursday, January 23, 2020 8:44 PM
**To:** Rathbun, Anna (DC) <Anna.Rathbun@lw.com>; Moon, Bo <bmoon@omm.com>
**Cc:** Marroso, David <dmarroso@omm.com>; Robson, Katrina <krobson@omm.com>; Pletcher, Anna
T. <apletcher@omm.com>; Dekel, Zachary L. <zdekel@omm.com>; Ostroff, Jordyn E.
<jostroff@omm.com>; Giordano, Jennifer (DC) <Jennifer.Giordano@lw.com>; Johnson, David (DC)
<David.Johnson@lw.com>; Zaharoff, Zack (NY) <Zack.Zaharoff@lw.com>; Friedman, Will (DC)
<William.Friedman@lw.com>; McIntyre, Stephen <smcintyre@omm.com>
**Subject:** RE: RMLC v. GMR/GMR v. RMLC - Document Productions

Anna,

Thank you for conferring with us yesterday.  I am writing to respond to and correct certain
statements in your email.

- As we indicated during the call, any agreement on a deadline for the substantial
  completion of document production must be two-way.  You agreed.  As you stated
  during the call (and as we interpret your email to acknowledge), the February 28th
  date we discussed would apply to both Global Music Rights and RMLC.

- During the call, you made a proposal whereby the parties would agree to produce
  certain categories of "go-get" documents enumerated in Judge Sagar's discovery
  orders by February 7th.  We agreed to discuss that proposal internally with our team
  and with our client.  We have now done so, and we do not believe RMLC's proposal
  would be productive or efficient.  As we pointed out during the call, Global Music
  Rights has already begun producing the categories of documents listed on pages 4-
  6 of Judge Sagar's order denying RMLC's motion to compel (*e.g.*, organizational
  charts).  We anticipate making another production imminently.  As we also stated
  during the call, nearly all of those categories of documents are ***not*** "go-get," but
  instead require custodial collection and review.  Finally, since the parties are
  committing to substantial completion by the end of February and are now discussing
  an extension of the discovery schedule, it would be wasteful and inefficient for
  Global Music Rights to interrupt its ongoing document production efforts to cull a few
  categories of documents that RMLC will be getting within a matter of weeks in any
  event.  There is simply no prejudice to RMLC.

- We look forward to receiving and reviewing your proposal with respect to the
  litigation schedule.

Best,
Steve

Exhibit 2
19

**From:** Anna.Rathbun@lw.com <Anna.Rathbun@lw.com>
**Sent:** Thursday, January 23, 2020 8:45 AM
**To:** McIntyre, Stephen <smcintyre@omm.com>; Moon, Bo <bmoon@omm.com>
**Cc:** Marroso, David <dmarroso@omm.com>; Robson, Katrina <krobson@omm.com>; Pletcher, Anna T. <apletcher@omm.com>; Dekel, Zachary L. <zdekel@omm.com>; Ostroff, Jordyn E. <jostroff@omm.com>; Jennifer.Giordano@lw.com; Anna.Rathbun@lw.com; David.Johnson@lw.com; Zack.Zaharoff@lw.com; William.Friedman@lw.com
**Subject:** RMLC v. GMR/GMR v. RMLC - Document Productions

[EXTERNAL MESSAGE]

Bo and Stephen,

Thank you for a very productive call yesterday regarding the parties' document productions.  To briefly recap, you explained that you believed GMR could complete its party productions by February 28, and would continue to produce documents on a rolling basis until that date.  RMLC committed to do the same.

We discussed the categories of documents listed in the magistrate's recent orders denying the parties' motions to compel without prejudice. GMR explained that some of the documents would be difficult to isolate outside of custodial searches.  We tentatively agreed to each produce "go-get" or non-custodial documents in those categories by February 7, in order to facilitate each parties' review of those documents to determine if any further follow-up is needed.  We agreed that we would exchange a list of those items that could be produced by February 7.  Further to that discussion, please find RMLC's list below.   RMLC expects to produce at least all of the below by February 7 (and has produced some of these materials already), but will work to produce any other non-custodial materials by that date if possible, and expects that GMR will do the same.

We next discussed your expected timing for productions from the Azoff Entities that RMLC has subpoenaed, which you had previously estimated would occur sometime in Q1.  You explained that you expected productions from these entities to be completed at the end of March.

Both parties recognize that given the expected timing for the completion of document productions in this case, it will be necessary to adjust the current schedule, which contemplates the close of discovery on March 2, 2020.  I am drafting a proposal and hope to send it tomorrow.

We look forward to receiving your proposed list of documents that GMR expects to produce by February 7.

Regards,
Anna
-
**RMLC List of Non-Custodial Documents from Jan. 2 Order (Doc. Nos. 195, 127) to Produce by Feb. 7:**

Exhibit 2
20

1. The rate court Petitions that RMLC filed in federal court against ASCAP on July 8, 2010 and BMI on June 18, 2010.

2. The ASCAP and BMI contracts in place from 2010-2016 as a result of those federal rate court litigations ("ASCAP 2010" and "BMI 2010" contracts).

3. The federal court orders that "ordered, adjudged and decreed" that the ASCAP 2010 and BMI 2010 contracts are "reasonable and non-discriminatory" and in compliance with the applicable Consent Decrees.

4. A list of the radio stations that authorized RMLC to represent them in each of the Rate Court proceedings that resulted in ASCAP 2010 and BMI 2010.

5. The ASCAP agreement governing the license period 2017-2021 ("ASCAP 2017").

7. From January 1, 2013 to June 5, 2019, documents sufficient to identify every radio station (or station group) that has provided written authorization for RMLC to represent it in negotiations and, if necessary, litigation/arbitration with ASCAP, BMI and/or SESAC, and copies of each signed authorization form.

8. RMLC's 2012 antitrust complaint filed against SESAC (the "SESAC litigation").

10. The 2015 Settlement Agreement settling the SESAC litigation.

12. The petition that BMI filed with the rate court on January 3, 2017 for determination of an interim license fee, and the resulting court order setting the interim fee that stations have been paying since then.

13. The petition that RMLC filed with the BMI rate court on May 17, 2018 for the determination of reasonable fees and terms for the period 2017-2021 for the stations that RMLC represents in that litigation.

14. The identity of every radio station that RMLC represents in that pending BMI rate court litigation.

**Anna M. Rathbun**

**LATHAM & WATKINS** LLP
555 Eleventh Street, NW
Suite 1000
Washington, D.C. 20004-1304
Direct Dial: +1.202.637.3381
Fax: +1.202.637.2201
Email: anna.rathbun@lw.com
http://www.lw.com

---

This email may contain material that is confidential, privileged and/or attorney work product

Exhibit 2
21

for the sole use of the intended recipient.  Any review, disclosure, reliance or distribution by others or forwarding without express permission is strictly prohibited.  If you are not the intended recipient, please contact the sender and delete all copies including any attachments.

Latham & Watkins LLP or any of its affiliates may monitor electronic communications sent or received by our networks in order to protect our business and verify compliance with our policies and relevant legal requirements. Any personal information contained or referred to within this electronic communication will be processed in accordance with the firm's privacy notices and Global Privacy Standards available at www.lw.com.

Exhibit 2
22

# EXHIBIT 3

Exhibit 3
23

**LATHAM&WATKINS** LLP

555 Eleventh Street, N.W., Suite 1000
Washington, D.C.  20004-1304
Tel: +1.202.637.2200  Fax: +1.202.637.2201
www.lw.com

FIRM / AFFILIATE OFFICES

| | |
|---|---|
| Beijing | Moscow |
| Boston | Munich |
| Brussels | New York |
| Century City | Orange County |
| Chicago | Paris |
| Dubai | Riyadh |
| Düsseldorf | San Diego |
| Frankfurt | San Francisco |
| Hamburg | Seoul |
| Hong Kong | Shanghai |
| Houston | Silicon Valley |
| London | Singapore |
| Los Angeles | Tokyo |
| Madrid | Washington, D.C. |
| Milan | |

January 23, 2020

**VIA EMAIL**

Stephen J. McIntyre
O'Melveny & Myers LLP
400 South Hope Street
Los Angeles, CA 90071

Re:  RMLC's Responses and Objections to GMR's First Set of Interrogatories in
Case Nos. 2:19-cv-03957-TJH-ASx and 2:16-cv-09051-TJH-ASx (C.D. Cal.)

Dear Counsel:

We write in response to Global Music Rights, LLC's ("GMR") request that Radio Music Licensee Committee, Inc. ("RMLC") provide supplemental responses to certain interrogatories within GMR's First Set of Interrogatories.  RMLC's positions are as stated below and in its October 21, 2019 Objections and Responses to GMR's First Set of Interrogatories ("RMLC's Responses").

A.     **Interrogatory No. 1**

*Identify each current and former employee, Committee member, Executive Committee member, and Director of the RMLC from January 1, 2010 to the present, including for each PERSON (i) name, (ii) title, (iii) dates of employment and/or service in his/her position, (iv) in the case of Committee members, Executive Committee members, and Directors, the PERSON'S employer or corporate affiliation, and (v) responsibilities.*

RMLC has already provided the requested information from January 1, 2013 to the discovery cut-off date of June 5, 2019.  RMLC's Responses identified all of its employees during that time frame and provided a link to a webpage showing RMLC's Board of Directors, including the Board members' places of employment and participation in the Executive Committee of the Board.  RMLC supplemented that information on November 11, 2019 by producing documents showing RMLC's Board members back to 2013, and also identifying the Board members' employers, email addresses, and participation and role on the Executive Committee, if any.

Exhibit 3
24

LATHAM&WATKINS LLP

GMR contends that RMLC should provide the same, or more, information dating from January 1, 2010 to December 31, 2012.[1]  The Court recently correctly denied GMR's requests for additional discovery into RMLC's Board and Executive Committee members predating January 1, 2013.[2]  RMLC has already provided substantial information regarding its Board and operations, including searching the documents of ten members of RMLC's Executive Committee.  There is no marginal relevance to disclosing RMLC's Board members for a time period predating any interaction between RMLC and GMR by many years, nor would providing an additional three years of information be proportional to the needs of these cases.

GMR also contends that RMLC should supplement its response to identify any subcommittee or similar bodies that any of RMLC's Board members served on.  Interrogatory No. 1 does not request this information, as evidenced by the fact that GMR did not provide any subcommittee information in response to RMLC's Interrogatory requesting the identities and "responsibilities" of GMR's directors.[3]

Despite having no obligation to supplement, in order to move discovery forward and in an effort to be cooperative, if GMR agrees to accept it as full compliance with Interrogatory No. 1, RMLC will agree to supplement its existing response to Interrogatory No. 1 by providing the same type of information it has already provided for the time period January 1, 2010 to December 31, 2012.  Please let us know if this is acceptable to GMR.

### B.    Interrogatory Nos. 4 & 5

*Interrogatory No. 4:  Quantify on an annual basis for 2010 through 2019, what share of the market for performance rights licenses you attribute to each PERFORMING RIGHTS ORGANIZATION (ASCAP, BMI, SESAC, GMR, and other performance rights organizations, if any).  By way of hypothetical example only, in 2017, RMLC allocated 45% of the market of performance rights licenses to ASCAP, 40% to BMI, 10% to SESAC, and 5% to GMR.*

*Interrogatory No. 5:    Describe how YOU calculate each PERFORMING RIGHTS ORGANIZATION'S share of the market for performance rights licenses, including without limitation how YOU and ASCAP calculated ASCAP's market share for purposes of the ASCAP 2017 Radio Station License Agreement dated January 1, 2017, including the methodology utilized to quantify each PERFORMING RIGHTS ORGANIZATION'S share of the market for performance rights licenses.*

As a preliminary matter, we are compelled to repeat that GMR's insistence that RMLC provide discovery responses on the share of "performance rights *licenses*" that each PRO sells

---

[1]    *See* GMR's Dec. 20, 2019 Letter at 1.

[2]    *See* Civil Minutes-Order at 4-7, No. 2:19-cv-03957 (C.D. Cal. Jan. 2, 2020), ECF No. 195 ("Civil Minutes-Order").

[3]    *See* RMLC's First Set of Interrogs. to GMR at No. 6 (June 14, 2019) (requesting the "title (or responsibilities if not apparent from the title)" of GMR's employees and directors).

Exhibit 3
25

LATHAM&WATKINS LLP

regardless of type of buyer, while at the same time GMR refuses to provide discovery about the licenses it sells to any buyers other than terrestrial radio stations, is plain wrong.

But more importantly for purposes of this narrow discovery dispute, RMLC has already answered Interrogatory Nos. 4 and 5 in full based not only on the plain language of the Interrogatories, but also on GMR's explicit statements regarding the information the Interrogatories do and do not request. We have no further information to provide. GMR cannot compel RMLC to produce information it does not have.

RMLC's Responses describe why RMLC does not possess information responsive to these Interrogatories as drafted. As stated in RMLC's Response to Interrogatory No. 4, RMLC does not allege that there is a "market for performance rights *licenses*" and has never "allocated" shares for any such "market." During our meet and confer, RMLC inquired whether GMR perhaps intended to ask about "spin share" (i.e., "the percentage of *plays of works*"[4] as compared to the percentage of "performance rights *licenses*"). Although Interrogatory Nos. 4 and 5 plainly do not ask about "spin share" and "spin share" is not the relevant "market" that RMLC has alleged,[5] the concept of "spin share" is at least something with which RMLC is familiar and which does appear in RMLC's complaint. And both of the documents referenced in your letter of November 27, 2019—RMLC's petition to determine reasonable licensing rates with BMI and the ASCAP 2017 license agreement—are clearly referring to the concept of "spin share." However, on our call, GMR insisted that Interrogatory Nos. 4 and 5 *are not* asking about "spin share." GMR reiterated that position in its December 20, 2019 letter, where it once again characterized these Interrogatories as "request[ing] that RMLC identify on an annual basis from 2010 through 2019 the share of the market for performance rights *licenses*."[6] As stated in RMLC's Responses and on our meet and confer, RMLC has never recognized any such market during the relevant time period, and certainly has never calculated any shares of any such purported "market." Thus, RMLC has answered Interrogatory Nos. 4 and 5 in full, and there is nothing for us to supplement.

## C.     Interrogatory No. 6

*Identify each negotiation concerning performance rights licenses from January 1, 2010 to the present that RMLC or any RMLC MEMBER has conducted with any PERFORMING RIGHTS ORGANIZATION, including without limitation (i) the counter-party/ies to the negotiation, (ii) who represented or acted on behalf of RMLC in the negotiation, (iii) each RMLC MEMBER or other PERSON on whose behalf RMLC conducted the negotiation, (iv) the subject matter of the negotiation, (v) whether the negotiation resulted in an agreement, (vi) if the negotiation was successful, the terms of the AGREEMENT, and (vii) if the negotiation was successful, each RMLC MEMBER or other PERSON that accepted (or was bound by) the AGREEMENT.*

---

[4]     *See* RMLC SAC ¶ 49, No. 2:19-cv-03957 (C.D. Cal. June 20, 2019), ECF No. 163 (emphasis added).

[5]     *See id.* ¶ 63 ("The relevant product market is for a license to publicly perform the aggregated copyrighted musical compositions in GMR's repertory.").

[6]     GMR's Dec. 20, 2019 Letter at 2 (emphasis added).

Exhibit 3
26

LATHAM&WATKINS LLP

RMLC's Responses, in addition to stating its objections, disclosed all of the individuals who, on behalf of RMLC, participated in the exploratory, performing rights licensing discussions with GMR prior to RMLC filing its antitrust complaint against GMR in November 2016.[7]  GMR's December 20, 2019 letter requests that RMLC further identify by narrative or by reference to specific documents by Bates number "all negotiations between RMLC and Global Music Rights concerning Performing Rights Licenses."[8]  That is an entirely unnecessary burden to hoist upon RMLC.  Both RMLC and GMR are already identifying and producing all non-privileged documents concerning any communications, meetings, discussions, or negotiations between RMLC and GMR.  The burden to GMR to identify these documents is no greater than that faced by RMLC, particularly when GMR itself is in possession of all of the information it requests.  It is unduly burdensome to ask RMLC to replicate that information through a formal interrogatory response.

RMLC's Responses state additional objections to this Interrogatory, including objections regarding the burden, lack of relevance, and lack of proportionality associated with providing a response regarding RMLC's licensing interactions with ASCAP, BMI, and SESAC.  GMR did not address those objections in its December 20, 2019 letter "in light of Global Music Rights' currently pending motion to compel."[9]  The Court has since denied GMR's motion for additional discovery into those issues, which forecloses those parts of this Interrogatory.  RMLC will not supplement its responses to include information regarding negotiations with ASCAP, BMI, or SESAC.

Accordingly, RMLC will not supplement its response to Interrogatory No. 6.

### D.    Interrogatory No. 7

*Identify each negotiation concerning performance rights licenses from January 1, 2010 to the present that RMLC or any RMLC MEMBER has conducted with any licensor or copyright owner other than a PERFORMING RIGHTS ORGANIZATION, including without limitation (i) the counter-party/ies to the negotiation, (ii) who represented or acted on behalf of RMLC in the negotiation, (iii) each RMLC MEMBER or other PERSON on whose behalf RMLC conducted the negotiation, (iv) the subject matter of the negotiation, (v) whether the negotiation resulted in an agreement, (vi) if the negotiation was successful, the terms of the AGREEMENT, and (vii) if the negotiation was successful, each RMLC MEMBER or other PERSON that accepted (or was bound by) the AGREEMENT.*

RMLC's Responses describe, in addition to its objections, that "since GMR's formation in 2013, RMLC has negotiated or litigated performance rights license terms **only with performing**

---

[7]    *See* RMLC's Responses at No. 6 (incorporating RMLC's Response to GMR Interrogatory No. 2).

[8]    GMR's Dec. 20, 2019 Letter at 2.

[9]    *Id.* at 2 n.1.

Exhibit 3

27

**LATHAM&WATKINS**LLP

**rights organizations** ASCAP, BMI, and SESAC."[10]  GMR's December 20, 2019 letter requests that RMLC supplement this response to disclose whether RMLC "has attempted to obtain direct licenses from any copyright owners during the period from 2010 to the present."[11]  Given that RMLC's Responses already disclosed that RMLC has not done so from 2013 to the present, we understand GMR's request to be that RMLC supplement its response with respect to the period from January 1, 2010 to 2013.  GMR has not articulated why that very old information would be relevant or proportional to the needs of these cases, particularly in light of RMLC's prior response that RMLC has not negotiated any such direct license from 2013 to the present.

Despite having no obligation to supplement, in an effort to move discovery forward and to resolve any outstanding disputes regarding RMLC's response to this Interrogatory, RMLC will supplement its response to Interrogatory No. 7 to "state whether it has attempted to obtain direct licenses from any copyright owners during the period from" January 1, 2010 to 2013.

### E.  Interrogatory No. 8

*Identify each negotiation from January 1, 2013 to the present that RMLC or any RMLC MEMBER has conducted with ASCAP, BMI, or SESAC in which RMLC or any RMLC MEMBER attempted to obtain a lower license fee on the basis that the repertories of either ASCAP, BMI, or SESAC had diminished in value because any songwriter or publisher formerly represented by ASCAP, BMI, or SESAC had become a GMR SONGWRITER OR PUBLISHER.*

RMLC offered to meet and confer with GMR regarding this Interrogatory in order to address objections and questions RMLC had regarding the interpretation, scope, and relevance of the requested information.[12]  Having now meet and conferred, in order to resolve any outstanding disputes regarding RMLC's response to this Interrogatory, RMLC will respond to this Interrogatory for the period January 1, 2013 until June 5, 2019.

### F.  Interrogatory Nos. 9 & 11

*Interrogatory No. 9:  Identify each meeting, phone call, or other COMMUNICATION between any two or more RMLC representatives (including without limitation members of RMLC's Committee, Executive Committee, and/or Board of Directors) since January 1, 2013 in which the meeting, phone call or other COMMUNICATION concerned GMR and/or a license with GMR, including for each meeting, phone call, or other COMMUNICATION (i) the IDENTITY of each participant, (ii) the date of the COMMUNICATION, (iii) if a meeting or phone call, the length of the COMMUNICATION, (iv) if a meeting, the location of the meeting, (v) the purpose of the COMMUNICATION, and (vi) all subjects discussed in the course of the COMMUNICATION.*

---

[10]     RMLC's Responses at No. 7.  As stated in RMLC's Response, RMLC responded to this Interrogatory "solely with respect to RMLC itself" (i.e., not "as it relates to 'RMLC MEMBERS'").  *Id.*

[11]     GMR's Dec. 20, 2019 Letter at 3.

[12]     RMLC's Responses at No. 8.

Exhibit 3

28

**LATHAM&WATKINS**LLP

*Interrogatory No. 11:  Identify each meeting, phone call, or other COMMUNICATION since January 1, 2013 involving any RMLC MEMBER in which RMLC made any statement with respect to the RMLC MEMBER entering or not entering into any license with GMR, including for each COMMUNICATION (i) the IDENTITY of each participant, (ii) the date of the COMMUNICATION, (iii) if a meeting or phone call, the length of the COMMUNICATION, (iv) if a meeting, the location of the meeting, (v) the purpose of the COMMUNICATION, (vi) all subjects discussed in the course of the COMMUNICATION, and (vii) each statement RMLC made with respect to the RMLC MEMBER entering or not entering into any license with GMR.*

GMR's December 20, 2019 letter modifies these Interrogatories to seek information "sufficient to identify all meetings, phone calls, or other communications responsive to these Interrogatories."[13]  For Interrogatory No. 9, we interpret GMR's modification to mean identifying all communications since January 1, 2013 between two or more RMLC "representatives" concerning GMR or a license with GMR.  For Interrogatory No. 11, we interpret GMR's modification to mean identifying all communications since January 1, 2013 involving any RMLC "member" in which RMLC "made any statement with respect to the RMLC member entering or not entering into any license with GMR."

Even as modified, these Interrogatories are overbroad and disproportional to the needs of these cases on several dimensions.  They both seek information from a potentially massive number of people.  Interrogatory No. 9 requests information from over 50 people that have been RMLC employees or on RMLC's Board of Directors since 2013.  The Court has already determined that discovery into that number of RMLC Board members is "not proportional to the needs of the case" and "would be extremely burdensome."[14]  GMR cannot use these Interrogatories to evade the Court's order.  Interrogatory No. 11 is even more expansive; it seeks communications with any RMLC "member."  GMR cannot justify these extremely broad and burdensome Interrogatories.  *See USI Ins. Servs. Nat'l, Inc. v. Ogden*, 2018 WL 5894927, at *2 (W.D. Wash. Nov. 9, 2018) (refusing to compel response to "all communications" interrogatory where party failed to explain "that their importance outweighs the *obvious burden* of searching for 'all communications' that touch on such a broad topic" (emphasis added)); *Largan Precision Co. v. Samsung Elec. Co.*, 2015 WL 11251730, at *3 (S.D. Cal. May 5, 2015) (finding an interrogatory asking to "identify and describe in detail all facts and circumstances related to any communications or information exchanged with Your customers relating to the development of [at-issue products]" to be so "overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence" that "the Court will not undertake an effort to modify it").

Given GMR's extremely broad requests, there quite simply "is no 'discernible way to find the information that [GMR] is requesting.'"  *Wimberly v. City of Henderson*, 2012 WL 1044314, at *4 (D. Nev. Mar. 28, 2012).  RMLC "cannot readily determine 'all communications' that may have taken place by or between any of several hundred" broadcasters or more.  *Kellgren v. Petco Animal Supplies, Inc.*, 2017 WL 979045, at *5 (S.D. Cal. Mar. 13, 2017).

---

[13]     GMR's Dec. 20, 2019 Letter at 4.

[14]     *See* Civil Minutes-Order at 6-7.

Exhibit 3
29

**LATHAM&WATKINS**LLP

GMR cannot force this undue burden onto RMLC when GMR is already receiving substantial document discovery addressing the same issues, including:

- RMLC's employees' non-privileged communications concerning any actual or potential negotiation with GMR, or any GMR license offer since 2013, including communications with radio groups.

- Ten RMLC Executive Committee members' non-duplicative, non-privileged communications in their roles as Executive Committee members concerning any actual or potential negotiation with GMR or any GMR license offer since 2013.

- At least eight radio groups' non-privileged communications concerning GMR, any GMR license, or RMLC and GMR since 2013.[15]

These substantial document production commitments disprove GMR's claim that "RMLC has not agreed to provide any responsive information" to Interrogatory Nos. 9 and 11.[16]  The burden to GMR to review these documents to identify relevant communications is the same burden faced by RMLC to separately identify each communication that is potentially responsive to these Interrogatories.  *See Kellgren*, 2017 WL 979045, at *5-6 (denying "plaintiffs' request to compel defendants to interview or speak with each of the current and former GMs and DMs about this discovery request" and finding that "[t]o the extent that defendants have produced documents sought as represented, their response . . . is sufficient").

Accordingly, RMLC will not agree to supplement its responses to Interrogatory Nos. 9 and 11 at this time.

### G.    Interrogatory No. 10

*Except for those meetings, phone calls, or other COMMUNICATIONS identified in Interrogatory No. 9, identify each meeting, phone call, or other COMMUNICATION between any two or more RMLC representatives (including without limitation members of RMLC's Committee, Executive Committee, and/or Board of Directors) in which the meeting, phone call or other COMMUNICATION concerned any PRO and/or a license with a PRO, including for each meeting, phone call, or other COMMUNICATION (i) the IDENTITY of each participant, (ii) the date of the COMMUNICATION, (iii) if a meeting or phone call, the length of the COMMUNICATION, (iv) if a meeting, the location of the meeting, (v) the purpose of the COMMUNICATION, and (vi) all subjects discussed in the course of the COMMUNICATION.*

This Interrogatory seeks highly detailed information about RMLC's dealings with performing rights organizations *other than GMR*.  GMR's December 20, 2019 letter states that

---

[15]    *See* Letter from D. Johnson to D. Marroso at 2 (Jan. 14, 2020) (describing discovery proposal from Beasley Broadcast Group, Inc.; Coloff Media; Cox Media Group, LLC; Entercom Communications Corp.; Midwest Communications, Inc.; Saga Communications, Inc.; Salem Media Group, Inc.; and VerStandig Broadcasting).

[16]    GMR's Dec. 20, 2019 Letter at 3.

Exhibit 3
30

LATHAM&WATKINS LLP

GMR was "forego[ing] further discussion at this time of discovery regarding RMLC and its members' dealings with other PROs" because of "Global Music Rights' currently pending motion to compel."[17]   As you know, the Court has denied GMR's motion for additional discovery into RMLC's interactions with those other performing rights organizations, agreeing with RMLC that this discovery has no marginal relevance, is unduly burdensome, and is not proportional to the needs of these cases.[18]   Thus, RMLC will not supplement its response to this Interrogatory.

GMR's December 20, 2019 letter requests that RMLC respond to this Interrogatory with information sufficient to identify "all meetings, phone calls, or other communications between any two or more RMLC representatives *concerning Global Music Rights or a license from Global Music Rights*."[19]   That information, however, is what GMR is requesting in Interrogatory No. 9. To the extent GMR contends this information is *also* responsive to Interrogatory No. 10, RMLC incorporates its response regarding Interrogatory Nos. 9 & 11 above.

### H.     Interrogatory No. 12

*Identify by date and location each music industry presentation, panel, or conference that RMLC has attended or in which RMLC has presented.*

RMLC has agreed to provide a response to this Interrogatory at the appropriate point in discovery, subject to two reasonable limitations.   RMLC will identify the presentations, panels, or conferences it has attended (1) "related to radio music licensing at which RMLC has presented about GMR" and (2) only since 2013.[20]   RMLC is producing information relating to this Interrogatory in document discovery, including all documents and communications from 2015 to June 5, 2019 related to any music, media, and/or television industry presentations, panels, and conferences concerning music licensing in which RMLC participated.[21]

GMR requests that RMLC supplement this response to identify "all music industry" events RMLC has attended since 2013, regardless of the subject of the event, regardless of whether RMLC made any statement at the event, and regardless of whether the event related to GMR in any way.[22]   That information is irrelevant and not proportional to the needs of these cases.

GMR is wrong to suggest that it is entitled to a formal, written catalog of any instance when RMLC appeared at any event attended by anyone else in the undefined "music industry."   GMR's only explanation for seeking this overbroad discovery is that it is relevant to showing an "opportunity to collude."[23]   Elsewhere, however, GMR has repeatedly argued that "RMLC conducts its operations through its Board of Directors and Executive Committee."[24]   RMLC has

---

[17]     *Id.* at 2 n.1.

[18]     *See* Civil Minutes-Order at 4-7.

[19]     GMR's Dec. 20, 2019 Letter at 2 (emphasis added).

[20]     *See* RMLC's Responses at No. 12.

[21]     *See* RMLC's Oct. 8, 2019 Letter at 6 (discussing modifications to GMR RFP No. 31).

[22]     GMR's Dec. 20, 2019 Letter at 4.

[23]     *See* GMR's Nov. 27, 2019 Letter at 9.

[24]     *See, e.g.*, *id.* at 1.

Exhibit 3
31

**LATHAM&WATKINS**LLP

agreed to produce substantial documents showing the actions of its Board and Executive Committee and GMR has subpoenaed over a dozen of the companies employing those individuals for additional information. We are confident that the Court would again find that "GMR has not adequately explained why this information is insufficient to answer the questions for which it seeks answers."[25]

GMR's argument also conflicts with the Court's recent discovery Order, which was issued after GMR propounded its December 20, 2019 letter. In that Order, the Court rejected GMR's motion for additional discovery regarding RMLC's dealings with ASCAP, BMI, and SESAC. As the Court ruled, GMR is already receiving a "significant production of [RMLC's] communications with and about the other PROs."[26] The Court explained that GMR "should first review these materials before arguing that it needs significantly more discovery."[27]

Accordingly, as represented in RMLC's Responses, RMLC will supplement its response by narrative or through the production of documents sufficient to identify each music industry presentation, panel, or conference related to radio music licensing at which RMLC has presented about GMR since 2013.

## I.        Interrogatory Nos. 13 and 14

*Interrogatory No. 13:  Identify each meeting, phone call, or other COMMUNICATION that you contend has occurred between two or more GMR SONGWRITERS OR PUBLISHERS in furtherance of the conspiracy alleged in RMLC's Second Amended Complaint, including for each COMMUNICATION (i) the IDENTITY of each participant, (ii) the date of the COMMUNICATION, (iii) if a meeting or phone call, the length of the COMMUNICATION, (iv) if a meeting, the location of the meeting, (v) the purpose of the COMMUNICATION, and (vi) all subjects discussed in the course of the COMMUNICATION.*

*Interrogatory No. 14:  Identify each meeting, phone call, or other COMMUNICATION that you contend has occurred between GMR and any GMR SONGWRITERS OR PUBLISHERS in furtherance of the conspiracy alleged in RMLC's Second Amended Complaint, including for each COMMUNICATION (i) the IDENTITY of each participant, (ii) the date of the COMMUNICATION, (iii) if a meeting or phone call, the length of the COMMUNICATION, (iv) if a meeting, the location of the meeting, (v) the purpose of the COMMUNICATION, and (vi) all subjects discussed in the course of the COMMUNICATION.*

These two Interrogatories ask RMLC to describe, in detail, all communications among **GMR's** founders, owners, songwriters, songwriters' managers, and others in furtherance of their conspiracy to monopolize the market to publicly perform the music within GMR's repertory. GMR has conceded that these are contention interrogatories.[28] They seek information that, in the

---

[25]        Civil Minutes-Order at 5.

[26]        *Id.* at 6.

[27]        *Id.*

[28]        *See* GMR's Dec. 20, 2019 Letter at 4 (describing these as "factual contention interrogatories").

Exhibit 3
32

**LATHAM&WATKINS**LLP

first instance, is in the possession of GMR, its affiliates, and individuals working for them.  GMR has yet to produce that information to RMLC in discovery.  Accordingly, it is far too premature for RMLC to provide a response to these Interrogatories.  *See Amgen Inc. v. Sandoz Inc.*, 2016 WL 913105, at *2 (N.D. Cal. Mar. 10, 2016) ("Given the nature of Sandoz's requests, which seek information regarding the factual basis for Amgen's allegations, and the early stage of this litigation, the Court finds the requests are premature."); *Gravestock v. Abilene Motor Express, Inc.*, 2017 WL 10592155, at *6 (C.D. Cal. Sept. 14, 2017) (denying motion to compel supplemental response to contention interrogatories because "Defendant has not yet completed the document production that would have allowed it to respond to these interrogatories").

GMR's argument that RMLC should provide an incomplete response before obtaining discovery on these issues is wrong.  Providing responses at this stage "would be of questionable value to the goal of efficiently advancing the litigation."  *In re eBay Antitrust Litig.*, 2008 WL 5212170, at *2 (N.D. Cal. Dec. 11, 2008).  Furthermore, it would be an "unnecessarily burdensome task" for RMLC to respond now, only to revise and update its responses after fact discovery.  *Amgen Inc.*, 2016 WL 913105, at *3.  The far more appropriate approach is "to address such interrogatories after the parties have taken fact discovery."  *Id.*

GMR's contention that Rule 11 required RMLC to know details about every meeting and communication GMR took in furtherance of its conspiracy *before* RMLC filed its complaint is also plainly wrong as a matter of law.  Rule 11 requires that factual allegations have evidentiary support or "will likely have evidentiary support after a reasonable opportunity for further investigation or discovery."  Fed. R. Civ. P. 11(b)(3).  RMLC's complaint easily meets that standard.  Frankly, we are surprised that GMR would raise the issue of Rule 11 when GMR not only made allegations about a 10,000 member boycott without a single shred of evidence that any such agreement ever existed, but also made other knowingly false claims – *i.e.*, claims that GMR knew were not true, and would never have any evidentiary support, at the time GMR made them without being aware of a single communication that exists that supports those allegations.

RMLC is willing to discuss reasonable responses to Interrogatories No. 13 and 14 at an appropriate stage of discovery, provided that GMR is likewise willing to discuss reasonable responses to RMLC's Interrogatory Nos. 19, 20, and 21.

**J.      Interrogatory No. 15**

*Describe the methodology used or accepted by YOU for allocating license fees for performance rights licenses amongst RMLC MEMBERS, including but not limited to, YOUR methodology for allocating license fees for the GMR interim license.*

As stated in RMLC's Responses, RMLC "does not 'allocat[e] license fees for performance rights licenses among RMLC MEMBERS'" and thus does not have a "methodology" for doing so.[29]  There is no additional information for RMLC to provide in a supplemental response.

---

[29]      *See* RMLC's Responses at No. 15.

Exhibit 3
33

**LATHAM&WATKINS**LLP

With respect to the unique circumstances of the GMR interim license (the likes of which RMLC had never dealt with before and has never sense), we disagree with your characterization of those events, and, in any event, cannot understand why GMR is pushing RMLC to provide information that GMR already possesses. But your continued insistence on seeking discovery related to the interim license raises a broader issue that the parties should discuss. GMR has argued that the parties are prohibited from using the interim license for any reason in these litigations, and even went so far as to successfully move to strike allegations about it from an earlier version of RMLC's complaint.[30] If that is GMR's position, then why is GMR seeking discovery about the interim license? We suggest that the parties schedule a time to discuss the relevance of the interim license to these litigations.

### K.    Counting Interrogatories

RMLC's Responses objected that Interrogatory Nos. 6 and 7 contain multiple discrete subparts, and thus count as multiple interrogatories for purposes of Rule 33(a)(1). RMLC further identified those discrete subparts in its December 9, 2019 email to GMR, as well as the discrete subparts within Interrogatory No. 25. RMLC continues to stand on those objections, but has not withheld any responses to GMR's First Set of Interrogatories on that basis. RMLC has, however, rightly refused to answer Interrogatory Nos. 22-25 within GMR's Second Set of Interrogatories based, in part, on RMLC's objection that GMR exceed the permitted number of interrogatories. RMLC is amenable to discussing those objections in the context of GMR's related refusal to answer RMLC Interrogatory Nos. 18-23.

     */s/ Jennifer L. Giordano*
Jennifer L. Giordano
of LATHAM & WATKINS LLP

---

[30]    *See, e.g.*, GMR's Mem. in Supp. of Mot. to Strike Specified Improper Allegations from First Am. Compl. at 4, No. 2:16-cv-06076 (E.D. Pa. Mar. 3, 2017), ECF No. 56-1.

Exhibit 3
34